UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | Case No. 4:23-CV-1312 |
| | ) | |
| vs. | ) | |
| | ) | |
| LESLIE SUTTON, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF'S COUNTERCLAIM
AGAINST PLAINTIFF/COUNTERCLAIM-DEFENDANT**

Comes now Defendant/Counterclaim-Plaintiff, Leslie Sutton ("Counterclaim-Plaintiff"), by and through undersigned counsel, and for her Counterclaim against Plaintiff/Counterclaim-Defendant John Doe ("Counterclaim-Defendant"), states to the court as follows:

**PARTIES**

1. Counterclaim-Defendant is natural person and citizen of Canada.

2. Counterclaim-Plaintiff is a natural person and citizen of Missouri whose principal place of residence is St. Louis.

**JURISDICTION AND VENUE**

3. Venue is proper in Eastern District of Missouri Eastern Division, because the parties are diverse, the amount in controversy is over $75,000, and the alleged injury in Counterclaim-Defendant's Complaint took place in the State of Missouri.

**FACTS**

4. During all relevant times in this counterclaim, Counterclaim-Defendant went by his then middle name "Aleks."

1

5. On or around November 2021, Counterclaim-Defendant sought out Counterclaim-Plaintiff through her Twitter account.

6. Counterclaim-Plaintiff's twitter account posted sexual content and advertised for private online subscription services.

7. Counterclaim-Defendant solicited, consented to, and engaged in bondage and discipline, domination and submission, and sadism and masochism sexual fetishes, such as financial domination and female domination with Counterclaim-Plaintiff.

8. Counterclaim-Defendant specifically paid predetermined sums of money to Counterclaim-Plaintiff in exchange to be her submissive. He sought to be humiliated and dominated by Counterclaim-Plaintiff[1].

9. The parties' relationship evolved from one of customer/client to romantic partnership over the course of a few months. The parties maintained a romantic relationship whereby Counterclaim-Defendant stopped paying to be treated as Counterclaim-Plaintiff's submissive and instead the parties continued such a relationship with no renumeration to Counterclaim-Plaintiff.

10. During the course of their relationship, Counterclaim-Defendant learned that Counterclaim-Plaintiff's parents were completely unaware of her online sex work or participation in BDSM-related activities.

11. During their relationship, Counterclaim-Defendant consented to numerous sexually explicit photographs to be taken of him.

---

[1] Among the many forms of humiliation and domination he sought, Counterclaim-Defendant had his penis locked in a chastity device in which Counterclaim-Plaintiff possessed one of two keys and also requested that Counterclaim-Plaintiff kick him.

12. Counterclaim-Defendant participated in frequent BDSM-related conversations with Counterclaim-Plaintiff's other members on her sex work/BDSM Twitter feed and the members were familiar with his sexual proclivities.

13. Counterclaim-Defendant video chatted one evening with Counterclaim-Plaintiff's Discord chat group with some of Counterclaim-Plaintiff's other members on her private Twitter feed and the members were familiar with his sexual proclivities.

14. At times during the parties' relationship, Counterclaim-Defendant was polyamorous and had a girlfriend who was aware of his relationship with Counterclaim-Plaintiff and the specific sexual activities that occurred. Counterclaim-Defendant's girlfriend was not willing to serve as a "dominatrix" to Counterclaim-Defendant.

15. During their relationship, Counterclaim-Defendant sought out and attended fetish and BDSM-related events.

16. Over the course of time, the parties' relationship put a financial hardship on Counterclaim-Plaintiff and she was unable to meet Counterclaim-Defendant's desires of him serving as her submissive.

17. The parties' relationship deteriorated as a result of this financial hardship and Counterclaim-Plaintiff's inability to perform "dominatrix" activities for Counterclaim-Defendant as he desired.

18. As a result of his needs not being met, Counterclaim-Defendant sought out a second "dominatrix" during the parties' relationship.

19. During their relationship, Counterclaim-Defendant consented to being photographed, fully clothed and wearing a collar, with his face fully shown.

20. Counterclaim-Plaintiff posted this non-sexually explicit, fully clothed photo, onto her private Twitter feed to certain individuals who knew of the parties' relationship, specifically the exact sexual activities involved in their relationship, and who Counterclaim-Defendant had personally engaged in conversation about the relationship and his sexual preferences.

21. On at least one occasion, Counterclaim-Defendant wore the collar out in public when with Counterclaim-Plaintiff.

22. On or about December 30, 2022, Counter-Plaintiff took a non-sexual photo of Counterclaim-Defendant with his face down, tying her shoe and then blurred out the photo to erase all ability to recognize the individual in the photo.

23. On or about December 31, 2022, Counterclaim-Defendant was contacted by "GGGregson112" from Loyal Fans because he wanted more photos of Counterclaim-Defendant with Counterclaim-Plaintiff.

24. Counterclaim-Defendant was a follower of Counterclaim-Plaintiff's Loyal Fans account.

25. Counterclaim-Defendant watched Counterclaim-Plaintiff in live streams and had conversations with other members in the "group chat" section.

26. Counterclaim-Defendant participated in a conversation with another member named "GGGregson112" where they discussed their mutual fetishes and kinks.

27. Counterclaim-Defendant had a Fetlife.com account under a fictitious name where he publicly listed that he was "owned" by Counterclaim-Plaintiff.

28. Upon information and belief, Loyal Fan member "GGGregson112" learned of the connection to Counterclaim-Plaintiff through Counterclaim-Defendant's Fetlife.com account and

4

began inquiring of how Counterclaim-Defendant managed to become "owned" by Counter-Plaintiff.

29. Counterclaim-Defendant's real name was at no time exposed on Counterclaim-Plaintiff's Loyal Fans account, sex work Twitter account, or Fetlife.com account[2].

30. Upon information and belief, when "GGGregson112" reached out to Counterclaim-Defendant about more photos, he knew to do so because of the previous information Counterclaim-Defendant disclosed to him willingly and through no actions of Counterclaim-Plaintiff.

31. When Counterclaim-Defendant asked Counterclaim-Plaintiff to remove the two aforementioned photographs from her online accounts, Counterclaim-Plaintiff immediately deleted the Twitter post and attempted to remove the Loyal Fans photograph.

32. Counterclaim-Defendant made no issue of these photographs again until the romantic nature of the parties' relationship ceased.

33. On or about July 18, 2023, Counterclaim-Defendant threatened law enforcement action if Counterclaim-Plaintiff did not delete her Twitter and Loyal Fans accounts. Counterclaim-Defendant also expressed concern about upcoming polygraph examination he would submit to in accordance with an application for a job with the Canadian federal government and the potential that his activities with Counterclaim-Plaintiff would be subject to the same.

34. On or about July 20, 2023, Counterclaim-Plaintiff deleted her Twitter account and Loyal Fans account after being threatened by Counterclaim-Defendant.

35. Counterclaim-Plaintiff suffered harassment, severe emotional distress, embarrassment, humiliation, and threats of law enforcement by Counterclaim-Defendant.

---

[2] It should be noted that Counterclaim-Defendant's real name was exposed on Counterclaim-Plaintiff's (non-sex work) twitter account because those following that account knew Counterclaim-Plaintiff as Leslie Sutton, not her sex work pseudonym, and knew that she was dating Counterclaim-Defendant.

36. On or about August 30, 2023, Counterclaim-Defendant filed a Petition ("Lawsuit") with the Circuit Court of the City of St. Louis seeking damages for Counterclaim-Plaintiff's alleged violations of various privacy torts and violation of RSMo. §573.110, all related to the dissemination of the aforementioned photographs.

37. On or around August 30, 2023, Counterclaim-Defendant published a website entitled Leslie-Sutton.com which listed Counterclaim-Plaintiff's name, contact information, and private online account information, and further accused her of committing sexual assault.

38. Upon information and belief, on or around August 30, 2023, Counterclaim-Defendant mailed a copy of the Lawsuit, containing allegations of a sexual nature and disclosing graphic details of Counterclaim-Plaintiff's anonymous online sex work, to her parents' home.

39. Counterclaim-Plaintiff has suffered severe emotional stress, lack of sleep, and humiliation from Counterclaim-Defendant's conduct, as it greatly affects Counterclaim-Plaintiff's relationship with her parents, future intimate relationships and job prospects.

## COUNT I: DEFAMATION

40. Counterclaim-Plaintiff incorporates all previous allegations as if fully set forth herein.

41. On or around August 30, 2023, Counter-Defendant published a website entitled Leslie-Sutton.com which listed Counter-Plaintiff's name, contact information, private online account information, detailed descriptions of her secret and private sex-life, along with accusing her of committing sexual assault. The website also contained a photograph of Counterclaim-Plaintiff.

42. Counterclaim-Defendant accused Counterclaim-Plaintiff of sexually assaulting him.

6

43. Counterclaim-Plaintiff did not sexually assault Counterclaim-Defendant.

44. Counterclaim-Defendant identified Counterclaim-Plaintiff by name and provided detailed personal information, including a photograph, on how to contact and locate Counterclaim-Plaintiff.

45. When Counterclaim-Defendant accused Counterclaim-Plaintiff, by name, of sexual assault for disseminating two non-sexual photographs, he knew that statement to be false.

46. Counterclaim-Defendant intentionally purchased a URL with Counterclaim-Plaintiff's name, crated a website, drafted the multiple website pages with her personal information, created tags that would assist in finding the website in searches, and wrote extensively about how he was allegedly sexually assaulted, and then published that website to the entire world.

47. Counterclaim-Defendant's intent was to damage Counterclaim-Plaintiff's reputation and future job prospects and his actions were done with malice.

48. Counterclaim-Defendant was aware that Counterclaim-Plaintiff was applying to doctoral programs and that a website disclosing her private and secret sex-life with explicit keywords that would come up in internet searches would have a detrimental impact on her admittance to any doctoral program and cause incalculable damage to her reputation.

49. Counterclaim-Plaintiff has suffered damage to her reputation.

WHEREFORE, Counterclaim-Plaintiff prays this Court enter Judgment in her favor and against Counterclaim-Defendant for damages of a fair and reasonable amount in excess of $75,000 and for her attorneys' fees, costs, pre-judgment and post-judgment interest as allowed by law, and for all such further relief as the Court deems just and proper.

**COUNT II: PUBLIC DISCLOSURE OF PRIVATE FACTS**

50. Counterclaim-Plaintiff incorporates all previous allegations as if fully set forth herein.

51. Counterclaim-Plaintiff desired to keep her online sex work profiles and online activities anonymous, private, and secret from certain third parties.

52. Counterclaim-Plaintiff's sexual relationship and sexual activities were not newsworthy.

53. On or around August 30, 2023, Counterclaim-Defendant published a website entitled Leslie-Sutton.com which listed Counterclaim-Plaintiff's name, contact information, private online account information, along with detailed descriptions of her secret and private sex-life and a photograph of Counterclaim-Plaintiff. The information published on the public website would allow anyone in the world to connect Counterclaim-Plaintiff's previously anonymous profiles with her real identity.

54. Counterclaim-Defendant had no grant, permission, waiver, or privilege from Counterclaim-Plaintiff to publish her private information to the internet.

55. Counterclaim-Defendant knew that a large number of people could and would be able to read the published private information of Counterclaim-Plaintiff.

56. Counterclaim-Defendant knew or should have known that the private sexual information he published was of a private and confidential nature in which Counterclaim-Plaintiff had a reasonable expectation of privacy.

57. Sexual relations and sexual activities, along with anonymous online activities, are normally entirely private matters in which the public has no legitimate concern.

58.     The unauthorized publishing and dissemination of Counterclaim-Plaintiff s private and secret sex-life brought shame and humiliation to Counterclaim-Plaintiff and to any reasonable person of ordinary sensibilities.

59.     As a result of Counterclaim-Defendant's conduct, Counterclaim-Plaintiff has and will continue to suffer serious emotional distress, humiliation, embarrassment, and potential harm from those who target women in the sex industry.

WHEREFORE, Counterclaim-Plaintiff prays this Court enter Judgment in her favor and against Counterclaim-Defendant for damages of a fair and reasonable amount in excess of $75,000 and for her attorneys' fees, costs, pre-judgment and post-judgment interest as allowed by law, and for all such further relief as the Court deems just and proper.

## COUNT III: FALSE LIGHT INVASION OF PRIVACY

60.     Counterclaim-Plaintiff incorporates all previous allegations as if fully set forth herein.

61.     It is objectively true, and Counterclaim-Defendant knew or had reason to know, that being accused of sexual assault would be highly offensive to a reasonable person.

62.     Counterclaim-Defendant had knowledge of, or acted in reckless disregard, as to the falsity of the sexual assault claim and knew that publication of such information would place Counterclaim-Plaintiff in a false light as he knew the photographs that form the basis of his sexual assault claim were of a non-sexual nature and that photo dissemination does not constitute sexual assault.

63.     Counterclaim-Defendant knew or should have reasonably known that falsely claiming Counterclaim-Plaintiff sexually assaulted him would place Counterclaim-Plaintiff in a false light.

64. As a result of Counterclaim-Defendant's conduct, Counterclaim-Plaintiff has and will continue to suffer serious emotional distress, humiliation, embarrassment, and potential harm from those who target women in the sex industry.

WHEREFORE, Counterclaim-Plaintiff prays this Court enter Judgment in her favor and against Counterclaim-Defendant for damages of a fair and reasonable amount in excess of $75,000 and for her attorneys' fees, costs, pre-judgment and post-judgment interest as allowed by law, and for all such further relief as the Court deems just and proper.

### COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

65. Counterclaim-Plaintiff incorporates all previous allegations as if fully set forth herein.

66. Publishing a website with the intention of disclosing Counterclaim-Plaintiff's private and secret sex-life was outrageous and extreme.

67. Counterclaim-Defendant's conduct, as described above, was intentional and malicious and done for the purpose of causing, or was known by Counterclaim-Defendant to likely cause, Counterclaim-Plaintiff humiliation, mental anguish, and severe emotional distress.

68. Counterclaim-Defendant's disclosure of Counterclaim-Plaintiff's secret and private sex-life to the public caused Counterclaim-Plaintiff to experience deep shame and humiliation.

69. Counterclaim-Defendant's conduct caused Counterclaim-Plaintiff to suffer from medically significant emotional distress.

70. Counterclaim-Defendant created, wrote, and published the website with the sole intent to cause extreme emotional distress to Counterclaim-Plaintiff.

71. As a result of Counterclaim-Defendant's conduct, Counterclaim-Plaintiff has and will continue to suffer serious emotional distress, humiliation, embarrassment, and potential harm from those who target women in the sex industry.

72. On or around September 1, 2023, Counterclaim-Defendant mailed a copy of the Lawsuit to Counterclaim-Plaintiff's parents' home.

73. Counterclaim-Defendant knew or should have known that Counterclaim-Plaintiff desired to keep her online sex work anonymous and private, especially from her parents. Counterclaim-Defendant knew that disclosing Counterclaim-Plaintiff's online sex work to Counterclaim-Plaintiff's parents would cause Counterclaim-Plaintiff severe distress.

74. Counterclaim-Defendant's mailing the lawsuit to Counterclaim-Plaintiff's parents with the intention of disclosing Counterclaim-Plaintiff's private and secret sex-life was outrageous and extreme.

75. Counterclaim-Defendant's conduct of mailing a copy of the lawsuit containing allegations of a sexual nature and disclosing graphic details of Counterclaim-Plaintiff's anonymous online sex work to her parents' home was intentional and malicious and done for the purpose of causing, or was known by Counterclaim-Defendant to likely cause, Counterclaim-Plaintiff humiliation, mental anguish, and severe emotional distress.

76. Counterclaim-Defendant's disclosure Counter-Plaintiff's secret and private sex-life to her family caused Counterclaim-Plaintiff to experience deep shame and humiliation.

77. Counterclaim-Defendant's conduct caused Counterclaim-Plaintiff to suffer from medically significant emotional distress resulting in bodily harm.

78. Upon information and belief, Counterclaim-Defendant printed the lawsuit, placed it in an envelope, addressed the same to Counterclaim-Plaintiff's parents' residence, placed a

stamp on the envelope, and mailed the lawsuit to her parents with the sole intent to cause extreme emotional distress to the Counterclaim-Plaintiff.

79. As a result of Counterclaim-Defendant's conduct, Counterclaim-Plaintiff has and will continue to suffer serious emotional distress, humiliation, embarrassment, and potential harm from those who target women in the sex industry.

WHEREFORE, Counterclaim-Plaintiff prays this Court enter Judgment in her favor and against Counterclaim-Defendant for damages of a fair and reasonable amount in excess of $75,000 and for her attorneys' fees, costs, pre-judgment and post-judgment interest as allowed by law, and for all such further relief as the Court deems just and proper.

### COUNT V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

80. Counterclaim-Plaintiff incorporates all previous allegations as if fully set forth herein.

81. Counterclaim-Defendant owed a duty of care to Counterclaim-Plaintiff to act as a reasonable person, including abiding by the law.

82. Counterclaim-Defendant breached the duty of reasonable care by publishing secret and private sexual information without Counter-Plaintiff's knowledge or consent.

83. Counterclaim-Defendant had no legitimate purpose in publishing the secret and private sexual information other than to harass, embarrass, and humiliate Counterclaim-Plaintiff.

84. Counterclaim-Defendant should have realized that the conduct involved an unreasonable risk of causing Counterclaim-Plaintiff emotional distress.

85. As a result of Counterclaim-Defendant's conduct, Counterclaim-Plaintiff has and will continue to suffer serious emotional distress, humiliation, embarrassment, and potential harm from those who target women in the sex industry.

86. Counterclaim-Defendant's conduct caused Counterclaim-Plaintiff to suffer emotional distress and mental injury that is medically diagnosable and sufficiently severe to be medically significant.

87. Counterclaim-Defendant realized or should have realized that his conduct, which consisted of mailing to Counterclaim-Plaintiff's parents a copy of the Lawsuit was negligent and tortious.

88. Counterclaim-Defendant owed a duty of care to Counterclaim-Plaintiff to act as a reasonable person, including abiding by the law.

89. Counterclaim-Defendant breached the duty of reasonable care by mailing Counterclaim-Plaintiff's parents the Lawsuit without Counterclaim-Plaintiff's knowledge or consent.

90. Counterclaim-Defendant had no legitimate purpose in mailing Counterclaim-Plaintiff's parents the Lawsuit which contained secret and private sexual information other than to harass, embarrass, and humiliate Counterclaim-Plaintiff.

91. Counterclaim-Defendant should have realized that the conduct involved an unreasonable risk of causing Counterclaim-Plaintiff emotional distress.

92. Counterclaim-Plaintiff suffered emotional distress or mental injury that is medically diagnosable and sufficiently severe to be medically significant.

93. Counterclaim-Defendant's conduct caused Counterclaim-Plaintiff to suffer emotional distress and mental injury that is medically diagnosable and sufficiently severe to be medically significant.

94. As a result of Counterclaim-Defendant's conduct, Counterclaim-Plaintiff will continue to suffer serious emotional distress, humiliation, embarrassment, and potential harm from those who target women in the sex industry.

WHEREFORE, Counterclaim-Plaintiff prays this Court enter Judgment in her favor and against Counterclaim-Defendant for damages of a fair and reasonable amount in excess of $75,000 and for her attorneys' fees, costs, pre-judgment and post-judgment interest as allowed by law, and for all such further relief as the Court deems just and proper.

/s/ _____
Justin A. Hardin, #57555MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
jhardin@bjpc.com

Attorneys for Counterclaim-Plaintiff/Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served by the Court's electronic filing system on this ___ day of November, 2023, on the counsel of record listed below.

Joseph A. Ott
Mark E. Blankenship, Jr.
3544 Oxford Blvd.
Maplewood, MO 6343
joe@ott.law
mark@ott.law
*Attorneys for Plaintiff/Counterclaim-Defendant*