IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN DOE                           )
                                   )
    Plaintiff                  )
                                   )
    v.                         )          Case No. 4:23-cv-01312-SEP
                                   )
LESLIE SUTTON                      )
                                   )
    Defendant                  )

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS CERTAIN COUNTS OF PLAINTIFF'S COMPLAINT</u>**

Plaintiff filed this action against Defendant seeking damages for alleged violations of a

number of privacy torts, infliction of emotional distress and an alleged violation of Missouri's

statute prohibiting the distribution of certain photographs. On or around November 15, 2023,

Defendant filed their Motion to Dismiss the following counts of Plaintiff's Complaint for failure

to state a claim as to the following counts: (i) intrusion upon seclusion; (ii) public disclosure of

private facts; (iii) intentional infliction of emotional distress (IIED); and (iv) negligent infliction

of emotional distress (NIED).

    1. <u>In order to survive a Motion to Dismiss, Plaintiff need only show facts sufficient to
   raise the right to relief above the speculative level.</u>

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." <u>Fed.R.Civ.P. 8(a)(2)</u>. To satisfy this requirement, a plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs*

*Ins. Co. of Am.*, <u>804 F.3d 915, 917</u> (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, <u>550 U.S.</u>

<u>544, 570</u> (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

1

alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).

2. Plaintiff has pled sufficient facts to support a claim for intrusion upon seclusion because Plaintiff has alleged that the photographs were directed toward distribution to the general public.

Plaintiff has sufficiently pled facts supporting a claim for intrusion upon seclusion because the parties agreed in writing that the subject matter of the photos would be secret and private. Defendant Sutton obtained the photos by deceiving Plaintiff into believing that the photos would be kept secret. Such deception was held as a matter of law to be "unreasonable means" under the test in *Corcoran*. *Corcoran v. Southwestern Bell Telephone Co.*, 572 S.W.2d 212, 215 (Mo. Ct. App. 1978) (public disclosure of private facts and intrusion upon seclusion).

Under Missouri law, three elements encompass the claim for unreasonable intrusion upon the seclusion of another: (1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means. *Corcoran* at 215. The *Corcoran* court specifically determined that obtaining private information through deception is sufficient to satisfy the third element:

> The record supports the conclusion that defendant Corcoran obtained the Corcorans' phone bill by deception; opened the sealed, first-class mail addressed to the plaintiffs, and read the contents

2

without authorization. There is little, if any, evidence to dispute these facts in the record, and respondent Corcoran makes no attempt to controvert them on appeal. The evidence was sufficient to submit this portion of the case to the jury. *Vernars v. Young,* 539 F.2d 966 (3rd Cir. 1976)

*Corcoran v. Southwestern Bell Tel. Co.*, 572 S.W.2d 212, 215 (Mo. Ct. App. 1978)

Defendant argues that Plaintiff's own facts defeat a claim for intrusion upon seclusion as his Petition conceded the photographs were taken with his consent and therefore were not obtained by defendant through some method objectionable to the reasonable person. Defendant Sutton further argues that without any further description, Plaintiff has failed to allege facts to support the contention that the photographs concern a "secret and private subject matter" and that a conclusory statement that the photograph is "intimate" cannot suffice.

Plaintiff is only required to plead sufficient facts about the photos to raise above the "speculative level" that the photographs concern a secret and private subject matter. Plaintiff pled that there were multiple sets of photographs. *Second Amended Complaint,* ¶ 14, 17. In some Plaintiff is "…sitting on her couch wearing a brown-colored collar around his neck. Defendant Sutton's hand is looped through the o-shaped ring on the collar so as to display her "ownership" of Plaintiff Doe in the context of their relationship. In Set 1, Plaintiff Doe's full face is shown and is identifiable." *Second Amended Complaint,* ¶ 14. This description and the other facts about the nature of the BDSM relationship between the parties at Paragraph 7 of the Second Amended Complaint raises the allegations above a speculative level, and is sufficient for a Motion to Dismiss.

Sutton overlooks that she and Plaintiff Doe agreed verbally and in writing to enter into a polyamorous BDSM relationship, where Doe would be a submissive partner to Sutton and be subjected to bondage, discipline, sadism, and other masochist sexual fetishes under certain

conditions. Any photos taken in this context were agreed to be private. *Second Amended Complaint* at ¶ 14. Defendant Sutton disseminated the photos despite previously agreeing that the photos were to be secret and private. Because she obtained the photos therefore through deception, the third *Corocoran* element is satisfied.

While it is true that Plaintiff consented to some of the pictures being taken, he did not consent to those being disseminated to third parties. Defendant Sutton further admitted to LoyalFans that the image of Plaintiff Doe she had sold to at least one follower was not consensual. More specifically, Defendant Sutton admitted that the nonconsensual dissemination of the image in question had "violat[ed] content standard 11.6 in the Loyalfans Terms and Conditions."[1] *Second Amended Complaint at ¶ 25.* Defendant Sutton in doing so admits that the photos are "sexually explicit," and this satisfies the standard to overcome Defendant's Motion to Dismiss.

3. <u>Plaintiff has pled sufficient facts to support a public disclosure of private facts claim because Plaintiff alleges that the photo was published in multiple online forums with uncertain reach, which constitutes a substantial likelihood of distribution to the general public, and because the publication of the photos was extreme or outrageous because the photos were obtained through deception.</u>

A.    Plaintiff's complaint alleges that the distribution of photos was made to the general public.

---

[1] The Content Standards Section, located on page 12 of LoyalFans' Terms of Service Agreement states the following:

> These content standards ("Content Standards") apply to all Content and the use of the Interactive Services. Content must comply with all federal, state, local, and international laws and regulations and credit card association standards. Content must not: . . . . Promote, depict, or constitute "revenge porn" (being any sexually explicit material featuring any individual who has not given prior, express, and informed consent to that material (a) being taken, captured, or otherwise memorialized; or (b) being posted and shared on the Website).

Under Missouri law, the elements of the tort of unreasonable publicity given to another's private life are: (1) publication or publicity; (2) absent any waiver or privilege; (3) of private matters in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities. *Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 498-99 (Mo. Ct. App. 1990).Defendant Sutton argues that Plaintiff Doe claims the photographs from "Set 1" were published to approximately sixteen (16) individuals and the single photograph constituting "Set 2" was disseminated to just one (1) individual. (Complaint ¶¶ 15: 20-24). Furthermore, Defendant Sutton argues that the alleged publication was made to less than 20 people that it cannot meet the definition of publication to the general public or to a large number of persons, Plaintiff Doe is unable to satisfy the publication requirement. Defendant Sutton's argument is flawed because the publication element concerns where the publication was directed, and there is no strict numerical measure of what is sufficient, and because the total reach of distribution for the photos has not been established.

Under the first element, publication means "communication to the public in general or to a large number of persons, as distinguished from one individual or a few." *St. Anthony's Medical Ctr. v. H.S.H.*, 974 S.W.2d 606, 610 (Mo. Ct. App. 1998) (quoting *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892, 898 (Mo. 1959). In *Biederman's,* the Court held that a debt collector revealing the existence of a debt on three different occasions to patrons in a restaurant was sufficient to consisted "publication" in a public disclosure of private facts claim. *Id.*   The *Biederman's* case focused on whether the communication was directed to the general public, instead of relying upon a strict numerical analysis. This reasoning was subsequently confirmed in *Childs v. Williams*, 825 S.W.2d 4 (Mo. Ct. App. 1992), where the Court interpreted *Biederman's* in this way:

In *Biederman's*, the communications were made on three occasions to restaurant patrons, presumably a large number of persons, more than a few. But, the emphasis of the opinion is that communications were made in a *public* restaurant, an environment conducive to the dissemination of the information to the public at large. It is of no consequence that private facts are communicated, even to a large group of persons, if by that communication the private facts are not made public. The critical aspect of the publication requirement is *public* disclosure — communications that are available to the general public, communications that have a likelihood of becoming public knowledge.

*Id.* at 8-9. (Emphasis supplied).

Here, Defendant Sutton disseminated sexual images of Plaintiff Doe over the Internet, an environment conducive to the dissemination of the information to the public at large. Like in *Biederman's*, Defendant Sutton made such communications on more than one occasion. Defendant Sutton's Twitter had at least 16 followers, and the notion that it was a "private" twitter, without reference to how other user's gained access to the feed, is not sufficient at a motion to dismiss stage to determine that the communication was not "published" sufficiently to satisfy the first element. In addition, Defendant Sutton overlooks the fact that she made such communications on more than one platform, each of which had many followers. So theamount is than a few people, and certainly enough for a public café, as is described in *Biederman*. But the overall tenor of Sutton's distribution of the images suggests that it was directed at the public because she published the images on multiple platforms, all of which were "public" in the sense described in *Biederman.*

In addition, there is a substantial factual dispute as to whether the publication was only made to 20 or so individuals. It is unclear how individuals gained access to Sutton's "private" Twitter, whether individuals came and went, and whether the individuals that received the photos were anticipated by Sutton to further distribute them. Because Sutton was making substantial income from her work as a dominatrix, she stood to financially benefit from further distribution of

the photos. At minimum this creates a specific enough inference at the motion to dismiss stage to qualify as a "publication."

B.     <u>Plaintiff's description of the contents of the photos is sufficient because Plaintiff has alleged that at least one photo of an unknown amount was private.</u>

Plaintiff has alleged that "[o]n or around August 27, 2022, Defendant Sutton took private images of Plaintiff engaging in sexual activities with her and disseminated them over various online platforms to third parties without Plaintiff's consent. Plaintiff Doe's full face is shown and is identifiable in these images." Complaint at ¶ 47. Plaintiff further alleges that in some of the photos "he is sitting on her couch wearing a brown-colored collar around his neck. Defendant Sutton's hand is looped through the o-shaped ring on the collar so as to display her "ownership" of Plaintiff Doe in the context of their relationship. In Set 1, Plaintiff Doe's full face is shown and is identifiable. *Second Amended Complaint* at 14.

There is no requirement that Plaintiff plead the specific content of each photograph when Plaintiff has alleged, as here, that multiple sets of photographs of Plaintiff in compromising sexual positions were disseminated, and Defendant has admitted that the photos were distributed without consent. In addition, Plaintiff has alleged that Defendant Sutton may have taken additional photos of which he has no awareness. When Defendant Sutton volunteered to remove the photos from Loyalfans because they were violative of the terms of use, Defendant Sutton also admitted that the and that this sale was not consensual. More specifically, Defendant Sutton admitted that the nonconsensual dissemination of the image in question had "violat[ed] content standard 11.6 in the LoyalFans Terms and Conditions." *See Second Amended Complaint,* ¶ 25. That standard provides that: "Content must not: . . . . Promote, depict, or constitute "revenge porn" (being any sexually explicit material featuring any individual who has not given prior, express, and informed consent

to that material (a) being taken, captured, or otherwise memorialized; or (b) being posted and shared on the Website)." *See https://www.loyalfans.com/terms-conditions,* accessed 11.30.23.

4.   <u>Defendant's conduct in deceiving Plaintiff into believing that the photos would not be distributed, and then distributing them, is extreme and outrageous and raises above the speculative level that Sutton intended to cause extreme emotional distress.</u>

The essential elements of a claim for intentional infliction of emotional distress are: (1) The defendant's conduct must be outrageous or extreme; (2) The defendant must act intentionally or recklessly; (3) There must be extreme emotional distress that results in bodily harm; (4) Caused by the defendant's conduct; and (5) The conduct must be intended solely to cause extreme emotional distress to the victim. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 119 (Mo. App 2008). *See also, Conway v. St. Louis County*, 254 S.W.3d 159, 165-66 (Mo. App. 2008). Wrongful conduct alone cannot serve as a basis for the tort, but instead, the conduct must have been so outrageous and extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 446 (Mo. App. 2000) (quoting *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997)). In addition, it is essential that the conduct be intended only to cause emotional distress to the victim. *Id.*

A.   <u>Intent In Solely Causing Extreme Emotional Distress</u>

Defendant Sutton first argues that her conduct was not intended solely to cause extreme emotional distress to the victim. We disagree. Defendant Sutton and Plaintiff Doe were engaged in a polyamorous BDSM relationship, which involved Doe being a submissive partner to Sutton and her. As candidly put by Defendant Sutton in her Counterclaim against Plaintiff Doe, Sutton's role in the relationship was to humiliate and dominate him. See Defendant Sutton's Proposed

Counterclaim Against Plaintiff Doe. Defendant Sutton intentionally performed bondage, discipline, sadism, and other masochist sexual fetishes with Plaintiff Doe.

Although Plaintiff consented to the relationship, he did not consent to Sutton taking photos of these actions and distribute them to an unknown number of individuals online. Plaintiff's allegations that Sutton distributed the photos despite expressly agreeing to not do the same raises Plaintiff's intentional infliction of emotional distress claim above a speculative level.

B. Issue of Outrageousness

Defendant Sutton again argues that the "description of the subject photographs is lacking in specificity to adequately ascertain their content and support a factual basis that the dissemination of the same was outrageous or extreme," thus "not ris[ing] beyond the level of speculative content." Defendant Sutton cites no caselaw in support of her argument. That is because the level of specificity that Defendant Sutton demands is not required at a Motion to Dismiss stage. Indeed, Defendant's Motion to Dismiss and counterclaims seem to fully admit that the photos were obtained through deception in that Sutton represented she would not disseminate the photographs, but did so.

Finally, Sutton submitted a request to the administrative team of LoyalFans to delete the photos because they violated the terms of service that required that "sexually explicit material featuring any individual who has not given prior, express, and informed consent to that material." The same is an admission that her conduct was to post sexually explicit material without consent.

5. Plaintiff has sufficiently pled a claim for negligent infliction of emotional distress because Plaintiff has described the nature and content of the photographs sufficiently to raise above a speculative level the claim that the Defendant should have known that disseminating the photos involved an unreasonable risk of emotional distress.

The general elements of a negligence action are 1) a legal duty of the defendant to protect the plaintiff from injury, 2) breach of the duty, 3) proximate cause, and 4) injury to the plaintiff. *Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2002). Claims seeking recovery of damages for the negligent infliction of emotional distress require proof of two additional elements: 1) that the defendant should have realized that his conduct involved an unreasonable risk of causing distress, and 2) that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant. *Id.*

Defendant Sutton does not challenge the general negligence elements for negligence. Rather, Defendant Sutton's sole argument is merely that Plaintiff's description of the photographs lacks facts to support the notion that Defendant realized or should have realized her conduct involved an unreasonable risk of causing distress.  Again, Plaintiff has pled that at least one of the photos was a picture of him sitting naked on a couch with a dog collar on – such allegation raises above the speculative level the claim that the photos were known to Defendant to be embarrassing to Plaintiff. So her conduct in distributing them involved an unreasonable risk of causing distress.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendant's Motion to Dismiss Certain Counts of Plaintiff's Complaint for failure to state a claim.

Respectfully submitted,

**OTT LAW FIRM**

Joseph A. Ott, #67889

Mark E. Blankenship Jr., #73123

3544 Oxford Blvd
Maplewood, MO 63143
Telephone:  (314) 293-3756
Facsimile:   (314) 689-0080
joe@ott.law
mark@ott.law
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was served by the Court's electronic filing system on this 30th day of November, 2023, on the counsel of record listed below.

Justin A. Hardin, #57555MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
jhardin@bjpc.com
*Attorney for Defendant*

*/s/ Mark E. Blankenship Jr.*

11