UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:23-cv-01312-SEP |
| | ) |
| LESLIE SUTTON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff's Motion for Leave to Proceed Under Pseudonym, Doc. [7], Defendant's Motion to Dismiss Count I, Doc. [21], Defendant's Motion to Dismiss Certain Counts, Doc. [14], and Defendant's Motion for Leave to File Counterclaim, Doc. [20]. For the reasons set forth below, the Motion for Leave to Proceed Under Pseudonym is granted; the Motion to Dismiss Count I is granted; the Motion to Dismiss Certain Counts is granted in part and denied in part; and the Motion for Leave to File Counterclaim is granted.

### FACTS AND BACKGROUND[1]

This case arises from the alleged nonconsensual dissemination of images taken on two separate occasions. Defendant conducted online sex work, including "bondage and discipline, domination and submission, sadism and masochism" ("BDSM") and female domination ("femdom"). Doc. [17] ¶ 7. She distributed content on various platforms, including Loyalfans.com, "an online platform for content creators where fans pay a subscription to access premium content," and social media platforms Twitter and Discord. *Id.* ¶ 8. On or around November 2021, Plaintiff met Defendant online through her public sex work Twitter account. *Id.* ¶¶ 9, 21. Over time, the two began an intimate relationship. *Id.* ¶ 10. Throughout the relationship, Plaintiff was aware that Defendant engaged in sex work. *Id.* ¶ 11.

On two occasions pertinent to this case, Plaintiff and Defendant met in person and engaged in BDSM sexual relations. First, in August 2022, they met at Defendant's residence and took a series of 3-5 photographs ("Set 1"). *Id.* ¶¶ 12-14. Plaintiff consented to Defendant taking the photos of him, "so long as they be kept private and not disclosed to third parties." *Id.* ¶ 12.

---

[1] For purposes of the motion to dismiss, the Court takes the factual allegations in the Second Amended Complaint, Doc. [17], to be true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Defendant "verbally agreed that she would not disclose these photographs." *Id.* ¶ 13.  In the photographs, Plaintiff is sitting on Defendant's couch "wearing a brown-colored collar around his neck," with Defendant's "hand [ ] looped through the o-shaped ring on the collar so as to display her 'ownership' of Plaintiff Doe in the context of their relationship." *Id.* ¶ 14.  Plaintiff's "full face is shown and is identifiable." *Id.*

At some unspecified point after this, Defendant posted pictures from Set 1 to her private Twitter account, which has "approximately 16 followers, all of whom are Defendant Sutton's personal friends (i.e., friends not from sex work or BDSM spaces)." *Id.* ¶ 16.  She also sent the photographs to "various Twitter and Discord group chats with her friends who also engage in sex work and BDSM practices." *Id.*

On the second relevant occasion, in December 2022, Plaintiff and Defendant went to a hotel in Chicago.  While there, Defendant is alleged to have taken photos of Plaintiff engaging in BDSM sexual activities without Plaintiff's knowledge or consent ("Set 2"). *Id*. ¶¶ 17-18, 65, 100.[2]  Plaintiff's face was not visible or identifiable due to a blur effect and watermark added by Defendant. *Id.* ¶ 19.

Within 24 hours of taking Set 2, Defendant sold a Set 2 image to a subscriber on LoyalFans.com.  *Id.* ¶¶ 17-20.  Though Plaintiff's face was not visible, this subscriber was able to identify him through a combination of information from the caption of the photo on LoyalFans.com and Defendant's public Twitter account.  *Id.* ¶ 21.  Plaintiff learned of the existence and sale of the photograph when he received a message from Defendant's subscriber, asking him if there were more pictures from his "photoshoot" with Defendant.  *Id.* ¶ 20.

Plaintiff confronted Defendant about the photograph, and Defendant admitted to taking one photograph the day prior and selling it to one subscriber on LoyalFans.com.  *Id.* ¶ 22.  Defendant also admitted to sharing one image from Set 1 to her private Twitter. *Id.* ¶ 23.

---

[2] While the "Facts" section of the Second Amended Complaint does not describe the contents of Set 2 in detail beyond characterizing it as "intimate" and noting that Plaintiff's face is not visible, Doc. [17] ¶¶ 18-19, those contents are further described in later sections.  Plaintiff has alleged only two incidents of photo-taking and two corresponding sets of photos:  Set 1, taken at Defendant's home with Plaintiff's knowledge and consent, and Set 2, taken at a hotel without Plaintiff's knowledge or consent.  The Court thus finds it sufficiently unambiguous for purposes of the motion to dismiss that the factual allegations describing "photographs of Plaintiff Doe engaging in BDSM sexual activities *in a hotel room*," *id*. ¶ 65 (emphasis added), and photographs taken "of Plaintiff Doe performing BDSM sexual acts *without his knowledge or consent*," *id.* ¶ 100(a) (emphasis added), are descriptions of Set 2.

2

Plaintiff demanded Defendant delete the image that she sold on LoyalFans.com, but Defendant explained "she was unable to do so because once someone purchases a picture, it is added to their LoyalFans 'library' and cannot be deleted." *Id.* ¶ 24.

During the summer of 2023, Plaintiff made numerous attempts to have the images removed from LoyalFans.com, to no avail. *Id.* ¶ 25. Defendant participated in some of the unsuccessful efforts. *Id.* During this time, Plaintiff learned from Defendant that some images from Set 1 had also been shared "to her friends in Twitter group chats and in Discord messages." *Id.* ¶ 26. Plaintiff demanded Defendant delete the accounts and messages, and Defendant complied. *Id.* ¶¶ 27-28.

Plaintiff commenced this action in Missouri state court and Defendant filed a notice of removal. *See* Doc. [1]. Plaintiff alleges six counts against Defendant:

**Count I**: violation of Mo. Rev. Stat. § 573.110, nonconsensual dissemination of private sexual images;

**Count II**: violation 15 U.S.C. § 6851, disclosure of intimate images;

**Count III**: intrusion upon seclusion;

**Count IV**: public disclosure of private facts;

**Count V**: intentional infliction of emotional distress; and

**Count VI**: negligent infliction of emotional distress.

Doc. [17]. Plaintiff filed the original action under the pseudonym "John Doe" and seeks leave of the Court to continue proceeding under a pseudonym. Docs. [1], [7]. Defendant opposes Plaintiff's request to use a pseudonym. Doc. [13]. Defendant also moves to dismiss Counts I, III, IV, V, and VI for failure to state a claim. Docs. [14], [21]. Plaintiff responded in opposition to both motions to dismiss. Docs. [18], [23]. Defendant also moved for leave to file a counterclaim, Doc. [20], and Plaintiff made no response. The Court begins with Defendant's Motion for Leave to File Counterclaim, Doc. [20].

## MOTION FOR LEAVE TO FILE COUNTERCLAIM

Defendant seeks leave to file a counterclaim alleging that Plaintiff "published a website entitled Leslie-Sutton.com which listed [Defendant's] name, contact information, and private online account information, and further accused her of committing sexual assault." Doc. [20-1] ¶ 37. Defendant also alleges Plaintiff "mailed a copy of the Lawsuit, containing allegations of a sexual nature and disclosing graphic details of [Plaintiff's] anonymous online sex work, to her

3

parents' home." *Id*. ¶ 38. Defendant claims to have suffered "severe emotional stress, lack of sleep, and humiliation from [Plaintiff's] conduct, as it greatly affects [Plaintiff's] relationship with her parents, future intimate relationships and job prospects." *Id*. ¶ 39. Plaintiff has not responded to Defendant's motion and the time for doing so has passed.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a district court "should freely give leave [to amend a pleading] when justice so requires." Under the Rule's "liberal amendment policy," denial is only appropriate "in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court is not aware of any such circumstances, and Plaintiff has not opposed the proposed amendment. The Court therefore grants Defendant's Motion for Leave to File Counterclaim.

### MOTION TO PROCEED UNDER A PSEUDONYM

Plaintiff moves to proceed under pseudonym because this case concerns Plaintiff's "extremely sensitive personal and sexual information." Doc. [7] at 3.

### I.  **Legal Standard**

"Federal courts disfavor the use of fictitious names in legal proceedings," because it "runs afoul of the public's First Amendment interest in public proceedings and their common law right of access thereto." *Cajune v. Indep. School Dist. 194*, 105 F.4th 1070, 1076 (8th Cir. 2024). The Eighth Circuit recently joined its sister circuits in holding that "a party may proceed under a fictitious name only in those limited circumstances where the party's need for anonymity outweighs countervailing interests in full disclosure." *Id*. at 1077.

In determining whether a Plaintiff has demonstrated a "need for anonymity" sufficient to "outweigh[] countervailing interests in full disclosure," courts consider a "non-exhaustive" list of factors. *Id*. Factors weighing in favor of pseudonymity typically include: (1) whether "the party seeking anonymity [is] challenging government activity"; (2) whether identification "threaten[s] to reveal information of a sensitive and highly personal nature"; (3) whether a party "would be required, absent anonymity, to admit an intention to engage in illegal conduct, thereby risking criminal prosecution"; and (4) whether there is a "danger of retaliation." *Id*. Factors weighing against pseudonymity include: (1) whether anonymity poses a "unique threat of fundamental unfairness to the defendant"; (2) whether "the public's interest in the case is furthered by

4

requiring that the litigants disclose their identities"; and (3) whether there exist "alternative mechanisms that could protect the confidentiality of the litigants." *Id*.

## II.     Discussion

Plaintiff's motion to proceed by pseudonym presents a close call.  There is no indication or argument that Plaintiff is challenging government activity, or that he would risk criminal prosecution for the facts admitted in his pleadings.  Nor would the use of his name expose him to retaliation—after all, Defendant is already aware of his identity.  *See, e.g.*, *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) ("Plaintiff has not . . . explained how or why the use of her real name in court papers would lead to harm, since those who presumably would have any animosity toward her already know her true identity.").  But Plaintiff does argue that this case concerns "sensitive and highly personal" matters.  Doc. [7] at 2-3; *Cajune*, 105 F.4th at 1077.

Citing recent cases in which use of a pseudonym was permitted in relation to allegations of rape, sexual assault, and child abuse, as well as older cases regarding "abortion and birth control use, homosexuality and transsexuality, AIDS, and the welfare of abandoned or illegitimate children," Doc. [7] at 2-3 (citing cases), Plaintiff argues that the "common thread" is the "presence of some social stigma or the threat of physical harm to the plaintiffs attaching to disclosure of their identities to the public record."  *Id*. at 3 (quoting *Doe v. Blue Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. 1992)).  Plaintiff argues that being forced to proceed publicly would "allow others to scrutinize his extremely sensitive personal and sexual information and the exact injuries his lawsuit seeks to address," and that identification would exacerbate the emotional distress he has suffered and continues to suffer as a result of the dissemination of the subject images.  *Id*.

That argument has considerable force, though the bar for what constitutes "social stigma," making a matter so "personal and highly sensitive" as to warrant anonymity, is a high one.[3]  "[C]ourts have declined to allow plaintiffs to proceed pseudonymously where plaintiffs

---

[3] *See W.G.A. v. Priority Pharmacy, Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999) (pseudonymity permitted for AIDS patient in action against pharmacy); *D.P. for Doe v. Montgomery Cnty.*, 2019 WL 2437024, at *1 (E.D. Mo. June 11, 2019) (same for alleged victim of sexual assault, who was disabled and had a legal guardian, in action against police officer); *Doe H.M. v. St. Louis Cnty.*, 2008 WL 151629, at *1 (E.D. Mo. Jan. 14, 2008) (same for adult plaintiff in § 1983 action where use of his real name would reveal that he had been sexually abused as a child); *Roe v. St. Louis Univ.*, 2009 WL 910738, at *4-5 (E.D. Mo. Apr. 2, 2009) (same for alleged rape victim in action against her university for negligent handling of plaintiff's

feared they would face *disapproval by many in their community* if they prosecuted the case under their real name." *Cajune*, 105 F.4th at 1077 (emphasis added); *see Doe v. Hartz*, 52 F. Supp. 2d 1027, 1046 (N.D. Iowa 1999) ("[T]he fact that [the litigant] may suffer some personal embarrassment, standing alone, does not require the granting of his request to proceed under a pseudonym." (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992))). And "the 'sexual' nature of the alleged wrongdoing here" is "not necessarily sufficient" to warrant pseudonymity. *Hartz*, 52 F. Supp. 2d at 1047.

But Plaintiff has alleged more than an interest in avoiding "personal embarrassment" or "disapproval." He alleges that he has suffered symptoms of anxiety and depression, post-traumatic stress disorder, and severe emotional distress because of the dissemination of these images, and that proceeding in his own name "may exacerbate his emotional distress." Docs. [17] ¶ 29, [7] at 3. Those are legitimate concerns. *See Haynes*, 2019 WL 2450813, at *3 (In "more recent cases . . . courts now place more weight on the psychological trauma faced by victims of sexual assault, the easy public access of court records online, and the deterrent effect that 'outing' a sexual assault victim may have on other victims.").

Moreover, one of Plaintiff's claims is brought pursuant to 15 U.S.C. § 6851 (disclosure of intimate images), which expressly authorizes courts to provide "injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym."[4] In light of this express authorization, courts have consistently granted requests to proceed under pseudonym in cases brought pursuant to 15 U.S.C. § 6851. *See, e.g.*, *Doe v. Ghiorso*, 2024 WL 3511641, at *2 (S.D. Ga. July 23, 2024) ("Although general embarrassment ordinarily might not be sufficient to support anonymity, § 6851 plainly contemplates the need for anonymity during litigation when the plaintiff's intimate image is shared involuntarily"); *Doe Williams v. Williams*, 2024 WL 2805642, *5 (S.D. Miss. May 31, 2024) ("Section 6851's very purpose is to protect against one's intimate matters being publicized, meaning that 'revealing plaintiff's identity plainly will incur, and thus

---

assault claims); *Doe v. Haynes*, 2019 WL 2450813, at *3 (E.D. Mo. June 12, 2019) (same for alleged victim of "forceful sexual assault" by music artist).

[4] Defendant maintains that Plaintiff's "vague and conclusory descriptions of the photographs . . . [do] not establish that the photographs concern a subject matter that is of the utmost intimacy." Doc. [13] at 8. The Court disagrees. Allegations that the photographs depict Plaintiff engaging in BDSM sexual activities are sufficient for the Court to conclude that they concern a "sensitive and highly personal" subject matter. *Cajune*, 105 F.4th at 1077.

compound, the very harm [s]he already allegedly has suffered as a result of defendants' alleged disclosures'" (quoting *Doe v. Willis*, 2023 WL 6907100, *2 (D. Colo. Sept. 22, 2023))); *C.V. v. Carminucci*, 2024 WL 3983007, at *2 (D.N.J. Aug. 28, 2024) (finding "good cause to allow Plaintiff to proceed under a pseudonym," in part because plaintiff sought "relief under 15 U.S.C. § 6851, which expressly provides that a plaintiff may proceed in litigation using a pseudonym"); *Doe v. Unknown Party*, 2024 WL 492231, at *3 (D. Ariz. Feb. 7, 2024) (allowing the use of a pseudonym where plaintiffs sought "relief under 15 U.S.C. § 6851, and that statute expressly provides that 'the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym'" (quoting 15 U.S.C. § 6851)); *but see Doe v. McCoy*, 2024 WL 843908, *9 (N.D. Ga. Feb. 28, 2024) (suggesting that 15 U.S.C. § 6851 "provides for injunctive relief maintaining the plaintiff's confidentiality" only "*in the event his or her claim succeeds*" (emphasis added)).

Defendant's opposition to Plaintiff's request is rooted in "basic fairness": "Plaintiff should not be allowed to name Defendant in this suit, thereby publicizing her formerly anonymous sex work activity and accuse Defendant of violating laws prohibiting the dissemination of photographs, all while remaining anonymous." Doc. [13] at 7. When a plaintiff accuses an individual, as opposed to the government, of wrongdoing, some courts have found that "basic fairness counsels against allowing [a] plaintiff to proceed pseudonymously . . . [because it would] be fundamentally unfair for plaintiff to be able to 'clear his name' and wield a potential judgement against [defendant] to his advantage but hide under a shield of anonymity if unsuccessful." *Doe v. Doe*, 649 F. Supp. 3d 136, 140 (E.D.N.C. 2023), *aff'd* 85 F.4th 206 (4th Cir. 2023); *see Doe v. Virginia Polytechnic Inst., & State Univ.*, 2022 WL 972629, at *3 (W.D. Va. Mar. 30, 2022) ("When a plaintiff alleges that a private party has violated federal law, 'basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names.'" (quoting *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979))).[5]

---

[5] Defendant also argues that Plaintiff has "unclean hands," and that "[i]t defies the notion of basic fairness that Plaintiff could proceed pseudonymously in his claim against Defendant while also remaining anonymous as a counterclaim-defendant." Doc. [13] at 9-10. That argument invites the Court to assume that the counterclaim allegations are true or to find that the mere filing of a counterclaim defeats any considerations in favor of allowing a plaintiff to proceed by pseudonym. Defendant provides no authority for that principle, and the Court declines to adopt it.

The Court is unaware of any other factor militating against Plaintiff's use of a pseudonym in the early stages of this litigation.  Defendant already knows Plaintiff's identity, so there is no "unique threat of fundamental unfairness" to Defendant.  *See Cajune*, 105 F.4th at 1077 (quoting *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020)); *see Haynes*, 2019 WL 2450813, at *4 ("The Court reiterates that Defendant knows Plaintiff's real name and should not be impaired by Plaintiff's use of a pseudonym in conducting discovery or impeaching Plaintiff's credibility.").  Nor is the public interest in disclosure apparently stronger here than in other contexts in which anonymity is typically granted.  As it does with respect to rape and sexual assault, the public has an interest in protecting the identities of victims of nonconsensual dissemination of private images, who are more likely to try to vindicate their rights if they can proceed under pseudonym.[6]  *Id.* at *3 ("The Court is also mindful of the strong public interest in protecting the identities of sexual assault victims so as not to deter other victims from reporting crimes against them.").  And though there may be "alternative mechanisms" to protect litigants from publication of the images themselves, at least prior to trial, the use of pseudonyms is the only way to protect them from being publicly linked to the content of those images, which is what they "desire[ ] to keep private and secret."  Doc. [17] ¶ 62.

Considering all of the above, the Court finds that Plaintiff's "need for anonymity outweighs the countervailing interests in full disclosure."  *Cajune*, 105 F.4th at 1077.  The motion to proceed under pseudonym is therefore granted, but "the restrictions contained in this order only apply to the discovery period and may be reconsidered if this case goes to trial." *Haynes*, 2019 WL 2450813, at *4 (quoting *Roe v. St. Louis Univ.*, 2009 WL 910738, at *5 (E.D. Mo. Apr. 2, 2009)).

---

[6] Defendant argues that "the distinction between compelled and consensual acts is paramount in this matter," such that those who "voluntarily engage in [consensual] sexual activities with a partner" should not be permitted to proceed anonymously in an action objection to the disclosure of images of those activities, whereas victims of rape should be so permitted.  Doc. [13] at 2, 3, 5.  She cites no case relying on that distinction, however.  And the Court notes that such a distinction is absent from 15 U.S.C. § 6851, which empowers a plaintiff to sue—and empowers a court to allow that plaintiff to proceed by pseudonym, § 6851(b)(3)(B)—for the nonconsensual disclosure of an "intimate visual depiction," even if the plaintiff consented to the depicted conduct (unless it was produced in a public place, *see* § 6851(a)(5)(B)(ii)) and even if the plaintiff consented to the creation of the depiction and/or its disclosure to someone else, *see* § 6581(b)(2).  The Court is thus unpersuaded that whether the depicted conduct was consensual is "paramount" in deciding whether a plaintiff may proceed anonymously.

8

# MOTION TO DISMISS

**I.       Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. A plaintiff's factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc*., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The well-pled facts must establish more than a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 591 (8th Cir. 2009)). But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although courts must accept all well-pled factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

**II.      Discussion**

As set forth more fully below, Plaintiff's Counts III (intrusion upon seclusion), IV (public disclosure of private facts), and VI (negligent infliction of emotional distress) successfully state claims. Counts I (violation of Mo. Rev. Stat. § 573.110, nonconsensual dissemination of private sexual images) and V (intentional infliction of emotional distress) fail to state claims upon which

9

relief can be granted.  Count II (violation of violation 15 U.S.C. § 6851, disclosure of intimate images) is not the subject of any pending motion.

### A.  Count I:  Violation of Mo. Rev. Stat. § 573.110

Section 573.110 of the Missouri Revised Statutes creates a private right of action against one who commits the offense of "nonconsensual dissemination of private sexual images."  The offense has three elements.  First, an individual must "[i]ntentionally disseminate[] an image with the intent to harass, threaten, or coerce another person[.]"  § 573.110.2(1).  The target of the intended harassment, threat, or coercion must be at least eighteen years of age, be "identifiable from the image itself or information displayed in connection with the image," and either be "engaged in a sexual act," or their "intimate parts [must be] exposed, in whole or in part."  *Id*.  Second, the offending individual must have "[o]btain[ed] the image under circumstances in which a reasonable person would know or understand that the image was to remain private[.]"  § 573.110.2(2).  And third, the offending individual must have either "[k]now[n] or should have known that the person in the image did not consent to the dissemination."  § 573.110.2(3).

Defendant argues that the Second Amended Complaint is "completely devoid of any factual allegations that would suggest Defendant disseminated the subject photographs with the intent to harass, threaten, or coerce anyone," and thus fails to state a claim under § 573.110.2(1).  Doc. [22] at 3.  Plaintiff counters that "by distributing the images without Plaintiff's consent, [Defendant] *necessarily intended* harassment or humiliation," and that "at a minimum the most likely reason Defendant [disseminated the images] was to humiliate Plaintiff."  Doc. [23] at 1 (emphasis added).  This is because, in Plaintiff's view, "[d]issemination of sadomasochistic content is explicitly defined as being violative of the statue," and therefore, "the intent to harass element . . . is proven merely in virtue of the dissemination of the photos without consent."  *Id*. at 3.  Under Plaintiff's theory, "any person disseminating such conduct must be presumed to have done so with the intent to humiliate."  *Id*. at 5.

Plaintiff relies heavily on *People v. Austin*, 155 N.E.3d 439 (Ill. 2019), wherein the Illinois Supreme Court upheld the constitutionality of Illinois's statute criminalizing nonconsensual dissemination of private sexual images.  In analyzing whether the Illinois statute was unconstitutional because it lacked an express requirement of malice, the court discussed at length the harmful effect such dissemination can have on victims regardless of the disseminator's intent.  *Id*. at 461-62.  The court noted that "the motive underlying an intentional and

10

unauthorized dissemination of a private sexual image has no bearing on the resulting harm suffered by the victim." *Id* at 470.  The problem for Plaintiff's argument is that *Austin* addressed a different statute in a different analytical context.[7]

At its introduction in 2018, the Missouri bill that would eventually become § 573.110 was substantively similar in relevant part to the Illinois statue discussed in *Austin*.  *See* H.B. 1558, 99th Gen. Assemb., 2d Reg. Sess. (Mo. 2018) (as introduced) ("intentionally disseminates an image of another person . . . ");[8] 720 Ill. Comp. Stat. 5/11-23.5 (2016) (same).  But the text ultimately enacted by the Missouri legislature requires that an individual "intentionally disseminate[] an image *with the intent to harass, threaten, or coerce* another person . . . ." Mo. Rev. Stat. § 573.110.2(1) (emphasis added).  Thus, although Plaintiff urges that "the issue is not Defendant Sutton's purported state of mind when disseminating the conduct, [but] the dissemination itself," Doc. [23] at 4-5, the statutory text requires consideration of both.  And even accepting all Plaintiff's factual allegations as true and granting all reasonable inferences in favor of Plaintiff, the Second Amended Complaint does not permit this Court to reasonably infer that Defendant acted with the requisite state of mind.[9]

As Defendant notes, Plaintiff alleges that both Set 1 and Set 2 were disseminated *without Plaintiff's knowledge*.  *See* Docs. [22] at 3; [17] ¶¶ 20-23.  Nor are there any allegations indicating that Defendant ever planned or intended that Plaintiff learn of the dissemination. Plaintiff learned of the existence of Set 2 through a communication from a subscriber who identified him by piecing together information from multiple platforms.  Doc. [17] ¶¶ 20-21. And Plaintiff learned of the dissemination of Set 1 only by asking Defendant if any other such images had been shared with others.  *Id.* ¶ 23.  That is insufficient to support a reasonable inference that Defendant disseminated the images with a specific intent to harass, threaten, or coerce Plaintiff.  And while Plaintiff is correct that "[t]he fact that [Defendant] was possibly

---

[7] Indeed, the Illinois Supreme Court in *Austin* acknowledged this very difference, citing Missouri's § 573.110.2(1) among examples of "most state laws" on this subject, which "expressly require some form of malicious purpose or illicit motive as a distinct element of the offense." *Austin*, 155 N.E.3d at 470.

[8] Available at https://documents.house.mo.gov/billtracking/bills181/hlrbillspdf/5278H.01I.pdf.

[9] The allegation that Defendant's conduct was "intentional and malicious and done for the purpose of causing, or was known by Defendant to likely cause, Plaintiff humiliation, mental anguish, and severe emotional distress," Doc. [17] ¶ 91, is a "legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555, and not entitled to the presumption of truth.

11

motivated to profit off the dissemination does not negate any other motivations behind" the dissemination, Doc. [23] at 3, neither does the existence of a profit motive do anything to bolster an inference that Defendant had another intent, as required by § 573.110.2(1).

To survive a motion to dismiss, the well-pled facts, accepted as true, must permit the Court to infer more than the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  Plaintiff has not alleged facts from which the Court could reasonably infer that Defendant acted with the intent to harass, threaten, or coerce Plaintiff.  Because such an intention is a necessary element under § 573.110.2(1), Count I is dismissed for failure to state a claim.

### B.  Count III:  Intrusion Upon Seclusion

To state a claim of intrusion upon seclusion under Missouri law, a plaintiff must show: "(1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means." *Crader v. Wal-Mart Stores, Inc.*, 2010 WL 4930978, at *2 (E.D. Mo. Nov. 30, 2010) (quoting *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 609-10 (Mo. Ct. App. 1998)).  "Unlike the public disclosure of private facts, the intrusion upon seclusion requires [n]o showing of publication or publicity." *Corcoran v. Sw. Bell Tel. Co.*, 572 S.W.2d 212, 215 (Mo. Ct. App. 1998).

Defendant argues that Plaintiff's characterization of Set 2 as "intimate" is a legal conclusion, and that the Second Amended Complaint lacks factual allegations showing that Set 2 was "secret and private" subject matter.  Yet in the Second Amended Complaint, the Set 2 images from December 30, 2022, are repeatedly described as depicting BDSM sexual activities. *See, e.g., id.* ¶ 97 ("On or around December 30, 2022, Defendant Sutton took images of Plaintiff engaging in BDSM sexual activities with her . . . ."); *id.* ¶ 88 ("On or around December 30, 2022, Defendant Sutton took images of Plaintiff engaging in sexual activities with her . . . ."); *id.* ¶ 100(a) ("[took] images of Plaintiff [] performing BDSM sexual acts without his knowledge or consent"); *id.* ¶ 65 ("[took] photographs of Plaintiff [] engaging in BDSM sexual activities in a hotel room").  Additionally, Plaintiff "expressed to [Defendant] his desire to keep his BDSM sexual relations with her private and secret from third parties." *Id.* ¶ 62.  Because the tort of intrusion upon seclusion is not defined in terms such as "BDSM" or "sexual activities," but in terms of "secret and private subject matter," Plaintiff's description of the Set 2 images as depicting "BDSM sexual activities" is a factual assertion, not a "legal conclusion" or a

"threadbare recital[] of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Thus, accepting Plaintiff's description of Set 2 as true and granting all reasonable inferences in favor of Plaintiff, the Court finds that Count III sufficiently alleges a "secret and private subject matter." Therefore, Count III states a claim for intrusion upon seclusion.

### C. Count IV: Public Disclosure of Private Facts

The elements of a claim of public disclosure of private facts under Missouri law are: "(1) publication or publicity; (2) absent any waiver or privilege; (3) of private matters in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities." *Crader*, 2010 WL 4930978, at *2 (quoting *St. Anthony's Med. Ctr.*, 974 S.W.2d at 610). The first element, "publication," means "communication to the public in general or to a large number of persons, as distinguished from one individual or a few." *St. Anthony's Med. Ctr.*, 974 S.W.2d at 610 (quoting *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892, 898 (Mo. 1959)). Thus, publicity or publication for purposes of the tort of public disclosure of private facts "*means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.*" *Childs v. Williams*, 825 S.W.2d 4, at *8 (Mo. Ct. App. 1992) (emphasis in original) (quoting Restatement (Second) of Torts § 652D cmt. a (Am. L. Inst. 1977)); *see Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 498 (Mo. Ct. App. 1990) ("The elements and scope of the tort, recognized in Missouri, are embodied in the Restatement (Second) of Torts.").

Defendant again argues that the photos are not described in sufficient detail to establish what "private information" was disclosed. *Id.* at 4-5. As discussed in Section II.B, above, Plaintiff has sufficiently alleged a private subject matter—i.e., his "BDSM sexual relations" with Defendant, which he sought to keep private from others. He has also sufficiently alleged that the photos in question depict that subject matter, and that it is a subject matter in which the public has no legitimate concern. *See Y.G.*, 795 S.W.2d at 498 ("Sexual relations, for example, are normally entirely private matters." (quoting Restatement (Second) of Torts § 652D(b)).

As to the element of publicity, Defendant argues that Plaintiff has not alleged publication to "a large number of people," because "Plaintiff claims the photographs from 'Set 1' were published to approximately sixteen (16) individuals and the single photograph constituting 'Set 2' was disseminated to just one (1) individual." Doc. [15] at 4. According to Defendant, "the

13

alleged publication to less than 20 people cannot meet the definition of publication to the general public or to a *large* number of persons." *Id*.

In *Biederman's*, the Supreme Court of Missouri held that the publicity requirement was satisfied where statements were made orally in a public restaurant on three separate occasions. 322 S.W.2d at 898. More than 30 years later, the Missouri Court of Appeals held that a letter sent to a plaintiff's "supervisor, having been reviewed only by supervisors and others with a legitimate and direct interest in [plaintiff's] employment, [did] not constitute publication as required in an action for public disclosure of private facts." *Childs*, 825 S.W.2d at 9. In reaching that conclusion, the court provided the following interpretation of *Biederman's*:

> But, the emphasis of the [*Biederman's*] opinion is that communications were made in a *public* restaurant, an environment conducive to the dissemination of the information to the public at large. It is of no consequence that private facts are communicated, even to a large group of persons, if by that communication the private facts are not made public. The critical aspect of the publication requirement is *public* disclosure—communications that are available to the general public, communications that have a likelihood of becoming public knowledge.

*Id*. at 9. Judging from *Childs*, then, an audience of "less than 20 people" is not categorically insufficient to qualify as "publicity." Imagine, for example, an audience of 16 newspaper reporters. Nor does it seem to be dispositive under *Childs* that Defendant disseminated the images "over the Internet, an environment conducive to the dissemination of the information to the public at large." Doc. [18] at 6. Not every communication that occurs "over the Internet" is directed to, or available to, the public at large.

But here, Defendant allegedly disseminated the subject images over multiple online platforms. And while Plaintiff alleges that Defendant's private twitter account had only 16 followers, the number of people in the various Twitter and Discord group chats remain unknown. Doc. [7] ¶ 16. Defendant also allegedly sold Set 2 to *at least* one of Defendant's subscribers on LoyalFans.com. *Id*. ¶ 22. And when Plaintiff demanded that Defendant delete the images, he was told that "once someone purchases a picture, it is added to their LoyalFans 'library' and cannot be deleted." *Id*. ¶ 24. Indeed, Plaintiff's numerous attempts to have the images removed from LoyalFans.com were unsuccessful. *Id*. ¶ 25. Assuming Plaintiff's allegations are true and granting all reasonable inferences in his favor, the Court finds that Plaintiff's allegations support the reasonable inference that the subject images were disseminated in such a way that the images

14

would likely become public knowledge. While discovery may reveal otherwise, Plaintiff has pled all that is required at this early stage of litigation.

### D. Count V: Intentional Infliction of Emotional Distress

Under Missouri law, a claim for intentional infliction of emotional distress must include the following elements:

> (1) the defendant's conduct must be outrageous or extreme; (2) the defendant must act intentionally or recklessly; (3) there must be extreme emotional distress that results in bodily harm; (4) caused by the defendant's conduct; and (5) the conduct must be intended solely to cause extreme emotional distress to the victim.

*Crow v. Crawford & Co.*, 259 S.W.3d 104, 119 (Mo. Ct. App. 2008). "[I]mportantly here, it is an essential element of the tort that the conduct must be intended *only* to cause extreme emotional distress to the victim." *Thomas v. Special Olympics Mo., Inc.*, 31 S.W.3d 442, 446 (Mo. Ct. App. 2000) (internal quotation marks and citations omitted); *see also Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) ("Intentional infliction of emotional distress requires not only intentional conduct, but conduct that is intended only to cause severe emotional harm. [Plaintiff's] allegations do not support the inference that [Defendant's] *sole purpose* in its conduct was to invade [his] interest in freedom from emotional distress." (emphasis added)).

Defendant argues that the Second Amended Complaint fails on the first, third, and fifth elements: It does not describe the photographs in sufficient detail to support the reasonable inference that the dissemination was "outrageous and extreme"; it does not allege the requisite "bodily harm"; and it does not show "that the dissemination was intended 'solely' to cause extreme emotional distress." *See* Doc. [15] at 6. Because the Court finds that Plaintiff has failed to allege the fifth element—that Defendant acted solely to cause extreme emotional distress to Plaintiff—it does not reach Defendant's arguments as to the other elements.

As discussed in Section II.A, above, Count I of the Second Amended Complaint fails to state a claim under Mo. Rev. Stat. § 573.110 because it does not sufficiently allege that Defendant disseminated images with the "intent to harass, threaten, or coerce" Plaintiff. For the same reasons, the Second Amended Complaint fails to sufficiently allege that Defendant disseminated the images for the "sole purpose" of causing Plaintiff extreme emotional distress.

That does not conclude the analysis of Count V, though. The statute underlying Count I specifically prohibits dissemination of images with bad intent. But intentional infliction of emotional distress could conceivably result from *any* conduct, not just dissemination—including

15

"taking images of Plaintiff Doe without his knowledge and consent and failing to prevent others from accessing and/or disseminating the images."  Doc. [17] ¶¶ 89-91.  And so Plaintiff might have survived dismissal on Count V by alleging that Defendant took such images, or failed to prevent others from accessing them, with the sole intention to cause extreme emotional distress.  But in response to Defendant's argument on this element, Plaintiff states only that Defendant's "role in the[ir] relationship was to humiliate and dominate him," and that although he "consented to the relationship, he did not consent to [Defendant] taking photos of these actions and distribut[ing] them to an unknown number of individuals online."  Doc. [18] at 7-8.  Those allegations, taken to be true, do not support an inference that Defendant acted with the "sole purpose" of causing Plaintiff extreme emotional distress.  *Gibson*, 952 S.W.2d at 249.  And neither does anything else Plaintiff points to in the Second Amended Complaint.

There is no allegation, for example, that the consensual relationship between Plaintiff and Defendant had ended, or that there was animosity between the two at the time the images were shared.  *See* Doc. [17] ¶ 10.  Defendant shared Set 1 on a private Twitter account with her personal friends—friends "not from sex work or BDSM spaces"—and in group chats with other friends who "also engage in sex work and BDSM practices."  *Id.* ¶ 16.  And she sold Set 2 to a subscriber within a day of it being taken.  *Id.* ¶¶ 17, 20.  Defendant is not alleged to have shared the images with any person connected to Plaintiff, which might support the inference that she intended him distress.  And as Plaintiff appears to acknowledge, "Defendant's own commercial gain" was a reason for sharing the images, *id.* ¶ 100, at least as to Set 2.  The factual allegations do not indicate that Defendant ever expected Plaintiff to learn of the conduct or to experience any distressing effects from it.

To state a claim for relief that is "plausible on its face," the well-pled facts must establish more than a "mere possibility of misconduct."  *Id.* at 678-79.  Because Plaintiff's "allegations do not support the inference that [Defendant's] *sole purpose in its conduct* was to invade [his] interest in freedom from emotional distress," *Gibson*, 952 S.W.3d at 249 (emphasis added), Count V fails to state a claim upon which relief can be granted and is dismissed.

### E.  Count VI:  Negligent Infliction of Emotional Distress

"The tort of negligent infliction of emotional distress is a negligence action."  *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001).  The general elements are "1) a legal duty of the defendant to protect the plaintiff from injury, 2) breach of the duty, 3)

16

proximate cause, and 4) injury to the plaintiff." *Id*. And claims regarding negligent infliction of emotional distress "require proof of two additional elements: [5] that the defendant should have realized that his conduct involved an unreasonable risk of causing distress, and [6] that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Id.*

Defendant challenges the fifth element, arguing Plaintiff's Complaint lacks allegations showing that Defendant "should have realized that [her] conduct involved an unreasonable risk of causing distress," because it "fails to describe the photographs with specificity." Doc. [15] at 7. The Court disagrees.

According to the Second Amended Complaint, Set 1 includes "3-5 intimate photographs," in which Plaintiff is "sitting on [Defendant's] couch wearing a brown-colored collar around his neck," with Defendant's hand "looped through the o-shaped ring on the collar so as to display her ownership of Plaintiff [] in the context of their relationship," with Plaintiff's face visible and identifiable. Doc. [17] ¶ 14. Plaintiff consented to Defendant taking the photos "so long as" they were "kept private and not disclosed to third parties," and Defendant "verbally agreed" that she would not disclose them. *Id.* ¶¶ 12-14. Plaintiff also "expressed to Defendant Sutton his desire to keep his BDSM sexual relations with her private and secret from third parties." *Id.* ¶ 62. The Set 1 photos are repeatedly characterized as depicting BDSM sexual activities. *See, e.g.*, *id.* ¶ 96 ("On or around August 27, 2022, Defendant Sutton took private images of Plaintiff engaging in BDSM sexual activities . . . ."); *id.* ¶ 87 ("On or around August 27, 2022, Defendant Sutton took private images of Plaintiff engaging in sexual activities with her . . . ."). The detailed description of the contents of Set 1 is consistent with Plaintiff's characterization of the content as BDSM sexual material and also with Plaintiff's definition of "femdom," which falls under the umbrella of BDSM:

> Femdom is a BDSM sexual fetish in which a woman or women take on dominant roles and control or exert authority over their male or submissive partners through various activities, such as role-playing, power exchange, bondage, discipline, humiliation, and consensual acts of dominance by women[.]

*Id.* ¶ 7(b). Set 2 is described in less detail but is likewise repeatedly characterized as depicting BDSM sexual activities. *See, e.g., id*. ¶ 97 ("On or around December 30, 2022, Defendant Sutton took images of Plaintiff engaging in BDSM sexual activities with her . . . ."); ¶ 88 ("On or around December 30, 2022, Defendant Sutton took images took images of Plaintiff engaging in

17

sexual activities with her . . . ."); ¶ 100(a) ("[took] images of Plaintiff [] performing BDSM sexual acts without his knowledge or consent"); ¶ 65 ("[took] photographs of Plaintiff [] engaging in BDSM sexual activities in a hotel room").

The Second Amended Complaint is thus replete with factual assertions that both Set 1 and Set 2 depicted BSDM activities between Plaintiff and Defendant—activities that Plaintiff wished to keep "private and secret from third parties." Those allegations, accepted as true, along with reasonable inferences drawn therefrom, do plausibly state a claim that Defendant "should have realized that [disclosure of such material] involved an unreasonable risk of causing distress" to Plaintiff. *Thornburg*, 62 S.W.3d at 427. Accordingly, Count VI successfully states a claim for negligent infliction of emotional distress.

## CONCLUSION

Assuming all of Plaintiff's well-pled allegations to be true and drawing every reasonable inference in his favor, Counts I and V of the Second Amended Complaint fail to state claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Leave to File Counterclaim, Doc. [20], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Proceed Under Pseudonym, Doc. [7], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Certain Counts of Plaintiff's Complaint, Doc. [14], is **GRANTED in part** and **DENIED in part**. Count V is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Count I of Plaintiff's Amended Complaint, Doc. [21], is **GRANTED**. Count I is **DISMISSED** without prejudice.

**IT IS FINALLY ORDERED** that Defendant may file her proposed counterclaim no later than April 4, 2025.

Dated this 20th day of March, 2025.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE