IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE<br><br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>LESLIE SUTTON<br><br>Defendant/Counterclaim Plaintiff | Case No. 4:23-cv-01312-SEP |

**PLAINTIFF/COUNTERCLAIM DEFENDANT JOHN DOE'S
REPLY IN SUPPORT OF MOTION TO DISMISS
COUNT I, COUNT II, COUNT IV, AND COUNT V OF
DEFENDANT/COUNTERCLAIM PLAINTIFF LESLIE SUTTON'S
COUNTERCLAIM**

Comes now Plaintiff /Counterclaim Defendant Doe, by and through undersigned counsel, and for his Reply in Support of his Motion to Dismiss Counts I-II, and IV-V of Defendant/Counterclaim Plaintiff Sutton's Counterclaim states to the court as follows:

**INTRODUCTION**

Plaintiff/Counterclaim Defendant Doe filed this instant action against Defendant/Counterclaim Plaintiff Sutton seeking damages for alleged violations of a number of privacy torts, infliction of emotional distress and an alleged violation of Missouri's statute prohibiting the distribution of certain photographs. Defendant/Counterclaim Plaintiff Sutton subsequently filed a counterclaim against Plaintiff/Counterclaim Defendant Doe seeking damages for alleged violations of various privacy torts, intentional and negligent infliction of emotional distress (IIED

1

and NIED), and defamation for alleged events that took place after Plaintiff/Counterclaim Defendant Doe filed his lawsuit in St. Louis City Court on August 30, 2023.

## MOTION TO DISMISS STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), cert. denied, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.   Count I - Defamation

The elements of defamation in Missouri are: 1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the

requisite degree of fault, and 6) damages the plaintiff's reputation. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303 (Mo. banc 1993). The requisite degree of fault for a private figure is negligence, *Overcast v. Billings Mutual Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000). There is no doubt that matters of sexuality and sexual conduct are intensely private, intensely sensitive, and a false public statement concerning them is particularly harmful. *Nazeri*, 869 S.W.2d at 312.

Here, Defendant/Counterclaim Plaintiff Sutton alleges that on or around August 30, 2023, Counterclaim-Defendant published a website entitled Leslie-Sutton.com which listed Counterclaim-Plaintiff's name, contact information, and private online account information, and further accused her of committing sexual assault. ¶ 37. Plaintiff/Counterclaim Defendant allegedly purchased a URL with Defendant/Counterclaim Plaintiff's name, created a website, drafted the multiple website pages with her personal information, created tags that would assist in finding the website in searches, and wrote extensively about how he was allegedly sexually assaulted, and then published that website to the entire world. ¶ 46. Defendant/Counterclaim Plaintiff Sutton further alleges that Plaintiff/Counterclaim Defendant Doe was aware that she was applying to doctoral programs and that a website disclosing her private and secret sex-life with explicit keywords that would come up in internet searches would have a detrimental impact on her admittance to any doctoral program and cause incalculable damage to her reputation.

Plaintiff/Counterclaim Defendant Doe argues the following points in his Reply in Support of his Motion to Dismiss Count I (Defamation).

3

   a. <u>Defendant/Counterclaim Plaintiff Sutton Asserts New Information Not Demonstrated in Her Initial Counterclaim Petition</u>

To begin, Defendant/Counterclaim Plaintiff Sutton argues that to this day, Plaintiff/Counterclaim Defendant Doe "continues to publish a website accusing [her] of violating R.S. Mo. § 573.110, which he knows is not true." Defendant/Counterclaim Plaintiff Sutton asserts that this fact further supports her defamation claim. However, nowhere in her Counterclaim Petition does she mention that Plaintiff/Counterclaim Defendant Doe *continued* to publish this website following the R.S. Mo. § 573.110 being dismissed without prejudice.

   b. <u>Defendant/Counterclaim Plaintiff Sutton's Defamation Claim Must Fail, Because There Is Truth to Alleged Statement Regarding "Sexual Abuse."</u>

Truth is a defense to a defamation claim in Missouri. Under Missouri law, a defendant is not liable for defamation if their challenged statements are "substantially true," even though the statements may contain minor inaccuracies. *Totta v. CCSB Financial Corp.*, 695 S.W.3d 197, 204 (Mo.Ct.App. 2024). The test for evaluating the defense of truth is whether the challenged statement is substantially true, meaning that slight inaccuracies are immaterial if the allegedly defamatory charge is true in substance. *Id.*

Defendant/Counterclaim Sutton continues to falsely assert that Plaintiff/Counterclaim Defendant Doe of accusing her of "sexual assault." She argues that her defamation claim is satisfactory, because Plaintiff/Counterclaim Defendant Doe asserted six counts in his Petition, "none of which included claims for sexual abuse or sexual violence, which are crimes in Missouri" and that "while the website

4

he created accused Ms. Sutton of committing sex crimes, the claims in his lawsuit do not." Firstly, nowhere does Defendant/Counterclaim Sutton mention anything about the website implying that she committed a sex crime. In fact, it does not.

Next, Defendant/Counterclaim Plaintiff looks heavily into the legal definition of "sexual violence" and "sexual abuse" under Missouri law. The English Dictionary definition of "sexual abuse" can be described as "the act of making someone take part in sexual activities, against their wishes, or without their agreement." *See Sexual Abuse*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY & THESAURUS (last visited July 10, 2025). Distributing sexual images of someone over the Internet without their consent has also been widely recognized as a form of sexual abuse or sexual violence under various legal frameworks. This conduct, often referred to as "revenge porn" or nonconsensual dissemination of private sexual images, is criminalized in many jurisdictions due to its harmful impact on victims, including psychological trauma, harassment, and threats of sexual violence. In *People v. Austin*, 155 N.E.3d 439, 460 (Ill. 2019), the Supreme Court of Illinois emphasized the severe social problem posed by nonconsensual dissemination of private sexual images. The court noted that this conduct causes unique and significant harm to victims, including psychological distress, harassment, threats of sexual assault, and even domestic violence. Victims are often disproportionately women and suffer profound consequences, such as being solicited for sex, losing employment opportunities, and enduring threats of sexual violence. Similarly, the Supreme Court of Indiana in *State v. Katz*, 179 N.E.3d 431 (Ind. 2022), highlighted that nonconsensual dissemination of

5

private sexual images can be connected to sexual violence, as perpetrators may use threats of disclosure to prevent victims from reporting abuse or leaving relationships. This conduct is also linked to sex trafficking and rape, where perpetrators use recordings to humiliate victims and deter them from reporting assaults.

Here, Plaintiff/Counterclaim Defendant's posted a website, which displayed a copy his initial Petition that he filed in St. Louis City Circuit Court. In his initial pleading, he indicated that Defendant Sutton disseminated sexual images of him online without his consent. *See* Plaintiff Doe's Petition, at ¶¶ 12-27, 31. Based upon these facts, which were relayed on Plaintiff/Counterclaim Doe's website. Moreover, courts have acknowledged that facts alleged in the petition are taken to be true, and the pleading party is given all favorable inferences. *See Johnson v. Great Heritage Life Ins. Co.*, 490 S.W.2d 686, 690 (Mo. Ct. App. 2005). A court must "accept the facts alleged as true, even if doubtful," such that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and a recovery is very remote." *LifeScience Technologies, LLC v. Mercy Health*, 632 F. Supp. 3d 949, 953 (E.D. Mo. 2022) (internal citations omitted). Because of the substantial truth of the challenged statements in Plaintiff/Counterclaim Defendant Doe's website, Defendant/Counterclaim Plaintiff Sutton's defamation claim must fail.

c. <u>Defendant/Counterclaim Plaintiff Sutton's Defamation Claim Must Fail, Because the Statement Was Not Made Within the Presence of Third Parties.</u>

As previously indicated in the Motion to Dismiss, third parties must be aware of a defamatory statement made by a defendant for it to be actionable. In defamation law, "publication" is a key element, which means the communication of defamatory

6

matter to a third person. *See Nazeri*, 860 S.W.2d 313. For a statement to be considered defamatory, it must be published, meaning it must be communicated to someone other than the Defendant/Counterclaim Plaintiff Sutton.

The publication of defamatory content on a website may not constitute a statement within the presence of third parties if the communication does not meet the criteria for publication. For example, if the website content is not accessed, read, or understood by third parties, it may fail to satisfy the requirement that the defamatory matter be communicated to a third person. This principle is reflected in *Becker v. Brinkop*, 230 Mo.App. 871 (Mo. 1935), which held that liability for publication requires evidence that the defamatory matter was delivered to a third person who read and understood its contents. If the website's content remains unread or inaccessible, the plaintiff's reputation cannot be said to have been injured, and no liability for publication arises. *See id.* (emphasis added).

Additionally, the intent and foreseeability of the communication reaching third parties can play a critical role. If the website publisher does not intend or reasonably foresee that the content will be accessed by third parties, the communication may not qualify as publication under Missouri defamation law. *See Deckard v. O'Reilly Automotive, Inc.*, 31 S.W.3d 6, 18-19 (2000) (citing *Overcast*, 11 S.W.3d at 70).

Here, Defendant/Counterclaim Plaintiff Sutton alleges that on or around August 30, 2023, Counterclaim-Defendant published a website entitled Leslie-Sutton.com which listed Counterclaim-Plaintiff's name, contact information, and private online account information, and further accused her of committing sexual

7

assault. ¶ 37. Plaintiff/Counterclaim Defendant allegedly purchased a URL with Defendant/Counterclaim Plaintiff's name, created a website, drafted the multiple website pages with her personal information, created tags that would assist in finding the website in searches, and wrote extensively about how he was allegedly sexually assaulted, and then published that website to the entire world. ¶ 46. Defendant/Counterclaim Plaintiff Sutton alleges that Plaintiff/Counterclaim Defendant Doe was aware that she was applying to doctoral programs and that a website disclosing her private and secret sex-life with explicit keywords that would come up in internet searches would have a detrimental impact on her admittance to any doctoral program and cause incalculable damage to her reputation.

Defendant/Counterclaim Plaintiff Sutton still fails to demonstrate in her Counterclaim Petition that Plaintiff/Counterclaim Plaintiff Doe intended for or reasonably foresaw that the website would be accessible to third parties. Furthermore, she fails to indicate that the website's content was accessed, read, or understood by third parties. For these reasons, Defendant/Counterclaim Plaintiff Sutton's defamation claim must fail.

## II.   Count II - Public Disclosure of Private Facts

Under Missouri law, the elements of the tort of unreasonable publicity given to another's private life are: (1) publication or publicity; (2) absent any waiver or privilege; (3) of private matters in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities. *Y.G. v. Jewish Hosp. of St. Louis*, 795 S.W.2d 488, 498-99 (Mo. Ct. App. 1990). Under the first

8

element, publication means "communication to the public in general or to a large number of persons, as distinguished from one individual or a few." *St. Anthony's Medical Ctr. v. H.S.H.*, 974 S.W.2d 606, 610 (Mo. Ct. App. 1998) (quoting *Biederman's of Springfield, Inc. v. Wright*, 322 S.W.2d 892, 898 (Mo. 1959). "The critical aspect of the publication requirement is public disclosure — communications that are available to the general public, communications that have a likelihood of becoming public knowledge." *Childs v. Williams*, 825 S.W.2d 4, 9 (Mo. Ct. App. 1992).

Here, Defendant/Counterclaim Plaintiff Sutton alleges that on or about August 30, 2023, Counterclaim-Defendant filed a Petition ("Lawsuit") with the Circuit Court of the City of St. Louis seeking damages for Counterclaim-Plaintiff's alleged violations of various privacy torts and violation of R.S. Mo. §573.110, all related to the dissemination of the aforementioned photographs. ¶ 36. Thereafter, Defendant/Counterclaim Plaintiff Sutton alleges that Plaintiff/Counterclaim Defendant Doe published a website entitled Leslie-Sutton.com which listed her name, contact information, and private online account information, and further accused her of committing sexual assault ¶ 37.

Defendant/Counterclaim Plaintiff Sutton still fails to sufficiently plead a public disclosure of private facts claim, because the third element is not met. The existence of the following subject matter regarding Defendant Leslie Sutton being a sex worker was already made public upon Plaintiff/Counterclaim Defendant Doe's filing of his lawsuit against her via Casenet, which is a website created by The State of Missouri

9

Judiciary that "provide[s] free public access to case information."[1] ¶¶ 36-37. Since July 1, 2023, the Missouri Judiciary has provided remote access to the public, allowing them to view, download and print public case documents from their personal computers, tablets or cell phones.[2] Missouri's Case.net system provides electronic access to court records, which are considered public records under Missouri law. The Missouri Sunshine Law, which governs access to public records, defines "public record" broadly to include any record retained by a public governmental body, including court filings. *See generally Harper v. Missouri State Highway Patrol*, 592 S.W.3d 32 (Mo.App.W.D. 2019). Courts have held that public records do not lose their public nature simply because they are accessible electronically, as long as they are retained by a public governmental body. *See generally Jones v. Jackson County Circuit Court*, 162 S.W.3d 53 (Mo.App.W.D. 2005)

Here, such information was already public record before Plaintiff created the alleged website. While some of the individual web pages on the site included a timestamped copy of the complaint and summons, it did not include any outside information about Defendant/Counterclaim Plaintiff Sutton that was private.

---

[1] Case information available on Case.net comes from the information entered by judicial staff in the court's computer database. Case information is immediately available through the internet. Confidential court records are not available to the public on Case.net or through the court. *See Public Access to Records*, MO. CTS. https://www.courts.mo.gov/hosted/JUDEDintra/MOSAC/Missouri_Courts.html#:~:text=The%20State%20of%20Missouri%20Judiciary,immediately%20available%20through%20the%20internet (last visited Nov. 30, 2023).

[2] *See Remote Public Access*, MO. CTS., https://www.courts.mo.gov/page.jsp?id=195713#:~:text=The%20public%20now%20has%20%E2%80%9Cremote,computers%2C%20tablets%20or%20cell%20phones. (last visited Nov. 30, 2023).

### III.   Count IV - Intentional Infliction of Emotion Distress

The essential elements of a claim for intentional infliction of emotional distress are: (1) The defendant's conduct must be outrageous or extreme; (2) The defendant must act intentionally or recklessly; (3) There must be extreme emotional distress that results in bodily harm; (4) Caused by the defendant's conduct; and (5) The conduct must be intended solely to cause extreme emotional distress to the victim. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 119 (Mo. App 2008). *See also, Conway v. St. Louis County*, 254 S.W.3d 159, 165-66 (Mo. App. 2008). Wrongful conduct alone cannot serve as a basis for the tort, but instead, the conduct must have been so outrageous and extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Thomas v. Special Olympics Missouri, Inc.*, 31 S.W.3d 442, 446 (Mo. App. 2000) (quoting *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997)). In addition, it is essential that the conduct be intended only to cause emotional distress to the victim. *Id.*

A. Defendant/Counterclaim Plaintiff Sutton's IIED Claim Must Fail Because She Alleges Events That Were Not Solely Intended to Cause Severe Emotional Distress.

In order to recover for IIED, one must allege not just that the actor knew that emotional distress would result from his or her acts, but that this was the *sole* motivation for the actor's conduct. *Thomas*, 31 S.W.3d at 448. Only in this way can the tort be kept within reasonable bounds. *Id.* Where a desire to cause severe emotional harm is not the sole motivation for the conduct alleged, ... suit cannot be

11

brought for intentional infliction of emotional distress. *Id. See also Geran v. Xerox Education Services, Inc.*, 469 S.W.3d 459, 468 (Mo.Ct.App. 2015).

Here, Plaintiff Counterclaim Defendant Doe created, wrote, and published the website with the sole intent to cause extreme emotional distress to Counterclaim-Plaintiff. ¶ 70. Yet, Defendant Counterclaim Plaintiff Sutton also states that Plaintiff/Counterclaim Defendant Doe published the website *with the intention of disclosing Counterclaim-Plaintiff's private and secret sex-life.* ¶ 66. Defendant/Counterclaim Plaintiff also states in her Petition that Plaintiff/Counterclaim Defendant Doe printed the lawsuit, placed it in an envelope, addressed the same to her parents' residence, placed a stamp on the envelope, and mailed the lawsuit to her parents with the sole intent to cause extreme emotional distress to Defendant/Counterclaim Sutton. ¶ 74. Once again, Defendant/Counterclaim Plaintiff Sutton mailing the lawsuit to Counterclaim-Plaintiff's parents *with the intention of disclosing Counterclaim-Plaintiff's private and secret sex-life* was outrageous and extreme. ¶ 78. Defendant/Counterclaim-Plaintiff Sutton negates her own argument that the conduct was solely intended to cause severe emotional distress by indicating other rationale for the conduct. For this reason, Defendant/Counterclaim Plaintiff's IIED claim must fail.

- B. <u>Defendant/Counterclaim Plaintiff Sutton's IIED Claim Must Fail Because Any Recovery for Emotional Distress as an Independent Tort Would Duplicate Part of the Recovery For the Libel, False Light, And Invasion of Privacy Claims Arising Out of the Same Conduct.</u>

In addition to the fact that Defendant/Counterclaim Plaintiff Doe clearly asserts other motivations for the alleged conduct aside from causing severe emotional

distress, Defendant/Counterclaim Plaintiff Sutton cannot satisfy an IIED claim, because the alleged conduct still amounts to the commission of another common law tort. Courts have held that IIED does not lie when the offending conduct consists only of a defamation. *Hester v. Barnett*, 723 S.W.2d 544, 561 (Mo.App.1987); *accord Flynn v. Higham*, 149 Cal.App.3d 677, 197 Cal.Rptr. 145, 148 (1983); *Boyles v. Mid–Florida Television Corp.*, 431 So.2d 627, 636 (Fla.Dist.Ct.App.1983), approved 467 So.2d 282 (Fla.1985). Damages for mental suffering are recoverable in a slander action. *Carter v. Willert Home Products, Inc.*, 714 S.W.2d 506, 510-511 (Mo. banc 1986). Any recovery for emotional distress as an independent tort would duplicate part of the recovery for a slander claim arising out of the same conduct. *Hester*, 723 S.W.2d at 561.

In *Nazeri*, supra, the plaintiff predicated a claim for intentional infliction of emotional distress on a defamatory statement. This Court said,

> *This tort ... does not lie when the offending conduct consists only of defamation.... Damages for mental suffering are recoverable in a slander action ... thus any recovery for emotional distress as an independent tort would duplicate part of the recovery for a slander claim arising out of the same conduct ... a separate emotional distress claim could be supported by pleading some additional wanton and outrageous act of the defendant, other than an attendant defamatory expression. However, appellant has not done so in her petition.*

*Nazeri*, 860 S.W.2d at 316 (emphasis in original). The tort of IIED is a relative newcomer to the common law that was intended to supplement existing forms of recovery, not swallow them. *Cf. K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. 1996) (citing *Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295, 299 (Ky.App.1993)). Such treatment is supported by the Restatement (Second) of Torts. It has been held that

13

where one's conduct amounts to the commission of one of the traditional torts, such as battery, and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie, and recovery must be had under the appropriate traditional common law action. *Compare K.G.*, 918 S.W.2d at 799 *with Restatement (Second) of Torts*, § 47, comment b ("Where the actor's tortious conduct in fact results in the invasion of another legally protected interest, as where it inflicts bodily harm ... emotional distress, caused either by the resulting invasion or by the conduct may be a matter to be taken into account in determining damages").

Here, Defendant/Counterclaim Plaintiff Sutton clearly indicates in her Memorandum in Opposition that she is alleging an IIED claim for events arising from the following events: (1) Plaintiff/Counterclaim Defendant Doe publishing a *defamatory website* and (2) Plaintiff/Counterclaim Defendant Doe mailing a copy of a lawsuit to her parents' house, who were allegedly unfamiliar with her anonymous online sex work. ¶¶ 37-49, 66-68 73-76, 78. Defendant/Counterclaim Plaintiff is essentially pleading allegations of defamation, public disclosure of private facts, and/or false light as an IIED claim. Defendant/Counterclaim Plaintiff Doe admits that the alleged conduct that she is asserting caused her extreme emotional distress, did in fact amount to commission of another tort, such as defamation and public disclosure or private facts, etc. *Compare K.G.*, 918 S.W.2d at 799 *with Restatement (Second) of Torts*, § 47, comment b. Defendant/Counterclaim Plaintiff Doe

14

additionally alleges that she suffered reputational damages as a result of the following instances of conduct. ¶¶ 39, 48-49, 59, 68, 71, 75-76, 78-79.

For the reasons discussed in *Nazeri* and in *K.G.*, IIED cannot engulf any of these other claims. Otherwise, any recovery for emotional distress as an independent tort would duplicate part of the recovery for the libel, false light, and invasion of privacy claims arising out of the same conduct. Thus, Defendant/Counterclaim Plaintiff Sutton's IIED claim must fail.

## IV.    Count V- Negligent Infliction of Emotion Distress

The general elements of a negligence action are 1) a legal duty of the defendant to protect the plaintiff from injury, 2) breach of the duty, 3) proximate cause, and 4) injury to the plaintiff. *Thornburg v. Federal Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2002). Claims seeking recovery of damages for the negligent infliction of emotional distress require proof of two additional elements: 1) that the defendant should have realized that his conduct involved an unreasonable risk of causing distress, and 2) that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant. *Id.*

Defendant/Counterclaim Plaintiff Sutton's claims for NIED still fail for two reasons. Firstly, Defendant/Counterclaim Plaintiff Sutton still fails to demonstrate in her Counterclaim Petition that the alleged events were the proximate cause of her emotional distress or that alleged events were foreseeable, which is a necessary element for asserting an NIED claim. Secondly, Defendant/Counterclaim Plaintiff Sutton's claim for NIED still fails for the same reasons related to her IIED claim, i.e.

15

her emotional distress claims cannot be maintained as independent causes of action due to the fact that the underlying conduct stem from other common torts, i.e. defamation, false light, and public disclosure of private facts. *See Nazeri*,

## CONCLUSION

Based on the foregoing, Plaintiff/Counterclaim Defendant Doe respectfully request that the Court GRANT his Motion and DISMISS Counts I-II and IV-V of Defendant/Counterclaim Plaintiff Sutton's Counterclaim for failure to state a claim.

Respectfully Submitted,

**OTT LAW FIRM**

*/s/ Mark Edward Blankenship Jr.*
Joseph A. Ott, #67889
Mark E. Blankenship Jr., #73123
3544 Oxford Blvd
Maplewood, MO 63143
Phone: (314) 293-3756
Fax: (314) 689-0080
joe@ott.law
mark@ott.law
*Attorneys for Plaintiff/
Counterclaim Defendant*

## **CERTIFICATE OF SERVICE**

I caused a copy of the forgoing to be served upon all counsel of record this 10th Day of July 2025 through electronic mail.

Justin A. Hardin, #57555MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
jhardin@bjpc.com
*Attorneys for Defendant/
Counterclaim Plaintiff*

                                        */s/ Mark E. Blankenship Jr.*