UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HUSAYN JAMAL,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>LESLIE SUTTON,<br><br>Defendant/Counterclaim-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:23-CV-1312 |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COUNTERCLAIM**

Comes now Defendant/Counterclaim-Plaintiff, Leslie Sutton ("Counterclaim-Plaintiff"), by and through undersigned counsel, and pursuant to Rule 16(b), respectfully submits her Motion for Leave to File a Second Amended Counterclaim and states as follows:

1. On March 20, 2025, the Court granted Counterclaim-Plaintiff leave to file her Counterclaim. (*See Doc. #26 at pg. 4*).

2. On that same date, March 20, 2025, the Court entered an Order dismissing Count I of Counterclaim-Defendant's Complaint alleging that Counterclaim-Plaintiff violated Mo. Rev. Stat. § 573.110 for failure to state a claim. (*See Doc. #26 at pg. 12*).

3. On April 4, 2025, Counterclaim-Plaintiff filed her Counterclaim. *(See Doc. #28*).

4. The Counterclaim contained counts for Defamation (Count I), Public Disclosure of Private Facts (Count II), and False Light Invasion of Privacy (Count III). (*Id.*).

5. Within the Counterclaim, it was alleged that Counterclaim-Defendant Husayn Jamal's intent was to damage Counterclaim-Plaintiff's reputation and future job prospects and his actions were done ***with malice.*** (*Id. at* ¶*47*) (Emphasis added).

6. On June 23, 2025, the Court entered its Case Management Order setting forth a deadline to amend pleadings of July 28, 2025. (*See Doc. #36 at* ¶*2*).

7. On August 14, 2025, Counterclaim-Plaintiff Received Counterclaim-Defendant's response to her First Interrogatories. Counterclaim-Defendant admitted for the first time that he created the website LeslieSutton.com on October 1, 2023, and that he was responsible for posting content on this website. (*See Plaintiff's Response to Defendant's First Rogs, pgs. 1 & 7-8, attached hereto as Exhibit 1*).

8. On December 8, 2025, Counterclaim-Defendant was deposed. In his deposition, Counterclaim-Defendant admitted to creating a website alleging that Counterclaim-Plaintiff violated Mo. Rev. Stat. § 573.110 (*See Exhibit 2, Counterclaim-Defendant's Deposition Transcript, pg. 189*). Counterclaim-Defendant admitted to posting a photograph of Counterclaim-Plaintiff on this website, identifying her place of work, disclosing her private social media accounts, and alleging that she is a perpetrator of sexual abuse and sexual violence (*Id. at pg. 192*). Counterclaim-Defendant is a lawyer, and he explained that he read and understood Mo. Rev. Stat. § 573.110, but he did not remember whether he read the Court's order dismissing that claim (*Id. at pg. 194*). In his deposition, Counterclaim-Defendant was given an opportunity to and did read the Court's order dismissing said claim, then he admitted his understanding that Mo. Rev. Stat. § 573.110 includes a requisite intent which the Court found that Counterclaim-Defendant failed to allege. (*See Counterclaim-Defendant's Deposition Transcript, pg. 202*). As of the drafting of this pleading, a website containing the verbatim content Counterclaim-Defendant posted/created is still up and running: https://lesliesuttonstlouis.wordpress.com/[1]. Accordingly, Counterclaim-Defendant has neglected to remove the website and his allegations that Counterclaim-Plaintiff

[1] While Counterclaim-Defendant denies creating this site, it is the exact same as the site he admitted creating and it is Counterclaim-Plaintiff's contention that no one other than Counterclaim-Defendant could have created this site.

violated Mo. Rev. Stat. § 573.110 and sexually abused him remain available to the public despite reading and understanding the Court's order dismissing his count based upon the same statute. Such testimony clearly demonstrates his knowledge that the allegations that Counterclaim-Plaintiff violated said statute is false.

9. Further, in his December 8, 2025 deposition, Counterclaim-Defendant was questioned about and answered as to his financial status when testifying about his income/salary. (*See Exhibit 2 at pg. 14*).

10. Counterclaim-Defendant has also alleged, via the aforementioned websites, that Counterclaim-Plaintiff distributed intimate sexual images of him. The allegation is that Counterclaim-Plaintiff shared said images in certain social media groups.

11. The discovery deadline has passed and Counterclaim-Defendant has failed to produce even a single intimate image of him that was shared by Counterclaim-Plaintiff.

12. On April 1, 2026, Counterclaim-Plaintiff deposed Madison Wiegand Brown, a member of the social media group wherein intimate sexual images of Counterclaim-Defendant were allegedly shared. Ms. Weigand-Brown denied seeing a single intimate sexual image depicting Counterclaim-Defendant at any point (*See Exhibit 3, Madison Wiegand-Brown Deposition Transcript at pgs. 15-16*). On the other hand, Ms. Wiegand-Brown testified that she came across the website, and has seen the negative impact the website had on Counterclaim-Plaintiff. (*Id. at pgs. 17-18*).

13. Counterclaim-Plaintiff also deposed Darian Maruth on April 1, 2026, another member of the social media groups wherein intimate sexual images of Counterclaim-Defendant were allegedly shared. Ms. Maruth also testified that she has never seen a single intimate image of

Counterclaim-Defendant on Discord, Twitter, or any other location. (*See Exhibit 4, Darian Maruth's Transcript at pgs. 13-15*).

14. None of Counterclaim-Defendant's seven subpoenas, six document requests, or any other discovery has uncovered a single intimate sexual image of Counterclaim-Defendant shared by Counterclaim-Plaintiff. The absence of these photos, confirmed recently with the close of discovery and the continued absence of the photos after allowing significant time for Counterclaim-Defendant to receive responses to his subpoenas, clearly establishes that Counterclaim-Defendant knew that his statements that Counterclaim-Plaintiff distributed such images were false.

15. In light of the facts uncovered in the discovery described above, and out of an abundance of caution, Counterclaim-Plaintiff moves herein for leave to amend her Counterclaim to include additional factual allegations and to specifically plead for punitive damages.

16. Federal procedural law "requires a pleading to state a claim and include a demand for the relief sought." *Standlea v. Dunn*, No. 4:21-CV-00147-BCW, 2021 WL 9667335, at *3 (W.D. Mo. Oct. 5, 2021) (citing to Fed. R. Civ. P. 8(a)(3)). Federal Rule of Civil Procedure 8 requires enough facts to raise a reasonable expectation that discovery will reveal evidence of liability. *Gray v. City of Kansas City, Mo.*, No. 4:25-CV-00369-DGK, 2025 WL 3452373, at *3 (W.D. Mo. Dec. 1, 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Rule 8 establishes a "simplified standard for pleading in civil actions" and does not contain a heightened pleading requirement for punitive damages. *Bowles v. Osmose Utilities Servs., Inc.*, 443 F.3d 671, 675 (8th Cir. 2006); Fed. R. Civ. P. 8(a)(3); *see N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1056-57 (8th Cir. 2004) ("The essential function of notice pleading 'is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication

of the type of litigation involved.' "). A pleading need not allege punitive damages in her complaint in order to recover punitive damages at trial. *Bowles*, 443 F.3d at 675 (8th Cir. 2006) (citing Fed. R. Civ. P. 54(c)). A plaintiff's ability to seek punitive damages is not "a function of [the] pleadings, but rather of whether the plaintiff provided adequate notice or caused prejudice." *Lindt & Sprungli (N. Am.), Inc. v. Gxo Warehouse Co., Inc.*, No. 22-00384-CV-W-BP, 2024 WL 448792, at *2 (W.D. Mo. Jan. 2, 2024) (citing *Bowles*, 443 F.3d at 675).

17. At the outset, it should be noted that Counterclaim-Plaintiff's Counterclaim put Counterclaim-Defendant on clear notice of the pursuit of punitive damages. The applicable standard for recovery of punitive damages in defamation claims against a private figure is "actual malice" which is "either knowledge of the falsity of the published statement or reckless disregard for its truth." *McQuoid v. Springfield Newspapers, Inc.,* 502 F.Supp. 1050, 1057 (W.D. Mo. 1980). As described above, the Counterclaim alleged that "when Counterclaim-Defendant accused Counterclaim Plaintiff…of sexual assault…he knew that statement to be false" and "Counterclaim-Defendant's intent was to damage Counterclaim-Plaintiff's reputation and future job prospects, and his actions were done with malice." (*See Doc # 28, pg. 7*). Counterclaim-Plaintiff not only alleged that Counterclaim-Defendant acted with malice, but also that he had knowledge of the falsity of his statements. *See Campbell v. Thornton,* 644 F.Supp. 103, 105 (W.D. Mo. 1986) (finding that where plaintiff's complaint does not allege that a defendant "acted willfully, maliciously, or with callous disregard for the plaintiff's rights," a court is "obliged to hold that defendants did not have fair notice of plaintiff's intention to seek punitive damages").

18. In addition to the clear punitive damages language in Counterclaim-Plaintiff's Counterclaim, she requested information about Counterclaim-Defendant's income during his deposition on December 8, 2025. Missouri courts consider several factors including "the

defendant's financial status" when awarding punitive damages. *Kimzey v. Wal-Mart Stores, Inc.,* 107 F.3d 568, 576 (8th Cir. 1997). Counterclaim-Plaintiff's discovery of Counterclaim-Defendant's financial condition is highly relevant to punitive damages and should have placed Counterclaim-Defendant on notice. *See Bowles,* 443 F.3d at 675 (finding that notice was sufficient where plaintiff's pre-trial disclosure three weeks prior to trial stated that plaintiff was seeking punitive damages, and plaintiff requested information about defendant's net worth during discovery; thus, no prejudice existed).

19. Accordingly, it is Counterclaim-Plaintiff's position that, as pled, the Counterclaim coupled with the ongoing discovery clearly put Counterclaim-Defendant on notice that punitive damages were being sought. As such, and pursuant to *Lindt* and *Bowles*, the need for the amendment requested herein is perhaps unnecessary, but Counterclaim-Plaintiff seeks the same to remove all claimed or conceivable doubt.

20. "A party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires. *Id.* However, "To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless." *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 716 (8th Cir. 2008). District court decisions are reviewed only for abuse of discretion if the correct legal standard is applied. *Id.* at 714.

21. Under Rule 16(b)(4), a scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "If a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 497 (8th Cir. 2008). "To establish good cause, a party must show its diligence in attempting to meet the progression order." *Petrone v. Werner*

*Enterprises, Inc.,* 940 F.3d 425, 434 (8th Cir. 2019) (internal quotations omitted). "Good cause may be shown by pointing to a change in the law, newly discovered facts, or another significant changed circumstance that requires amendment of a party's pleading." *Ellingsworth v. Vermeer Manufacturing Company,* 949 F.3d 1097, 1100 (8th Cir. 2020) (internal citation omitted). The primary measure of the Rule 16(b) "good cause" standard is the moving party's diligence in attempting to meet the case management order requirements. *Bradford v. DANA Corp.,* 249 F.3d 807, 809 (8th Cir. 2001) (acknowledging that prejudice to the opposing party and other factors may be relevant to a court's decision, but diligence is the primary standard and analyzed first).

22. Between the deadline to amend pleadings and the deadline to complete discovery under the Case Management Order, various newly discovered facts came to light that support Counterclaim-Plaintiff's prayer for punitive damages. Counterclaim-Plaintiff received Counterclaim-Defendant's Rule 26 disclosures on June 23, 2025, and Counterclaim-Defendant's Response to her First Requests for Admission on June 26, 2025. All other discovery requested by Counterclaim-Plaintiff was not received until after the deadline to amend the pleadings.

23. Good cause exists to amend the Counterclaim to include an allegation in Count I (Defamation) that no later than December 8, 2025, Counterclaim-Defendant was aware of the dismissal of his claim that Counterclaim-Plaintiff violated Mo. Rev. Stat. § 573.110 but nonetheless continued to publish a website making such a false claim. This information was not known by Counterclaim-Plaintiff until at least December 8, 2025 and Counterclaim-Defendant's continued publication of the website, up to and including the date of the drafting of this pleading, knowing the allegations are false constitutes malice.

24. Good cause further exists as it was not conclusively established until the close of discovery, and even ample opportunity for responses to the subpoenas served by Counterclaim-

Defendant on multiple entities, that no intimate sexual images of Counterclaim-Defendant existed on the platforms Counterclaim-Defendant stated they existed.

25. The newly discovered facts constitute good cause allowing for an amendment of the Counterclaim.

26. For the reasons noted above, it is proper to grant Counterclaim-Plaintiff leave to file her Second Amended Counterclaim, and doing so will not unduly prejudice any non-movants or raise any other problems that might customarily provide some basis to deny leave to amend.

27. A copy of the proposed Second Amended Counterclaim is attached hereto for the Court's review as Exhibit 5 with the new allegations/portions in bold font.

WHEREFORE, for these reasons, and with good cause shown under Rule 16(b)(4), Counterclaim-Plaintiff respectfully requests that the Court grant leave to file her Second Amended Counterclaim, and for any other relief deemed just and proper.

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
jhardin@bjpc.com

Attorneys for Counterclaim-Plaintiff/Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was served by the Court's electronic filing system on this 13th day of July, 2026, on the counsel of record listed below.

Joseph A. Ott
Mark E. Blankenship, Jr.
3544 Oxford Blvd.
Maplewood, MO 6343
joe@ott.law
mark@ott.law
***Attorneys for Plaintiff/Counterclaim-Defendant***

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO

33504204.1