UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE,<br><br>Plaintiff/<br>Counterclaim-Defendant,<br><br>vs.<br><br>LESLIE SUTTON,<br><br>Defendant/<br>Counterclaim-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:23-CV-1312 |

VIDEO-RECORDED DEPOSITION OF
JOHN DOE

TAKEN ON BEHALF OF THE
DEFENDANT/COUNTERCLAIM-PLAINTIFF

DECEMBER 8, 2025

(Starting time of the deposition: 9:45 a.m.)

Exhibit 2

**available to me because I don't have a doctorate degree.**

Q. Is it required to have a doctorate degree to be a professor?

**A. Most postings do require it, yes. I would say almost universally so.**

Q. To teach what?

**A. Political science, international affairs.**

Q. Are you making more money today working for the law firm than you would as a professor?

**A. I am making -- sorry. Can I -- can you restate your question?**

Q. Are you making more money today working at the law firm you're working at than you would have as a professor?

**A. No.**

MR. OTT: Objection, calls for speculation. You can answer if you know.

Q. (By Mr. Hardin) I'm sorry. Your answer was?

**A. My answer was no.**

Q. Okay. So how much money are you making today?

**A. 125,000 Canadian dollars a year.**

Q. You're not going to deny that, are you?
**A. I -- I created the website.**
Q. Okay. And in that website you allege Ms. Sutton sexually abused you, right?
**A. I believe the words I would have used were image-based sexual abuse.**
Q. And that was based upon the Missouri statute that we talked about earlier, right?
**A. I think that image-based sexual abuse is broadly understood in the academic literature to encompass things like this.**
Q. Right. But you specifically referenced in your website that particular statute, did you not?
**A. I believe that I would have, yes.**
Q. Okay.
(WHEREIN, Exhibit 5, Leslie Sutton website, was marked for identification by the Court Reporter.)
Q. (By Mr. Hardin) In fact, I'm going to hand you what we've marked as Exhibit 5, which is a printout of the website you provided. This is at least one website. Did you create two?
**A. I created this one website.**
Q. Okay. Isn't there another one like a

Q. You put -- you published Ms. Sutton's photograph on this website?

**A. I did. That's correct.**

Q. Okay. And you identified where she worked?

**A. I did, that's correct.**

Q. And you also identified all of her social media handles?

**A. I did, that's correct.**

Q. You indicated that she's an alleged perpetrator of sexual abuse and sexual violence, right?

**A. Can you tell me where that is?**

Q. It's on page ten.

**A. I see that, that's correct.**

Q. And you agree that the information you've put in here about Ms. Sutton violating the Missouri statute on image-based sexual abuse is defamatory?

**A. I would not agree with that.**

Q. Why not?

**A. Because I maintain that Ms. Sutton did disseminate images of me without my knowledge or consent.**

Q. No, you -- I'm asking, you -- you

Q. You're licensed to practice law in Canada?

**A. Correct.**

Q. You've graduated from a law school?

**A. Correct.**

Q. Okay. You can read statutes?

**A. I can read statutes.**

Q. Is that part of your job?

**A. That is part of my job in Canada.**

Q. Okay. And you've read the court's order dismissing your claim with respect to this Missouri statute, haven't you?

**A. I don't know if I've -- if I've actually read it or not.**

Q. You -- you haven't read it?

**A. I don't recall if I've read it.**

Q. You've read the statute, haven't you?

**A. I would have read the statute.**

Q. And the -- the court found that you didn't even state a claim because you weren't aware of the dissemination of the photos and that that was a prerequisite in order to be found to have violated that statute. Do you understand that?

**A. I understand that is information you're telling me, but I haven't -- I don't recall reading**