**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HUSAYN JAMAL, | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | Case No. 4:23-CV-1312 |
| vs. | ) | |
| | ) | |
| LESLIE SUTTON, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT'S MEMORANDUM IN OPPOSITION TO DEFENDANT/COUNTERCLAIM-PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COUNTERCLAIM**

COMES NOW, Plaintiff/Counterclaim-Defendant Husayn Jamal ("Mr. Jamal"), by and through undersigned counsel, and offers his opposition to Defendant/Counterclaim-Plaintiff Leslie Sutton's Motion for Leave to File a Second Amended Counterclaim, Doc. [71], and states as follows:

## INTRODUCTION

Defendant/Counterclaim Plaintiff Sutton asks for leave to add a punitive-damages claim to her counterclaim nearly a year after the Case Management Order's deadline for amending pleadings, three months after discovery closed, six weeks after the dispositive-motion deadline passed, and four months before trial. Because the deadline has passed, Rule 16(b)(4) governs, and in this Circuit good cause under that Rule means diligence. Sutton was not diligent. Every fact her proposed amendment rests on was either known to her before the deadline or in her hands for months before she moved. She filed an amended counterclaim on July 6, 2026, after all of the

discovery she now calls newly discovered, that contains none of the new allegations and no punitive damages demand, and then moved for leave to amend again one week later. Her motion concedes that the amendment is "perhaps unnecessary." Doc. [71] ¶ 19.

Further, Rule 15(a) does not apply to aid the Defendant in her filing. The amendment comes too late to be tested by discovery or by summary judgment, and it is futile: the Court's dismissal of Mr. Jamal's own statutory claim for a pleading defect, without prejudice, does not plausibly show that he knew his statements about Sutton were false, which is what punitive damages for defamation require under Missouri law. The motion should be denied.

## BACKGROUND

### A. The Case Management Order

The Court's June 23, 2025 Case Management Order set July 28, 2025 as the deadline for "[a]ll motions for joinder of additional parties or amendment of pleadings," required all discovery to be completed by April 13, 2026, required dispositive motions to be filed by May 28, 2026, and set the case for jury trial on November 9, 2026. Doc. [36] ¶¶ I.2, I.3(f), I.5, II. The Order provides that the schedule "will be modified only upon a showing of exceptional circumstances." *Id.* at 1. Every one of those deadlines has passed; only the trial date remains.

### B. Sutton's pleadings

Defendant/Counterclaim Plaintiff Sutton filed her Counterclaim on April 4, 2025. Doc. [28]. It alleged that Plaintiff Jamal published a website on or about August

30, 2023, accusing her of sexual assault, *Id.* ¶¶ 37, 41–42; that he "knew that statement to be false," *Id.* ¶ 45; and that "his actions were done with malice," *Id.* ¶ 47. It did not demand punitive damages. Each count prayed for compensatory damages, attorneys' fees, costs, and interest. *Id.* at 7–14. By then the Court had already dismissed Count I of Plaintiff's complaint, his claim under Mo. Rev. Stat. § 573.110, because the complaint did not allege facts from which the Court could infer that Sutton "acted with the intent to harass, threaten, or coerce" him. Doc. [26] at 10–12 (Mar. 20, 2025); Doc. [27] (dismissal without prejudice). Two weeks after Sutton filed her Counterclaim, Plaintiff Jamal moved to dismiss it, defended the contents of "his website" as true, and attached the website to his memorandum. Doc. [31] at 4–5; Doc. [31-1].

On March 31, 2026, the Court denied the motion to dismiss as to Counts I and II. Doc. [52]. It held that whether the website's statements are true "presents factual issues, the resolution of which is not appropriate at the motion to dismiss stage." *Id.* at 6–7.

On May 21, 2026, after granting Sutton's motion for reconsideration of the pseudonym order, the Court gave Plaintiff Jamal thirty days to file an amended complaint substituting his legal name and gave Defendant Sutton fourteen days after that filing to "file amended counterclaims or any other appropriate response." Doc. [62]. Plaintiff Jamal filed his First Amended Complaint on June 26, 2026. Doc. [69]. Defendant Sutton filed her First Amended Counterclaim on July 6, 2026. Doc. [70]. That pleading substituted Plaintiff Jamal's name, removed the two counts the Court

had dismissed, and changed nothing else. *Id.* at 1 n.1. It contains no allegation about the § 573.110 dismissal, no allegation of continued publication, and no demand for punitive damages. *Id.* at 8–11.

## C. The proposed Second Amended Counterclaim

One week later, on July 13, 2026, Sutton moved for leave to file a Second Amended Counterclaim. Doc. [71]. The proposed pleading would add an allegation, made "[u]pon information and belief," that Plaintiff Jamal published a second, WordPress website, Doc. [71-5] ¶ 38; allegations that "no later than December 8, 2025" he "knew any continued claim that [Sutton] violated [§ 573.110] was false" and thereafter "continued to publish a website" making that claim, *id.* ¶¶ 41–42; conclusory allegations of "reckless disregard" and "malice" in Counts II and III, *id.* ¶¶ 63, 69; and a demand for punitive damages in each count, *id.* at 8–11.

Defendant Sutton identifies four sources for these allegations: Plaintiff Jamal's August 14, 2025 interrogatory answers; his December 8, 2025 deposition; the April 1, 2026 depositions of two of her friends; and the absence, when discovery closed on April 13, 2026, of any intimate image of Plaintiff Jamal produced in discovery. Doc. [71] ¶¶ 7–14, 22–24.

## ARGUMENT

### I. Defendant Sutton has not shown good cause under Rule 16(b)(4), because she was not diligent.

### A. Diligence is the measure of good cause.

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). That standard, "not the more liberal standard of Rule 15(a)," governs here. *Id.* Sutton agrees. Doc. [71] ¶¶ 20–21.

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001); *accord Sherman*, 532 F.3d at 716–17. The inquiry focuses "in the first instance (and usually solely) on the diligence of the party who sought modification of the order," and "generally, [the court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *Id.* at 717. Good cause "may be shown by pointing to a change in the law, newly discovered facts, or another significant changed circumstance that requires amendment of a party's pleading." *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020). A party who has the facts in hand and waits does not meet the standard, and the Eighth Circuit has applied that rule to untimely requests to add punitive damages. *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948–49 (8th Cir. 2012) (affirming denial of leave to add punitive-damages

claim; that plaintiffs "waited over six months" after the triggering ruling was "further evidence of [their] lack of diligence"); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (affirming denial of leave to add punitive damages where plaintiff provided "no reason why punitive damages could not have earlier been alleged"). The Eighth Circuit does "not take case management orders lightly and will enforce them." *Bradford*, 249 F.3d at 809.

### B. The facts underlying the amendment were available before the deadline, or sat in Sutton's hands for months before she moved.

**1. The "continued publication" theory.** The centerpiece of the amendment is the allegation that Plaintiff Jamal kept a website online after learning that the Court had dismissed his § 573.110 claim, and therefore knew his statements were false. Doc. [71-5] ¶¶ 40–42; Doc. [71] ¶ 23. Every component of that theory existed before July 28, 2025. The Court dismissed the § 573.110 claim on March 20, 2025, two weeks before Defendant Sutton filed her original Counterclaim. Doc. [26]. Sutton pleaded the website and its accusation in that Counterclaim. Doc. [28] ¶¶ 37, 41–45. And Mr. Jamal's authorship of the website was no secret "admitted for the first time" in August 2025, Doc. [71] ¶ 7: on April 18, 2025, he filed a memorandum with this Court defending the contents of "his website" and attaching it. Doc. [31] at 4–5; Doc. [31-1]. If Defendant Sutton believed that maintaining the website after the March 20, 2025 order showed knowledge of falsity, she could have pleaded that theory in April 2025 or moved to add it by July 28, 2025. Here, Defendant Sutton did neither.

The only thing Defendant Sutton says she learned on December 8, 2025 is Mr. Jamal's testimony about the order, and the testimony does not show what she claims.

He testified that he did not recall whether he had read the order. Doc. [71-2] at 194:10–16; Ex. A at 199:19–200:3. After counsel read excerpts to him, he testified that he understood the order to hold that his complaint had not alleged the intent element. Ex. A at 202:6–15. Asked to agree that "your allegation that Ms. Sutton violated 573.110 is not true," he answered: "I would disagree." *Id.* at 201:10–13; *see id.* at 205:1 ("I allege that she did.").[1] In any event, a party "is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1880)). The March 20, 2025 order was entered on the docket of Mr. Jamal's own case and served on his counsel through the Court's electronic filing system. Sutton did not need a deposition to establish that he was on notice of it.

**2. The delay after Defendant Sutton's own chosen dates.** Even measured from the dates Sutton selects, she was not diligent. She received the interrogatory answers on August 14, 2025, seventeen days after the amendment deadline, and did not move. She deposed Mr. Jamal on December 8, 2025, and did not move for seven months. She deposed her two friends on April 1, 2026, and discovery closed on April 13, 2026; she did not move for another three months. The dispositive-motion deadline passed on May 28, 2026; still she did not move. The Eighth Circuit has found comparable and shorter delays incompatible with diligence. *See Sherman*, 532 F.3d at 717 (no good cause where movant sought leave "a month after the close of

[1]Sutton cites page 202 of the transcript for the proposition that Mr. Jamal "admitted his understanding that Mo. Rev. Stat. § 573.110 includes a requisite intent which the Court found that Counterclaim-Defendant failed to allege." Doc. [71] ¶ 8. She did not attach that page. *See* Doc. [71-2]. The relevant pages are attached as Exhibit A.

discovery" and "eight full months after it was actually aware" of the basis for the amendment); *Hartis*, 694 F.3d at 949 (six-month delay after triggering event); *Kmak v. Am. Century Cos.*, 873 F.3d 1030, 1034–35 (8th Cir. 2017) (affirming denial of leave sought "[s]even months after the Scheduling Order's deadline," where the new claims were "legal variations on a theme the parties had been litigating for years" and the movant's explanation of how "last minute discovery first gave them a hint that these new claims existed" was unpersuasive). A movant who claims to have learned new facts in discovery must show that it "acted promptly when [it] first learned of newly discovered evidence." *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 787 (8th Cir. 2014). Sutton offers no explanation for any of these intervals.

Defendant Sutton's own conduct confirms the point. On July 6, 2026, after the interrogatory answers, after both rounds of depositions, and after discovery closed, she filed an amended counterclaim. Doc. [70]. It contains none of the allegations she now says discovery revealed, and no punitive-damages demand. A party who amends her pleading with all of the supposedly new facts in hand, omits them, and then seeks leave to amend again a week later cannot show that she was diligently "attempting to meet the case management order's requirements." *Bradford*, 249 F.3d at 809. The Eighth Circuit rejected a materially identical request in *Midwest Medical Solutions, LLC v. Exactech U.S., Inc.*, 95 F.4th 604 (8th Cir. 2024), where the claims the movant sought to add "were included in [its] original pleadings, and it was [the movant] that

made the decision not to replead them" in its amended pleading. *Id.* at 608 (citing *Hartis*, 694 F.3d at 948–49).[2]

**3. The "absence of images" theory.** Sutton's remaining ground is that discovery closed without the production of an intimate image of Mr. Jamal, which she says "clearly establishes" that he knew his statements were false. Doc. [71] ¶¶ 11–14, 24. That is not a newly discovered fact. Sutton has maintained from the outset that the only photographs she disseminated were "non-sexual," Doc. [28] ¶¶ 19–22, 45, and she alleged in April 2025 that Mr. Jamal "knew [his] statement to be false," *id.* ¶ 45. The close of discovery did not change her position; it ended the period in which the parties could gather evidence about it. If the close of discovery were itself a "changed circumstance that requires amendment," *Ellingsworth*, 949 F.3d at 1100, every litigant could re-plead once discovery ended, and the deadline for amending pleadings that Rule 16(b)(3)(A) requires every scheduling order to contain would be "meaningless." *See Sherman*, 532 F.3d at 716 (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)).

## C. Defendant Sutton's own motion concedes that nothing requires the amendment.

Good cause requires a changed circumstance "that requires amendment." *Ellingsworth*, 949 F.3d at 1100. Sutton's motion argues at length that no amendment

---

[2]The Court's May 21, 2026 directive permitted Sutton to "file amended counterclaims or any other appropriate response" within fourteen days after Mr. Jamal's amended complaint, in order to give effect to the ruling on pseudonymity. Doc. [62]. Sutton used that window when she filed Doc. [70]. The present motion, filed seventeen days after Mr. Jamal's June 26 filing, does not invoke that directive; it invokes Rule 16(b). Doc. [71] at 1, ¶¶ 20–21.

is needed: that her existing Counterclaim "put Counterclaim-Defendant on clear notice of the pursuit of punitive damages," that a deposition question about Mr. Jamal's salary did the same, and that "the need for the amendment requested herein is perhaps unnecessary." Doc. [71] ¶¶ 17–19. She seeks leave "out of an abundance of caution" and "to remove all claimed or conceivable doubt." *Id.* ¶¶ 15, 19. Mr. Jamal disputes that position, but it forecloses good cause on its own terms. If Sutton is right that her current pleading suffices, then no changed circumstance requires amendment. If she is wrong, the deficiency has existed since she drafted the Counterclaim in April 2025 and reproduced it in July 2026, and a Rule 16(b) modification is not the remedy for a pleading choice the movant made and repeated. *See Hartis*, 694 F.3d at 949 (a "tactical decision" is the movant's "prerogative, but it hardly constitutes good cause for an extremely tardy pleading-amendment motion").

The case of *Bowles v. Osmose Utilities Services, Inc.*, 443 F.3d 671 (8th Cir. 2006), on which Sutton relies, does not bear on Rule 16(b). *Bowles* addressed whether a punitive award could stand after trial in a federal question case where the plaintiff had "explicitly stated in his pre-trial disclosure material" that he would seek punitive damages and had requested net-worth discovery months before trial. *Id.* at 675. It says nothing about modifying a scheduling order, and nothing in this record resembles it: Sutton has never demanded punitive damages in any counterclaim she has filed, Docs. [28], [70], and a single deposition question about salary, Doc. [71-2] at 14:23–25, is not a request for net-worth discovery. *See Nation v. Moore*, No. 3:22-cv-05063-MDH, 2024 WL 3837764, at *2–3 (W.D. Mo. Aug. 15, 2024) (distinguishing

*Bowles* and denying leave to add punitive damages where plaintiff "never made an inquiry during discovery about the net worth, assets, or other relevant information that would put Defendants on notice").

## II. Leave should also be denied under Rule 15(a)(2).

Even if Sutton could satisfy Rule 16(b), leave may be denied for "undue delay, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Each is present here.

### A. The amendment would prejudice Plaintiff Jamal.

"Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend." *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) (citing *Thompson-El v. Jones*, 876 F.2d 66, 68 (8th Cir. 1989)). In *Thompson-El*, the Eighth Circuit affirmed the denial of leave to add, among other things, "demands for actual and punitive damages" after the discovery cutoff and shortly before trial: "The additional burdens of discovery and delay the amendment would have placed on defendants we are unwilling to characterize as insignificant prejudice, especially in light of [the movant's] inability to provide a valid excuse for his failure to act earlier." 876 F.2d at 69; *see also Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) ("[W]hen late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion due to the prejudice involved.").

The proposed amendment would inject factual issues that Mr. Jamal has had no opportunity to test: it attributes to him, on information and belief, a WordPress website that he denies creating, Doc. [71-5] ¶ 38; Doc. [71] at 2 n.1, and alleges continued publication after December 8, 2025, allegations that did not exist when discovery closed and that would require discovery into the ownership and hosting of that site. It would also expose Plaintiff Jamal to a punitive damages claim that must be proven by clear and convincing evidence, Mo. Rev. Stat. § 510.261.1, after the deadline for testing that claim on summary judgment has passed. Doc. [36] ¶ I.5. And it would do so four months before a trial date the Court set fifteen months ago. Granting leave would require either reopening discovery and dispositive-motion practice or forcing Mr. Jamal to trial on untested allegations. Either is prejudice. *See Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (motions that would require "a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy" are "particularly disfavored"); *Catipovic v. Turley*, 295 F.R.D. 302, 312 (N.D. Iowa 2013) ("manifestly unjust" to "introduce the possibility of punitive damages into this case for the first time, without reopening discovery," which would require postponing dispositive motions and likely the trial).

### B. The amendment is futile because it does not plausibly allege actual malice.

Leave is properly denied when "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (citation omitted). Under Missouri law, a private figure defamation plaintiff

"need only prove negligence," but "to recover punitive damages, [she] must prove actual malice, which is defined as making a false statement with knowledge that it was false, or making a false statement with reckless disregard for whether it was true when the defendant had serious doubt as to whether it was true." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 820 (8th Cir. 2010) (citing *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000)). The proof must be clear and convincing. *Englezos v. Newspress & Gazette Co.*, 980 S.W.2d 25, 30 (Mo. Ct. App. 1998); Mo. Rev. Stat. § 510.261.1. Sutton concedes that actual malice is the standard. Doc. [71] ¶ 17. And conclusory assertions that a defendant "knew" a statement was false or acted "with malice" are legal conclusions "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Stripped of conclusions, the new allegations say that the Court dismissed Mr. Jamal's § 573.110 claim; Mr. Jamal learned of the dismissal; and he did not take down a website. Doc. [71-5] ¶¶ 40–42. That sequence does not plausibly establish knowledge of falsity, for three following reasons:

*First*, the dismissal was not a finding that anything Mr. Jamal said was false. A Rule 12(b)(6) dismissal "operat[es] on the assumption that the factual allegations in the complaint are true"; "[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of the facts alleged is improbable”). The Court held only that Mr. Jamal’s complaint did not allege facts supporting an inference that Defendant Sutton acted “with the intent to harass, threaten, or coerce” him, a pleading deficiency as to Sutton’s state of mind—and it dismissed without prejudice. Doc. [26] at 10–12; Doc. [27]. It did not find that Sutton had not disseminated his images, and it could not have: Sutton herself pleads that she posted one photograph of him to her sex-work Twitter feed and another to her paid subscription account, that a subscriber then sought “more photos,” and that she “attempted” to remove the second image. Doc. [71-5] ¶¶ 20, 22–23, 31.

*Second*, the website statement at issue is an accusation, expressly framed as one: “Taking and sharing intimate pictures of someone else without their consent is a form of sexual abuse. It is a form of sexual violence. On this website and on this blog therefore, I allege that Leslie Sutton is both a perpetrator of sexual abuse and sexual violence.” Doc. [52] at 5 n.2 (quoting Doc. [31-1] at 1). This Court has already held that whether that statement is true “presents factual issues” that cannot be resolved on the pleadings. *Id.* at 6–7. A litigant’s continued adherence to a position that the Court has found to present a genuine factual dispute is not knowledge of falsity, and Mr. Jamal’s testimony confirms that he adheres to it. Ex. A at 201:10–13, 205:1.

*Third*, the “continued publication” allegation depends on a website Sutton cannot attribute to Mr. Jamal. The only site she identifies as still online is the WordPress site, Doc. [71] at 2, which he denies creating and which she pleads only

"[u]pon information and belief." Doc. [71-5] ¶ 38; Doc. [71] at 2 n.1. An allegation that a defendant "continued to publish" a site he did not create cannot supply the knowing falsity that punitive damages require.

The testimony of Sutton's two friends adds nothing. That two members of a private chat group never saw an intimate image of Mr. Jamal, Doc. [71-3] at 15–16; Doc. [71-4] at 13–15, says nothing about what Mr. Jamal knew or believed when he published the website in August 2023. Because the proposed allegations would not survive a motion to dismiss the punitive-damages claim, the amendment is futile.

## CONCLUSION

WHEREFORE, Plaintiff/Counterclaim-Defendant Husayn Jamal respectfully requests that the Court deny Defendant/Counterclaim-Plaintiff's Motion for Leave to File a Second Amended Counterclaim, Doc. [71], and grant such other relief as the Court deems just and proper.

Respectfully Submitted,
**OTT LAW FIRM**

Joseph A. Ott, #67889
Dariya S. Kucheryaba #76678
75 W Lockwood Avenue
Unit 1
Webster Groves, MO 63119
Telephone: (314) 293-3756
Facsimile: (314) 689-0080
joe@ott.law
dariya@ott.law
*Attorneys for Plaintiff/Counterclaim-Defendant*