**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HUSAYN JAMAL, | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | Case No. 4:23-CV-1312 |
| | ) | |
| vs. | ) | |
| | ) | |
| LESLIE SUTTON, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

# MEMORANDUM IN REPLY TO PLAINTIFF/COUNTERCLAIM-DEFENDANT'S MEMORANDUM IN OPPOSITION TO COUNTERCLAIM-PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COUNTERCLAIM

COMES NOW Defendant/Counterclaim-Plaintiff, Leslie Sutton ("Sutton"), by and through undersigned counsel, and for her Memorandum in Reply to Plaintiff/Counterclaim-Defendant Husayn Jamal's ("Jamal") Memorandum in Opposition to Sutton's Motion for Leave to File a Second Amended Counterclaim does incorporate her argument in support of her Motion to Strike the same and states as follows:

## ARGUMENT

### I. Jamal's Memorandum in Opposition Should Be Struck as Untimely

On July 13, 2026, Sutton filed her Motion for Leave to File a Second Amended Counterclaim. Doc. [71]. Jamal was required to file any opposing memorandum within fourteen (14) days after service of the opposed motion, making his deadline July 27, 2026. E.D. Mo. R. 4.01(B). Jamal filed his Memorandum in Opposition on September 21, 2026, almost two months after the deadline had passed. Doc. [72]. Jamal did not file a motion

requesting an extension of time to file his Memorandum in Opposition as required by the Federal Rules. Fed. R. Civ. P. 6(b).

Therefore, Sutton requests that the Court strike Jamal's untimely Memorandum in Opposition, as this Court has done in similar circumstances. *See*, *Kennedy v. Wilkes Printing & Direct Mail, Inc.*, No. 4:07CV1333-DJS, 2008 WL 4948457, at *2 (E.D. Mo. Nov. 10, 2008) (granting a motion to strike an untimely response when non-movant's failure to timely file was not adequately explained until after the motion to strike was filed).

In the event the Court is inclined to consider the arguments presented in Jamal's late-filed Memorandum in Opposition, Sutton timely files this Memorandum in Reply and responds to the substance of Jamal's Memorandum in Opposition below.

## II. <u>Sutton Has Shown the Requisite Good Cause</u>

Sutton has shown good cause for leave to file her Second Amended Counterclaim. Under Rule 16(b)(4), a scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The primary measure of the good cause standard is the moving party's diligence. *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). "The existence or degree of prejudice to the party opposing the modification and other factors may also affect the decision." *Id.* (internal quotation omitted). "[T]he district court retains discretion as to whether to grant the motion." *Id.*

Under Rule 6(b)(1), when an act must be done within a specified time and that time has expired, the court may upon motion and for good cause extend the time "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). Excusable neglect has been described as "that course of action taken by a reasonably prudent person under the

same or similar circumstances." *DeNeui v. Wellman*, No. CIV. 07-4172, 2008 WL 11506004, at *4 (D.S.D. Oct. 6, 2008) (quoting *United States ex rel. Davison v. York Electric Construction Co.*, 25 F.R.D. 478, 479 (D.N.D. 1960)). "Because the standard is excusable *neglect*, the basis for granting an extension may, by definition, include acts of negligence. It is a matter of degree." *Id.* (alteration in original) (citation omitted).

The *DeNeui* court recognized that the movant could have acted sooner or more diligently and even that their failure to do so may have amounted to neglect but rejected that it amounted to inexcusable neglect. *Id.* at *5. It distinguished the case before it from other cases which interpreted Rule 6, finding that the movant's actions "were not even remotely close to the kinds of intentional delay, disregard of deadlines, or disregard of court's direct orders that have indicated non-excusable neglect . . ." *Id.* It further noted that unlike in cases cited by the non-moving party, the movant had never ignored a direct court order.[1] *Id.*

Courts are not limited to only considering the movant's diligence in attempting to meet the scheduling order. *Benner v. Saint Paul Pub. Schs., I.S.D. #625*, 407 F. Supp. 3d 819, 824 (D. Minn. 2019). Given the lack of a "clear test for when a party is diligent enough to establish good cause," courts may also look to other factors that consider the circumstances of the case. *Id.* (quoting *Shank v. Carleton College*, 329 F.R.D. 610, 614 (D. Minn. 2019). Whether to grant an extension is an equitable determination that takes into consideration all the relevant circumstances surrounding the omission. *DeNeui*, 2008 WL

[1] Ironically considering his current filing, Jamal missed the deadline to file the Memorandum in Opposition at issue here, Doc. [72], made no motion requesting leave to untimely file the same, and additionally failed to comply with this Court's direct order to file his First Amended Complaint within the specified timeframe, Docs. [68] and [69].

11506004 at *4. Jamal improperly removes from consideration the Court's May 21, 2026, Order ("May Order"). Doc. [72] at pg. 9 n.2. However, the May Order is a relevant circumstance surrounding Sutton's request for leave to file a Second Amended Counterclaim.

The May Order provided Jamal with thirty days to file an amended complaint "with no changes other than replacing 'John Doe' with [Counterclaim-Defendant's] legal name . . ." Doc. [62]. This limitation was not applied to Sutton. The order provides Sutton with fourteen days after Jamal's filing to file "amended counterclaims or any other appropriate response." *Id.* If Sutton had leave of the Court to amend her counterclaim as late as July 10, 2026, then requesting leave to amend three days later is hardly a lack of diligence or inexcusable neglect.

Further, it cannot be said that Sutton's actions are remotely close to the kinds of intentional actions that have indicated non-excusable neglect in the cases cited by Jamal. Many of the cases involved movants who requested leave to add entirely new causes of action or who did not address the good cause requirement. *See Kmak v. Am. Century Companies, Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017) (affirming denial of leave where movant sought to add a fraud claim and two breach of contract claims); *Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 607 (8th Cir. 2024) (affirming denial of leave where movant sought leave to replead two claims it had previously amended its counterclaim to remove); *Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014) (affirming denial of leave where "nothing in the plaintiffs' brief explains, or seeks to

explain, why they only sought leave to amend their complaint over 17 months after the deadline for doing so had passed”).

The circumstances surrounding the cases Jamal cites which pertain to punitive damage claims are also more egregious than the circumstances here. In one of them the movant did not provide any argument to support good cause for the court to consider. *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003), Transcript of Oral Argument at 2003 WL 25883996. In another the movants intentionally excluded the punitive damage claim from their original filing to gain a different litigation advantage. *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948-49 (8th Cir. 2012) (affirming denial of leave to add punitive damages where movants did not assert punitive damage claim sooner “because they thought that asserting such a claim would result in the court denying class certification,” then waited an additional six months after their certification was denied and over two years after the scheduling order’s deadline to request leave). Finally, one sought leave with only seven days before the trial. *Nation v. Moore*, No. 3:22 CV 5063 - MDH, 2024 WL 3837764, at *2 (W.D. Mo. Aug. 15, 2024).

Sutton has provided an argument in support of good cause, unlike the parties in *Freeman* and *Harris*. She at no point excluded her claim for punitive damages in order to gain a separate litigation advantage, as in *Hartis*, and her request for leave to amend comes almost four months before trial. A much longer runway than existed in *Nation*. Additionally, her proposed Second Amended Counterclaim would not create the kind of judicial strain found in the cases where movants attempted to add multiple new causes of action.

The surrounding circumstances of Sutton's Motion for Leave are much more similar to those found in *Benner*. The plaintiff in that case alleged federal claims and included a request for punitive damages in his prayer for relief. *Benner*, 407 F. Supp. 3d at 822. He later amended his complaint to add a state law claim. *Id.* He explicitly recognized in an email to opposing counsel that the deadline for him to amend his complaint to add a punitive damage request specific to his state law claim was about one week away. *Id.* at 822-23. He chose not to file the amendment at that time because he believed the case law indicated the amendment was not necessary to secure a punitive damage award.[2] *Id.* at 824. He requested leave to add a punitive damage claim to his state law claim about ten months after he first recognized the potential need to do so. *Id.* at 821.

Despite his delay, the appellate court held that the plaintiff had made a showing of good cause sufficient to allow him leave to amend his complaint. *Id.* at 826. In supporting this decision, the court expressly found that neither the plaintiff nor his counsel engaged in dilatory tactics, carelessness, or neglect. *Id.* at 824. It further found that whether the plaintiff was correct about the necessity of the amendment was immaterial. *Id.* at 825. It declined to resolve whether an amendment was necessary but stated that if it was, the plaintiff's failure to do so by the deadline did not negate a finding of good cause. *Id.*

Similarly to *Benner*, Sutton does not believe amending her Counterclaim to explicitly include a punitive damage claim is necessary given the case law. *See Bowles v.*

---

[2] Sutton recognizes that the question surrounding the necessity of including a punitive damage claim is different here than in *Benner*. In *Benner*, Minnesota state law required punitive damages be pled in an amended pleading. *Id.* at 821. The question of necessity was whether this state law applied to a federal case. *Id.* at 821-22. Nonetheless, Sutton believes the concern over whether an amended pleading was necessary is analogous to the question of necessity which exists here.

*Osmose Utilities Servs., Inc.*, 443 F.3d 671, 675 (8th Cir. 2006) (citing Fed. R. Civ. P. 54(c)); *Lindt & Sprungli (N. Am.), Inc. v. Gxo Warehouse Co., Inc.*, No. 22-00384-CV-W-BP, 2024 WL 448792, at *2 (W.D. Mo. Jan. 2, 2024) (citing *Bowles*, 443 F.3d at 675). However, out of an abundance of caution she requested leave to explicitly add the punitive claim after discovery closed with no photographic evidence to support Jamal's claim[3] and just three days after Sutton was given leave of the Court to amend her Counterclaim.

The questionable necessity of the proposed amendment does not defeat Sutton's Motion for Leave, as Jamal argues. Doc. [72] at pg. 10. Instead, *Benner* shows that it is a factor which supports that Sutton was diligent enough to establish good cause. Courts consider all relevant circumstances surrounding a movant's request for leave. *DeNeui*, 2008 WL 11506004 at *4.

## III. Sutton's Proposed Second Amended Counterclaim Is Not Prejudicial or Futile

Jamal further argues that even if Sutton could satisfy Rule 16(b), leave should nevertheless be denied under Rule 15(a). Doc. [72]. Rule 15(a) is a more liberal standard than Rule 16(b). *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). Jamal agrees. Doc. [72]. Jamal specifically argues that Sutton's Motion for Leave should be denied because it is prejudicial and futile, which are addressed in turn below.

[3] Jamal downplays this fact in contradiction to his actions. Up to the very point that discovery closed, Jamal's counsel was feverishly serving subpoenas on third parties seeking data and information in hopes of uncovering the photographic evidence that had not surfaced. Those efforts yielded no results and that was not known until after the discovery deadline.

A. Jamal Would Not Be Prejudiced

Sutton amending her counterclaim to explicitly add a punitive damage claim would not prejudice Jamal. “Cases in which an abuse of discretion has been found generally involve amendments based on facts similar to the original complaint.” *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998). The proposed amendment relies on substantially the same facts that have already been alleged and explored through discovery.

The only factual dispute Jamal argues would require additional discovery is the ownership and hosting of the WordPress website Sutton attributes to Jamal. Doc. [72] at p. 12. Unexpectedly, Jamal claims that the Amended Counterclaim would “inject factual issues Mr. Jamal has had no opportunity to test: it attributes to him, on information and belief, a WordPress website that he denies creating.” This particular claim of prejudice is surprising given Jamal’s counsel spent a considerable amount of time and effort subpoenaing third parties in an attempt to establish Jamal did not create the aforementioned site. (*See Subpoenas and Cover Letters sent to Automattic, Inc., Google, LLC, and Microsoft Corporation, which were not filed with this Court, attached hereto as Exhibit A and Microsoft’s Objections to Subpoena, which were not filed with this Court but served on Jamal’s counsel, attached hereto as Exhibit B*). Serving subpoenas to the entities that may host the website sounds like an opportunity to test. Sutton has received no documents or other information that may have been produced in response to said subpoenas, so Sutton presumes those subpoenas bore no fruit. Nonetheless, Jamal’s claim that he did not have an opportunity to test this claim is inaccurate.

In *Dennis v. Dillard Dept. Stores, Inc.*, the Eighth Circuit held that a district court abused its discretion when it denied the defendant leave to add an affirmative defense less than three months before trial. *Dennis*, 207 F.3d 523, 526 (8th Cir. 2000). The plaintiff argued she would be prejudiced if the defendant were allowed leave to amend because discovery had already closed. *Id.* The defendant argued that the plaintiff could not have been unfairly surprised by the defense given that deponents were asked questions related to the defense. *Id.* It further argued that even if she was surprised, there was plenty of time before trial to conduct additional discovery. *Id.*

The Eighth Circuit agreed with the defendant. *Id.* It found that it was within the court's discretion to reopen discovery for the limited purpose of exploring the additional defense and that with almost three months until trial, there was plenty of time to do so. *Id.* It noted that the burden of discovery alone is not sufficient to warrant denying a motion to amend. *Id.* The court held that because the defendant did not act in bad faith when it omitted its defense and because the plaintiff would not be unfairly prejudiced, it was an abuse of discretion for the district court to deny the defendant leave to amend its answer. *Id.*

Here, at the time Sutton filed her Motion for Leave to File a Second Amended Counterclaim there were over three months until trial. Like *Dennis*, Jamal should not be surprised by the proposed amendment because Sutton has elicited deposition testimony pertaining to the claim she now seeks leave to include in her Counterclaim and Jamal specifically served subpoenas on non-parties in attempt to combat Sutton's claim. Additionally, Sutton's current Counterclaim already alleges Jamal's actions were done with malice and he knew his allegations were false. Doc. [70] at ¶¶ 47, 62-63.

The factual basis of Sutton's proposed Second Amended Counterclaim is substantially similar to her First Amended Counterclaim. If Sutton's proposed Second Amended Counterclaim does require additional discovery, it would be incredibly limited and there is still ample time to do so before trial begins (and there was even more time when Sutton filed her Motion for Leave back in July). The possibility of a limited reopening of discovery does not prejudice Jamal.

B. Sutton's Proposed Second Amended Counterclaim Is Not Futile

The pleading standard does not require detailed factual allegations, but it demands more than a formulaic recitation of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). A claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation omitted). Sutton's First Amended Counterclaim already contains sufficient factual allegations to support a punitive damage claim.

The First Amended Counterclaim alleges that (1) Jamal consented to being photographed, fully clothed and wearing a collar, Doc. 70 ¶ 19, (2) the aforementioned photo was non-sexual and posted only to those who personally knew of the parties relationship dynamic, *Id.* at ¶ 20, (3) Sutton took a second non-sexual photo of Jamal, *Id.* at ¶ 22, (4) when Sutton was asked to remove the photographs she did so, *Id.* at ¶ 31, (5) no issue was made of the photographs until the romantic nature of the parties' relationship ceased, *Id.* at ¶ 32, (6) Jamal then published a website accusing Sutton of violating RSMo. § 573.110, *Id.* at ¶¶ 46-47

Accepted as true, these facts plausibly allege that Jamal knew that the photos were non-sexual and Sutton did not publish them to harass, threaten, or coerce him. Thereby he knew that Sutton couldn't have violated RSMo. § 573.110, which requires disseminated photos to be sexual in nature and be disseminated with the intent to harass, threaten, or coerce. Mo. Ann. Stat. § 573.110. Regardless of any factual dispute, Sutton has already plausibly alleged the required elements of a punitive damage claim.

The addition of the allegation that Jamal has published a WordPress website that is an exact copy of the one he previously published adds to the plausibility of Sutton's punitive damage claim. Sutton will allege that (1) the WordPress website was published by Jamal, (2) Jamal is aware that this Court dismissed his claim that Sutton violated RSMo. § 573.110 because he did not allege facts from which it could be inferred that Sutton acted with the intent to harass, threaten, or coerce him, and (3) he nonetheless republished a website which alleges Sutton violated the statue, despite knowing he had no facts to support an essential element of it.

If accepted as true, Sutton's First Amended Counterclaim and proposed Second Amended Counterclaim plausibly alleges the required elements of a punitive damage claim. The factual allegations do more than just a bare recitation of the elements and allowing Sutton leave to file the proposed Second Amended Counterclaim would not be futile.

## CONCLUSION

In conclusion, Sutton requests that the Court strike Jamal's Memorandum in Opposition due to it being filed almost two months past the deadline with no request for an

extension. Even if Jamal's tardy Memorandum in Opposition is considered, Sutton requests the Court grant her Motion for Leave to File a Second Amended Counterclaim because she has made a proper showing of good cause, it would not cause undue prejudice to Jamal, and the proposed amendment would not be futile.

WHEREFORE, Counterclaim-Plaintiff, Leslie Sutton, requests that this Court enter an Order striking Counterclaim-Defendant Husayn Jamal's Memorandum in Opposition to her Motion for Leave to File a Second Amended Counterclaim. Counterclaim-Plaintiff further requests that regardless of the Court's decision on her Motion to Strike, that this Court grant her Motion for Leave to File a Second Amended Counterclaim, and for further relief as the Court deems just and proper.

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
jhardin@bjpc.com

Attorneys for Defendant/
Counterclaim-Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was served by the Court's electronic filing system on this 1st day of October, 2026, on the counsel of record listed below.

Joseph A. Ott
Dariya Kucheryaba
Ott Law Firm
3544 Oxford Blvd.
Maplewood, MO 63143
joe@ott.law
dariya@ott.law
***Attorneys for Plaintiff/ Counterclaim-Defendant***

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO

JAH:bms/33721517.1