**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HUSAYN JAMAL, | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | Case No. 4:23-cv-01312-SEP |
| v. | ) | |
| | ) | |
| LESLIE SUTTON, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT HUSAYN JAMAL'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT/ COUNTERCLAIM-PLAINTIFF'S SECOND AMENDED COUNTERCLAIM**

COMES NOW Plaintiff/Counterclaim-Defendant Husayn Jamal ("Mr. Jamal"), by and through undersigned counsel, and for his Answer and Affirmative Defenses to the Second Amended Counterclaim of Defendant/Counterclaim-Plaintiff Leslie Sutton ("Ms. Sutton"), Doc. [76] (the "Counterclaim"), states as follows:

**ANSWER**

Except as expressly admitted below, Mr. Jamal denies each and every allegation of the Counterclaim, including its headings, footnotes, and unnumbered paragraphs. The numbered paragraphs below correspond to the numbered paragraphs of the Counterclaim. The Counterclaim's headings are repeated only for ease of reference, and Mr. Jamal admits none of the allegations they contain. This Answer supersedes Mr. Jamal's Counterclaim Answer and Affirmative Defenses, Doc. [33], which answered Ms. Sutton's original counterclaim.

**Parties**

1. Mr. Jamal admits the allegations contained in Paragraph 1.

2. Upon information and belief, Mr. Jamal admits the allegations contained in Paragraph 2.

## Jurisdiction and Venue

3. Mr. Jamal admits that he is a citizen of Canada, that Ms. Sutton is a citizen of Missouri, and that venue is proper in this District and Division. Mr. Jamal denies the remaining allegations contained in Paragraph 3, including that Ms. Sutton was injured or is entitled to recover any amount from him.

## Facts

4. Mr. Jamal admits the allegations contained in Paragraph 4.

5. Mr. Jamal admits that, in or around November 2021, he first made contact with Ms. Sutton through her Twitter account.

6. Mr. Jamal admits the allegations contained in Paragraph 6.

7. Mr. Jamal admits that, during the parties' relationship, he consented to and engaged in consensual BDSM-related activities with Ms. Sutton, including activities in the nature of financial domination and female domination. Mr. Jamal denies the remaining allegations contained in Paragraph 7.

8. Mr. Jamal admits that, at times, he paid Ms. Sutton money in connection with their BDSM-related activities. As to footnote 1, Mr. Jamal admits that the parties' private, consensual activities included the matters it describes and denies that those matters are relevant or material to any claim or defense.

9. Mr. Jamal admits that the parties' relationship became a romantic relationship over a period of months and that, once it did, he did not pay Ms. Sutton for it.

10. Mr. Jamal is without knowledge or information sufficient to form a belief about what Ms. Sutton's parents knew, and therefore denies the allegations contained in Paragraph 10.

11. Mr. Jamal admits that, during the relationship, he consented to Ms. Sutton taking photographs of him, some of which were sexually explicit, on the express condition that they be kept private and not disclosed to third parties.

12. Mr. Jamal admits that, at times, he communicated with some of Ms. Sutton's other followers on platforms she operated. Mr. Jamal denies the remaining allegations contained in Paragraph 12, including that he held "frequent" BDSM-related conversations there and that any such person was familiar with his private activities with Ms. Sutton.

13. Mr. Jamal admits that he and Ms. Sutton video chatted with Ms. Sutton's friends. Mr. Jamal is without knowledge or information sufficient to form a belief about the extent of what these friends knew of his sexual proclivities and engagements with Ms. Sutton.

14. Mr. Jamal admits the allegations contained in Paragraph 14.

15. Mr. Jamal admits the allegations contained in Paragraph 15.

16. Mr. Jamal denies the allegations contained in Paragraph 16.

17. Mr. Jamal denies the allegations contained in Paragraph 17.

18. Mr. Jamal denies the allegations contained in Paragraph 18.

19. Mr. Jamal admits that, on or about August 27, 2022, he consented to Ms. Sutton taking photographs of him in which he wore a collar and his face was visible, on the express condition that the photographs be kept private and not disclosed to third parties, and that Ms. Sutton agreed to that condition. Mr. Jamal denies the remaining allegations contained in Paragraph 19, including that he consented to their publication.

20. Mr. Jamal admits that Ms. Sutton posted at least one photograph from that set to her private Twitter account, which had approximately sixteen followers. Mr. Jamal denies that he consented to the posting, denies Ms. Sutton's characterizations of the photograph and of the persons who saw it, and denies the remaining allegations contained in Paragraph 20.

21. Mr. Jamal admits the allegations contained in Paragraph 21.

22. Mr. Jamal denies the allegations contained in Paragraph 22. Mr. Jamal states that, on or about December 30, 2022, Ms. Sutton took at least one intimate photograph of him without his knowledge or consent, and that she edited it with a blur effect and her own watermark.

23. Mr. Jamal admits that, on or about December 31, 2022, a person using the handle "GGGregson112" contacted him and asked for more photographs of him, and states that the person did so because of the photograph Ms. Sutton had sold, and that the contact was made through FetLife.com. Mr. Jamal denies the remaining allegations contained in Paragraph 23.

24. Mr. Jamal admits the allegations contained in Paragraph 24.

25. Mr. Jamal admits the allegations contained in Paragraph 25.

26. Mr. Jamal admits that, before December 31, 2022, he had communicated through FetLife.com with a person using the handle "GGGregson112," who asked Mr. Jamal for advice about how he might also become one of Ms. Sutton's "owned submissives." Mr. Jamal denies the remaining allegations contained in Paragraph 26, including that he and that person "discussed their mutual fetishes and kinks."

27. Mr. Jamal admits that he maintained a FetLife.com account under a fictitious name on which he identified himself as "owned" by Ms. Sutton, and denies the remaining allegations contained in Paragraph 27.

28. Mr. Jamal denies, upon information and belief, that "GGGregson112" learned of the relationship solely through Mr. Jamal's FetLife.com account. Mr. Jamal admits the remaining allegations contained in Paragraph 28.

29. Mr. Jamal admits that his FetLife.com account used a fictitious name. Mr. Jamal is without knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 29 and footnote 2, which concern Ms. Sutton's accounts, and therefore denies them.

30. Mr. Jamal admits that, before December 31, 2022, he had communicated with "GGGregson112" through FetLife.com, and that his FetLife.com profile stated that he was "owned" by Ms. Sutton. Mr. Jamal states, upon information and belief, that Ms. Sutton told "GGGregson112" that Mr. Jamal was her owned submissive, and that "GGGregson112" contacted Mr. Jamal on or about December 31, 2022 in

reference to the photograph that Ms. Sutton had sold to him. Mr. Jamal denies that he disclosed the photograph to "GGGregson112," denies that the contact occurred "through no actions of" Ms. Sutton, and denies the remaining allegations contained in Paragraph 30.

31. Mr. Jamal admits that, after he asked Ms. Sutton in or about December 2022 to delete the photographs she had posted to her private Twitter account, Ms. Sutton deleted the Twitter post. Mr. Jamal states that, when he asked Ms. Sutton to remove the photograph she had sold on LoyalFans, she told him that she was unable to do so because purchased images remain in the purchaser's LoyalFans library; that he himself submitted removal requests to LoyalFans on or about May 30, 2023 and June 23, 2023; and that, upon information and belief, Ms. Sutton's first request to LoyalFans concerning that photograph was an email dated on or about June 29, 2023. Mr. Jamal denies that Ms. Sutton attempted to have the LoyalFans photograph removed when he first asked her to do so and denies the remaining allegations contained in Paragraph 31.

32. Mr. Jamal denies the allegations contained in Paragraph 32.

33. Mr. Jamal admits that, on or about July 18, 2023, he spoke with Ms. Sutton by telephone. Mr. Jamal states that, during that call, he told her that LoyalFans had advised that it would respond to his request only if law enforcement were involved; that he understood her dissemination of his photograph to be a crime and a felony; that law enforcement involvement might be required to have the photograph removed; and that he preferred that she delete her LoyalFans account,

while telling her that the decision was hers to make. Mr. Jamal further states that, in messages after the call, he asked Ms. Sutton to delete her LoyalFans profile and her public Twitter account and to review her Discord messages and delete any photographs of him. Mr. Jamal denies that he threatened Ms. Sutton, denies that he discussed a polygraph examination or any job application during the call, and denies the remaining allegations contained in Paragraph 33.

34. Mr. Jamal admits that, on or about July 20, 2023, Ms. Sutton requested termination of her LoyalFans creator account, and admits, upon information and belief and as alleged in his Petition, that she deleted her public Twitter account on or about July 23, 2023. Mr. Jamal states that, on or about July 19, 2023, Ms. Sutton told him that she had reviewed her Discord messages and deleted photographs of him, and that she deleted her public Twitter account after he further explained the anxiety caused by the photographs remaining accessible. Mr. Jamal denies that he threatened Ms. Sutton and denies the remaining allegations contained in Paragraph 34.

35. Except as stated in response to Paragraph 33, Mr. Jamal denies that he harassed or threatened Ms. Sutton or caused her any harm. Mr. Jamal is without knowledge or information sufficient to form a belief about Ms. Sutton's emotional condition, and therefore denies the remaining allegations contained in Paragraph 35.

36. Mr. Jamal admits that on August 30, 2023 he filed a Petition in the Circuit Court of the City of St. Louis seeking damages arising from Ms. Sutton's dissemination of images of him, including under Mo. Rev. Stat. § 573.110, and states

that the Petition speaks for itself. Mr. Jamal denies any allegation inconsistent with it.

37. Mr. Jamal admits that he created and published a website at the domain leslie-sutton.com on or about October 1, 2023, after he filed the Petition on August 30, 2023. Mr. Jamal further admits that the website identified Ms. Sutton by name, identified her place of employment, displayed a photograph of her, and listed her online account handles, and that it stated: "I allege that Leslie Sutton is both a perpetrator of sexual abuse and sexual violence," on the stated basis that "[t]aking and sharing intimate pictures of someone else without their consent is a form of sexual abuse." The website speaks for itself, and Mr. Jamal denies any characterization of it that is inconsistent with its contents. Mr. Jamal denies that the website used the words "sexual assault." Mr. Jamal denies that the text of the website listed Ms. Sutton's home address, telephone number, or e-mail address, and denies the remaining allegations contained in Paragraph 37.

38. Mr. Jamal denies that he created, registered, published, controlled, or directed any other person to create or publish the website at https://lesliesuttonstlouis.wordpress.com/. Mr. Jamal is without knowledge or information sufficient to form a belief about who did so, and denies the remaining allegations contained in Paragraph 38.

39. Mr. Jamal denies the allegations contained in Paragraph 39.

40. Mr. Jamal admits that on March 20, 2025 the Court dismissed Count I (Mo. Rev. Stat. § 573.110) of his then-operative complaint without prejudice, because

the complaint did not allege facts supporting an inference that Ms. Sutton acted with the intent to harass, threaten, or coerce him (Docs. [26], [27]). Mr. Jamal denies that the Court found that Ms. Sutton did not disseminate images of him or did not violate § 573.110, and denies the remaining allegations contained in Paragraph 40.

41. Mr. Jamal admits that, by December 8, 2025, he was aware that the Court had dismissed Count I of his complaint without prejudice. Mr. Jamal denies that a dismissal for failure to plead Ms. Sutton's intent made any statement of his false, denies that he knew any statement of his to be false, and denies the remaining allegations contained in Paragraph 41.

42. Mr. Jamal denies that, after December 8, 2025, he published any website stating that Ms. Sutton violated Mo. Rev. Stat. § 573.110, denies that he knew any statement on any website he published to be false, and denies the remaining allegations contained in Paragraph 42.

43. Mr. Jamal is without knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 43 concerning Ms. Sutton's emotional condition and relationships, and therefore denies them. Mr. Jamal denies that any conduct of his caused the harms alleged.

**Count I: Defamation**

44. Mr. Jamal incorporates by reference his responses to Paragraphs 1 through 43 and his Affirmative Defenses as if fully set forth herein.

45. Mr. Jamal incorporates his response to Paragraph 37. Mr. Jamal admits that he created and published a website at the domain leslie-sutton.com on or about

October 1, 2023, after he filed the Petition on August 30, 2023; that the website identified Ms. Sutton by name, identified her place of employment, displayed a photograph of her, and listed her online account handles; that it described the Petition and his allegations; and that it made available copies of the Petition and other court filings, which speak for themselves. Mr. Jamal denies that the text of the website listed Ms. Sutton's home address, telephone number, or e-mail address; denies Ms. Sutton's characterization of her account handles as private, because they were the handles of accounts she publicly operated and advertised; denies that the website contained "detailed descriptions of her secret and private sex-life," except to the extent that the court filings made available on it described Ms. Sutton's online sex work; denies that the website accused Ms. Sutton of "sexual assault," and states that it alleged "sexual abuse and sexual violence," as stated in response to Paragraph 46; and denies the remaining allegations contained in Paragraph 45.

46. Mr. Jamal admits that the website stated his allegation that Ms. Sutton is "both a perpetrator of sexual abuse and sexual violence," on the stated basis that "[t]aking and sharing intimate pictures of someone else without their consent is a form of sexual abuse." Mr. Jamal denies that the website accused Ms. Sutton of "sexually assaulting" him as that phrase is ordinarily understood, and denies the remaining allegations contained in Paragraph 46.

47. Mr. Jamal denies the allegations contained in Paragraph 47 to the extent they assert or imply that his statements about Ms. Sutton were false. Ms. Sutton

shared and sold images of Mr. Jamal without his consent, conduct that Mr. Jamal characterized, and continues to characterize, as image-based sexual abuse.

48. Mr. Jamal incorporates his responses to Paragraphs 37 and 45. Mr. Jamal admits that the website identified Ms. Sutton by name, identified her place of employment, displayed a photograph of her, and listed the handles of online accounts that she publicly operated and advertised, and that it made available copies of the Petition and other court filings, which speak for themselves. Mr. Jamal denies that the text of the website listed Ms. Sutton's home address, telephone number, or e-mail address, denies Ms. Sutton's characterization of that information as "detailed personal information ... on how to contact and locate" her, and denies the remaining allegations contained in Paragraph 48.

49. Mr. Jamal denies the allegations contained in Paragraph 49.

50. Mr. Jamal admits that he created and published the website described in Paragraph 37, at a domain bearing Ms. Sutton's name. Mr. Jamal denies that the website stated that he was "sexually assaulted," denies Ms. Sutton's characterizations, and denies the remaining allegations contained in Paragraph 50.

51. Mr. Jamal denies the allegations contained in Paragraph 51.

52. Mr. Jamal denies the allegations contained in Paragraph 52, including that the website contained "explicit keywords" or disclosed Ms. Sutton's "private and secret sex-life."

53. Mr. Jamal denies the allegations contained in Paragraph 53.

Mr. Jamal denies that Ms. Sutton is entitled to judgment on Count I, denies that she is entitled to any of the relief requested in the unnumbered "WHEREFORE" paragraph following Paragraph 53, including punitive damages, and denies that Count I states a claim upon which relief can be granted.

**Count II: Public Disclosure of Private Facts**

54. Mr. Jamal incorporates by reference his responses to Paragraphs 1 through 53 and his Affirmative Defenses as if fully set forth herein.

55. Mr. Jamal is without knowledge or information sufficient to form a belief about Ms. Sutton's subjective desires, and therefore denies the allegations contained in Paragraph 55. Mr. Jamal further states that Ms. Sutton publicly operated and advertised the online accounts described in Paragraph 6.

56. Paragraph 56 states a legal conclusion to which no response is required. To the extent a response is required, Mr. Jamal denies the allegations contained in Paragraph 56.

57. Mr. Jamal incorporates his responses to Paragraphs 37, 45, and 48. Mr. Jamal admits that he created and published a website at the domain leslie-sutton.com on or about October 1, 2023, after he filed the Petition on August 30, 2023; that the website identified Ms. Sutton by name, identified her place of employment, displayed a photograph of her, and listed the handles of online accounts that she publicly operated and advertised; and that it made available copies of the Petition and other court filings, which speak for themselves. Mr. Jamal states that the Petition, as filed, identified Ms. Sutton by name, address, and place of employment

and described her online sex work. Mr. Jamal denies that the text of the website listed Ms. Sutton's home address, telephone number, or e-mail address; denies that the website contained "detailed descriptions of her secret and private sex-life," except to the extent that the court filings made available on it described Ms. Sutton's online sex work; denies that the website disclosed private facts, because the accounts were ones that Ms. Sutton publicly operated and advertised; and denies the remaining allegations contained in Paragraph 57.

58. Mr. Jamal denies the allegations contained in Paragraph 58.

59. Mr. Jamal denies the allegations contained in Paragraph 59.

60. Mr. Jamal denies the allegations contained in Paragraph 60.

61. Paragraph 61 states a legal conclusion to which no response is required. To the extent a response is required, Mr. Jamal denies the allegations contained in Paragraph 61 as applied to the facts of this case.

62. Mr. Jamal denies the allegations contained in Paragraph 62.

63. Mr. Jamal denies the allegations contained in Paragraph 63.

64. Mr. Jamal denies the allegations contained in Paragraph 64.

Mr. Jamal denies that Ms. Sutton is entitled to judgment on Count II, denies that she is entitled to any of the relief requested in the unnumbered "WHEREFORE" paragraph following Paragraph 64, including punitive damages, and denies that Count II states a claim upon which relief can be granted.

**Count III: False Light Invasion of Privacy**

65. Mr. Jamal incorporates by reference his responses to Paragraphs 1 through 64 and his Affirmative Defenses as if fully set forth herein.

66. Paragraph 66 states a legal conclusion to which no response is required. To the extent a response is required, Mr. Jamal denies that he accused Ms. Sutton of "sexual assault," and denies the remaining allegations contained in Paragraph 66.

67. Mr. Jamal denies the allegations contained in Paragraph 67.

68. Mr. Jamal denies the allegations contained in Paragraph 68.

69. Mr. Jamal denies the allegations contained in Paragraph 69.

70. Mr. Jamal denies the allegations contained in Paragraph 70.

Mr. Jamal denies that Ms. Sutton is entitled to judgment on Count III, denies that she is entitled to any of the relief requested in the unnumbered "WHEREFORE" paragraph following Paragraph 70, including punitive damages, and denies that Count III states a claim upon which relief can be granted.

**AFFIRMATIVE DEFENSES**

FURTHER ANSWERING, Mr. Jamal states the following additional defenses and affirmative defenses. They are designated as affirmative defenses out of an abundance of caution. In so designating them, Mr. Jamal does not assume the burden of proof on any defense that is not legally an affirmative defense, and does not waive any position that a listed defense is not an affirmative defense.

1. The Counterclaim fails, in whole or in part, to state a claim upon which relief can be granted, including any claim for punitive damages, because it pleads

conclusions rather than facts showing that Mr. Jamal published any statement with knowledge of its falsity or with reckless disregard for its truth.

2. Ms. Sutton's claims are barred, in whole or in part, because the statements of fact on which they rest were true or substantially true. Mr. Jamal consented to being photographed by Ms. Sutton, but not to the photographs being shared or sold. Ms. Sutton shared photographs of him without his consent, including through her private Twitter account and, upon information and belief, in group chats; took a photograph of him in December 2022 without his knowledge or consent; and sold that photograph to a LoyalFans subscriber for a fee. Mr. Jamal's website alleged that she did these things, and his characterization of that conduct as image-based sexual abuse and sexual violence produces no different effect on the reader's mind than the literal truth. This defense is directed to the statements of fact about the sharing, taking, and sale of his images, and does not rest on any allegation that Ms. Sutton violated Mo. Rev. Stat. § 573.110.

3. Ms. Sutton's claims are barred because the statements on which they rest, including that nonconsensual sharing of intimate images "is a form of sexual abuse" and "a form of sexual violence," expressly framed as Mr. Jamal's allegation, are statements of opinion, characterization, or rhetorical hyperbole based on disclosed facts, and are not provably false statements of fact.

4. Ms. Sutton's claims are barred, in whole or in part, by privilege. Statements made in pleadings and other filings in this action and in the Petition, and the filing, service, and communication of those filings, are absolutely privileged. Statements on

the website that accurately described the allegations of the pending Petition are privileged as a fair and accurate report of a judicial proceeding and as fair comment on a matter of public concern.

5. Ms. Sutton's claim for public disclosure of private facts is barred, in whole or in part, because the matters allegedly disclosed were not private facts or were already public. Ms. Sutton publicly operated and advertised the online accounts whose handles the website listed. The Petition, as filed, identified Ms. Sutton by name, address, and place of employment and described her online sex work, and the website made available copies of the Petition and other court filings, which speak for themselves. In addition, the matters allegedly disclosed were of legitimate public concern, because they related to a pending lawsuit and to the nonconsensual dissemination of intimate images.

6. Ms. Sutton's claims are barred, in whole or in part, by the doctrines of consent, waiver, estoppel, and unclean hands.

7. Ms. Sutton's claims are barred, in whole or in part, by the applicable statutes of limitations, including Mo. Rev. Stat. § 516.140, to the extent they rest on any publication made more than two years before the claim based on it was first asserted, including any claim based on the website at lesliesuttonstlouis.wordpress.com or on any other publication first pleaded in the Second Amended Counterclaim, none of which relates back under Fed. R. Civ. P. 15(c)(1)(B).

8. Ms. Sutton's claims are barred, in whole or in part, by the First Amendment to the United States Constitution and Article I, Section 8 of the Missouri Constitution. Mr. Jamal's statements addressed matters of public concern, including the nonconsensual dissemination of intimate images and a pending lawsuit, and were made without knowledge of falsity or reckless disregard for the truth. Ms. Sutton may not recover presumed or punitive damages without clear and convincing proof of actual malice.

9. Ms. Sutton is not entitled to punitive damages. Punitive damages may be awarded only if Ms. Sutton proves by clear and convincing evidence that Mr. Jamal intentionally harmed her without just cause or acted with a deliberate and flagrant disregard for the safety of others, Mo. Rev. Stat. § 510.261.1, and, as to her defamation claim, only on clear and convincing proof of actual malice, and only within the limits of Mo. Rev. Stat. §§ 510.261, 510.263, and 510.265 and the Due Process Clause of the Fourteenth Amendment. Mr. Jamal requests that any claim for punitive damages be tried in a separate stage, with no evidence of his financial condition received unless and until liability for punitive damages is found. Ms. Sutton first asserted a demand for punitive damages after the deadline for amending pleadings, the close of discovery, and the dispositive-motion deadline set by the Case Management Order (Doc. [36]), and Mr. Jamal preserves all objections to it.

10. Ms. Sutton's claims are barred, in whole or in part, because she has suffered no actual damage to her reputation caused by any statement of Mr. Jamal, and her alleged damages are speculative.

11. Ms. Sutton failed to mitigate her alleged damages, and any recovery must be barred or reduced accordingly.

12. Ms. Sutton's alleged damages were caused, in whole or in part, by her own acts and omissions, including her public operation and advertising of the online accounts and personas described in the Counterclaim, and by the independent acts or omissions of third persons over whom Mr. Jamal had no control and for whom he is not responsible, including any person who copied, archived, republished, or linked to any content from any website.

13. To the extent Count III rests on the same statements as Count I, it is duplicative of Count I and is subject to every defense to Count I.

14. Ms. Sutton may not recover attorneys' fees on any claim asserted in the Counterclaim. The Court has stricken her requests for attorneys' fees (Doc. 52).

15. At all relevant times Mr. Jamal acted in good faith and in the belief that his statements were true.

16. Any recovery by Ms. Sutton must be set off against any judgment entered in Mr. Jamal's favor on his claims against her.

17. Mr. Jamal reserves the right to amend this Answer to assert additional defenses as permitted by the Federal Rules of Civil Procedure and the orders of the Court.

## **JURY DEMAND**

Mr. Jamal demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff/Counterclaim-Defendant Husayn Jamal respectfully requests that the Court enter judgment in his favor and against Defendant/Counterclaim-Plaintiff Leslie Sutton on each count of the Second Amended Counterclaim, order that Ms. Sutton take nothing on the Second Amended Counterclaim, award Mr. Jamal his costs, and grant such other and further relief as the Court deems just and proper.

Respectfully Submitted,
**OTT LAW FIRM**

Joseph A. Ott, #67889
Dariya S. Kucheryaba #76678
75 W Lockwood Avenue
Unit 1
Webster Groves, MO 63119
Telephone: (314) 293-3756
Facsimile: (314) 689-0080
joe@ott.law
dariya@ott.law
*Attorneys for Plaintiff/Counterclaim-Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of October, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record, including:

Justin A. Hardin, #57555MO

BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
jhardin@bjpc.com
*Attorneys for Defendant/Counterclaim-Plaintiff*

*/s/ Dariya S. Kucheryaba*