# EXHIBIT 3

**Plaintiff's November 24, 2026 Letter to Defense Counsel, with Exhibits A–F**

Letter (Nov. 24, 2026)
Exhibit A — LoyalFans records, OTT_JAMAL_LF_0001–0012
Exhibit B — Excerpts, Deposition of Leslie Sutton (Mar. 20, 2026)
Exhibit C — Excerpts, Defendant's Responses to Requests for Admission
Exhibit D — Excerpts, Defendant's Answers to Interrogatories
Exhibit E — Defendant's Responses to Requests for Production (complete)
Exhibit F — Excerpts, Transcript of the Nov. 4, 2026 Hearing (Doc. 83)

Public copy: quotations of LoyalFans messages, tickets, and reports redacted; Exhibit A filed under seal (slip sheet); personal email addresses in Exhibit C redacted. L.R. 13.05(A)(4)(c).

JOSEPH A. OTT
G. JERRY CHEN*
DARIYA KUCHERYABA
JENNIFER WALKER

OTT LAW
TRIAL ATTORNEYS

CONSTANT VICTORY

*Also Licensed in New York
中文 | русский язык | Español

November 24, 2026

Via Email (jhardin@bjpc.com)

Justin A. Hardin
Brown & James, P.C.
800 Market Street, Suite 1100
St. Louis, Missouri 63101

Re: Husayn Jamal v. Leslie Sutton, No. 4:23-cv-01312-SEP (E.D. Mo.) — Your November 23, 2026 Request Concerning Doc. 84, Page 4

Dear Justin:

You asked us to identify, by Bates number, the documents that support page 4 of Doc. 84, or else to correct it. The documents support it. They are enclosed as Exhibits A through F. Exhibit A holds OTT_JAMAL_LF_0001 through 0012. The Bates prefix OTT_JAMAL_LF_ means records from LoyalFans' April 16, 2026 subpoena production, and summaries made from that production, that Plaintiff identifies as support for the page 4 statement in Doc. 84. An index is enclosed. Exhibits B through E are Ms. Sutton's deposition testimony and discovery responses, cited by page and line or by page. Exhibit F is the transcript of the November 4, 2026 hearing.

We will file the enclosed notice and motion today. It restates the sentence in terms of the civil standard, changing "unequivocally demonstrates it." to "demonstrates that, more likely than not, she did." It also adds Bates citations to the supporting records on page 4 and updates the date and the certificate of service. No other text changes, and no fact is withdrawn.

The enclosed motion attaches this letter, with its exhibits, as Exhibit 3.

**What the records show**

Ms. Sutton deleted the photograph from her own account before she asked LoyalFans to remove it (Ticket #98411, Ex. A at OTT_JAMAL_LF_0004), and discovery did not recover it (Ex. F, Hr'g Tr. 6:13–16, 7:5–15, 11:21–12:4). She now says it showed Plaintiff tying her shoe (Ex. B, Sutton Dep. 36:7–37:22). Her own records say otherwise.

1. The buyer wanted Plaintiff (Ex. A at OTT_JAMAL_LF_0001–0003, 0011). The buyer, @gggregson112, fixated for weeks on Plaintiff, whom Ms. Sutton calls "Aleks":

> Nov. 25, 2022 (buyer): "[redacted]" (Ex. A at OTT_JAMAL_LF_0001)
>
> Nov. 26, 2022 (buyer, $50 in tips): "[redacted]" (Ex. A at OTT_JAMAL_LF_0011)

JOSEPH A. OTT
G. JERRY CHEN*
DARIYA KUCHERYABA
JENNIFER WALKER

OTT LAW TRIAL ATTORNEYS

CONSTANT VICTORY

*Also Licensed in New York
中文 | русский язык | Español

Dec. 20, 2022 (Ms. Sutton): "[redacted]" (Ex. A at OTT_JAMAL_LF_0001)

Dec. 25, 2022 (Ms. Sutton): "[redacted]" (Ex. A at OTT_JAMAL_LF_0001)

Dec. 25, 2022 (buyer): "[redacted]" (Ex. A at OTT_JAMAL_LF_0001)

Dec. 30, 2022, 10:24:13 p.m.: [redacted] (Ex. A at OTT_JAMAL_LF_0001)

10:24:57 p.m. (buyer): "[redacted]" (Ex. A at OTT_JAMAL_LF_0001, 0003)

10:25:06 p.m. (buyer): "[redacted]" (Ex. A at OTT_JAMAL_LF_0001, 0003)

A man who asked for that does not react that way to a picture of a man tying a shoe. (Times are Central, from LoyalFans' message and transaction records; the screenshots at Ex. A at OTT_JAMAL_LF_0002–0003 confirm the order.)

2. She called it revenge porn (Ex. A at OTT_JAMAL_LF_0004–0006). In Ticket #98411, she told LoyalFans that the image showed "[redacted]" (Ex. A at OTT_JAMAL_LF_0004; Ex. C, RFAs 46–47, at 9–10.) Standard 11.6 bans "revenge porn," defined by reference to sexually explicit material (Ex. A at OTT_JAMAL_LF_0006). She passed over the separate privacy rule, § 11.10. LoyalFans then closed her account for violating its Terms (Ticket #101864, Ex. A at OTT_JAMAL_LF_0005; Ex. C, RFAs 50–51, at 10).

3. The buyer reported her account for non-consensual content (Ex. A at OTT_JAMAL_LF_0007–0008). LoyalFans answered his reports:

July 13, 2023: "[redacted]" (Compliance-28958, Ex. A at OTT_JAMAL_LF_0007)

July 16, 2023: "[redacted]" (Compliance-29141, Ex. A at OTT_JAMAL_LF_0008)

4. She admits the rest. She sold the image without Plaintiff's permission (Ex. B, Sutton Dep. 37:5–7; Ex. C, RFA 49, at 10). The buyer is the only person to whom she sold images of Plaintiff through LoyalFans, and she sold none through OnlyFans (Ex. D, Interrog. 13, at 5; Ex. D, Interrog. 14, at 5). Two days before she closed her account, she told Plaintiff: "It was really careless and stupid. I didn't recognize how fucking awful it was. I took advantage of you, Aleks. I'm sorry." (Ex. C, RFA 73, at 17.) Her counterclaim alleges that Plaintiff "consented to numerous sexually explicit photographs to be taken of him" and that the buyer "wanted more photos" (Doc. 76 ¶¶ 11, 23).

JOSEPH A. OTT
G. JERRY CHEN*
DARIYA KUCHERYABA
JENNIFER WALKER

OTT LAW TRIAL ATTORNEYS

CONSTANT VICTORY

*Also Licensed in New York
中文 | русский язык | Español

5. Then she opened a new account, and he was there (Ex. A at OTT_JAMAL_LF_0009–0010, 0012). Twenty days after LoyalFans closed her account, she opened a new one, @succubitchfaye, under her own name (verification and W-9 approval records, Aug. 9, 2023; Ex. A at OTT_JAMAL_LF_0010). The first record in that account's conversation with the same buyer was created on August 29, 2023 (the production records no send time). It reads: "[redacted]" (Ex. A at OTT_JAMAL_LF_0012.) Asked in RFA 6 whether she "operates" that account, she answered "Deny." (Ex. C, RFA 6, at 2.) And asked for her correspondence seeking removal of content, she omitted her LoyalFans removal emails, which she admitted the same day (Ex. E, RFP 5, at 2–3; Ex. C, RFAs 46–51, at 9–10).

**Our request: please correct your own filings**

The standard you apply to Doc. 84 applies to your filings. Doc. 71 states as settled fact what you told the Court on November 4 is disputed, and your most recent filing, Doc. 74, relies on the same absence of photographs:

1. Doc. 71 says the missing photos "clearly establishes" that Plaintiff knew his statements were false (¶ 14, PageID #584). And it says discovery "conclusively established" that "no intimate sexual images of Counterclaim-Defendant existed on the platforms" (¶ 24, PageID #587–588).

2. Doc. 74, your October 1 reply in support of Doc. 71, relies on the same absence to justify the timing of the punitive-damages amendment: Ms. Sutton sought leave "after discovery closed with no photographic evidence to support Jamal's claim," and Plaintiff's subpoenas sought "the photographic evidence that had not surfaced" (Doc. 74 at 7 & n.3, PageID #642). Plaintiff's opposition had already answered that premise: the close of discovery "did not change her position; it ended the period in which the parties could gather evidence about it." (Doc. 72 at 9, PageID #626.)

On November 4, you told the Court that whether the photographs were shared is a factual dispute, that the images cannot be shown to the jury, and that other deleted images "arguably could" satisfy 15 U.S.C. § 6851 (Ex. F, Hr'g Tr. 4:15–21, 5:14–18, 9:20–23). Deleted files prove nothing against Plaintiff. We ask that you file a correction of Doc. 71 ¶¶ 14 and 24, and of Doc. 74 at 7 and note 3 to the extent they rest on that premise, that conforms them to your statements on the record, as we are doing for Doc. 84. Please tell us by December 7, 2026 whether you will.

JOSEPH A. OTT
G. JERRY CHEN*
DARIYA KUCHERYABA
JENNIFER WALKER

OTT LAW TRIAL ATTORNEYS

CONSTANT VICTORY

*Also Licensed in New York
中文 | русский язык | Español

**Rule 11**

Your 48-hour demand does not start Rule 11(c)(2)'s 21-day safe harbor. Only service of the sanctions motion itself does. Caranchini v. Nationstar Mortg., LLC, No. 22-1975, slip op. at 5 (8th Cir. Apr. 3, 2024). The record supports Plaintiff's claim, and Plaintiff will prove it at trial.

Sincerely,

OTT LAW FIRM

/s/ Joseph A. Ott

Joseph A. Ott

Enclosures:
Exhibit A — LoyalFans records, OTT_JAMAL_LF_0001–0012 (Confidential, Doc. 65 ¶ 6)
Exhibit B — Excerpts, Deposition of Leslie Sutton (Mar. 20, 2026)
Exhibit C — Excerpts, Defendant's Responses to Requests for Admission
Exhibit D — Excerpts, Defendant's Answers to Interrogatories
Exhibit E — Defendant's Responses to Requests for Production (complete)
Exhibit F — Excerpts, Transcript of the November 4, 2026 Hearing (Doc. 83)
Bates index and prefix legend
Courtesy copy of Plaintiff's notice and motion (with Exhibits 1 and 2, proposed orders, and motion for sealing; Exhibit 3 is this letter)

cc: Dariya S. Kucheryaba

# EXHIBIT A

*to Plaintiff's November 24, 2026 letter to defense counsel*

**LoyalFans Records, OTT_JAMAL_LF_0001–0012**

FILED UNDER SEAL

Plaintiff has moved for leave to file Exhibit 3, including this Exhibit A, under seal. Protective Order (Doc. 65) ¶¶ 6, 10; E.D. Mo. L.R. 13.05(A)(4).

# EXHIBIT B

*to Plaintiff's November 24, 2026 letter to defense counsel*

**Excerpts of the Deposition of Leslie Sutton (Mar. 20, 2026)**

Caption page; transcript pages 35–38 (each cited page with one page of context); Certificate of Reporter.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN DOE,

Plaintiff/Counterclaim Defendant,

Cause No. 4:23-CV-01312-SEP

vs.

LESLIE SUTTON,

Defendant/Counterclaim Plaintiff.

VIDEOTAPED DEPOSITION OF LESLIE SUTTON
Taken on behalf of the Plaintiff
March 20, 2026

Jo Ann Dickson, CCR 1085

(Whereupon, the deposition commenced at 10:18 a.m.)

here.

A No.

Q Okay. What are you doing here?

A We had done a small BDSM scene, as I mentioned. These are all taken on the same dates as we were trying to process breaking up or not breaking up.

Q You mentioned a breakup. Why were you guys breaking up?

A Because Mr. Jamal had claimed that I had broken his trust multiple times and did not want to continue in the relationship.

Q What do you mean broken his trust multiple times?

A He had claimed that I had disseminated sexual images of him, which I had disseminated 12A, which was nonsexual in its nature, and another image where he was tying my shoe and you could only see the top of his head, so his hair and his hands. And that's not in this context or these images.

Q Where is the image?

A Yeah, I don't have access to it anymore.

Q Why not?

A Because Mr. Jamal insisted that I delete it.

Q Okay. And where was that -- that image that you just described, what platforms was that shared on?

A I had shared it once on LoyalFans to one client that Mr. Jamal had spoken to repeatedly, and it was blurred so that it was de-identified in some capacity. And I had also recognized that you couldn't identify him versus any other brown-skinned individual. So that's where I shared it.

Q Okay. And you shared it. So did you sell it?

A I sold it via a direct message for $50, I believe, because this client knew my partner, had spoken to my partner multiple times, and I was trying to say hey, I'm busy, leave me alone. And I didn't assume -- or I assumed somebody wouldn't pay $50 for one image because that's insane. But in the case that he did, I had gone through the extra steps to blur it.

Q Okay. How did you blur it?

A Photo editing app.

Q Okay. What photo editing app?

A I don't remember. Perchance Picsart App at the time, but I frankly couldn't remember.

Q Okay. So and I want to just for the record, could you describe one more time that photograph that you took?

A Yeah. Mr. Jamal is fully clothed. We were about to go out to dinner. We were -- or, no, cocktails actually. Mr. Jamal had on a navy wool coat, if I remember

correctly, and he was tying my shoe for me. I was wearing brown Timberlands that are my work boots. And you could see the top of his head and his hands, and most of it was a picture of my leg and my shoe.

Q Okay. So did -- did my client give you permission to sell that photograph?

A No.

Q Okay. Why did you sell it?

A Because Mr. Jamal knew the client that I was speaking to, and I wanted to have some extra money to help pay for cocktails that evening, and I wanted to tell this person that they were annoying me and they should leave me alone.

Q So they were annoying you, so you sold a photograph of my client he didn't consent to?

A To clarify that I was busy.

Q Okay. So --

A And a fully clothed, de-identified image of your client that wouldn't be recognizable outside of any context.

Q The same photo he did not consent to, correct?

A Yes.

Q After you sold the photo, did you tell my client that you sold that without his permission?

A He came to me about it, and I admitted that I

sold it, yes.
Q Okay. So let's talk about that conversation.
A Huh-huh.
Q He came to you. Give -- give me the context. So when was this, what happened?
A So we were going out for New Years. It was New Years of whatever year we started dating. We were in Chicago. We had a hotel room at the Fairmont. And we were about to go out for cocktails. Both us were fully clothed. We were going go out for drinks later with one of my friends.
And you -- I'm sorry, I'm like losing track of the question at this point. So describing the image --
Q Yeah.
A -- we were about to go out for cocktails. What was the question?
Q The question is, tell me about the confrontation.
A Oh, yes.
Q Yeah.
A So then I believe while at cocktails your client had received a direct message from the man that I had sold it to because they were in contact already, saying congratulations on your photo shoot, which was an extrapolation beyond the image that I had shared, because

CERTIFICATE OF REPORTER

I, Jo Ann Dickson, CCR, 1085 Certified Shorthand Reporter, Notary Public within and for the State of Missouri, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; the testimony of said witness was taken by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

DATE: 4/21/26

Jo Ann Dickson, CCR, 1085

# EXHIBIT C

*to Plaintiff's November 24, 2026 letter to defense counsel*

**Defendant's Responses to Plaintiff's Requests for Admission (July 21, 2025) (Excerpts)**

Pages 1, 2, 4, 9, 10, 11, 17, and 18 (signature and certificate of service).
Public copy: personal email addresses redacted.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>LESLIE SUTTON,<br><br>Defendant/Counterclaim-Plaintiff. | Case No. 4:23-CV-1312 |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF LESLIE SUTTON'S RESPONSES TO PLAINTIFF/COUNTERCLAIM-DEFENDANT'S REQUESTS FOR ADMISSION**

Comes now Defendant/Counterclaim-Plaintiff, Leslie Sutton, by and through counsel, and submits the following Responses to Plaintiff/Counterclaim-Defendant's Request for Admissions:

1. Admit that Defendant Sutton has used the email address [redacted].

   **RESPONSE: Admit.**

2. Admit that Defendant Sutton has used the email address [redacted].

   **RESPONSE: Admit.**

3. Admit that Defendant Sutton operates the private Twitter account @t1tlef1ght.

   **RESPONSE: Admit.**

4. Admit that Defendant Sutton operates the Discord server, The Estate.

**RESPONSE: Deny.**

5. Admit that Defendant Sutton previously operated the LoyalFans account @DeusSeraph.

**RESPONSE: Admit.**

6. Admit that Defendant Sutton operates the LoyalFans account @succubitchfaye.

**RESPONSE: Deny.**

7. Admit that Defendant Sutton operates the OnlyFans account Goddess Faye.

**RESPONSE: Deny.**

8. Admit that Defendant Sutton operates the website succubitch.koji.site.

**RESPONSE: Deny.**

9. Admit that Defendant Sutton operates the Kinky Elephant account @DeusSeraph@kinkyelephant.com.

**RESPONSE: Deny.**

10. Admit that Defendant Sutton operates the SextPanther account Succubitch Faye.

**RESPONSE: Deny.**

11. Admit that Defendant Sutton operates the MintStars account @Succubitch.

**RESPONSE: Deny.**

**RESPONSE:** **Defendant is no longer in possession of said photographs, but based upon information and belief, Defendant admits this request.**

18. Admit that Defendant Sutton shared the photographs referenced in Request for Admission #14 with any third party via her private Twitter account @t1tlef1ght.

**RESPONSE:** **Defendant admits to sharing two photographs of Plaintiff, not in an undressed or otherwise exposed state, to her Twitter account.**

19. Admit that Defendant Sutton shared the photographs referenced in Request for Admission #14 with any third party via her Discord server, The Estate.

**RESPONSE:** **Deny.**

20. Admit that Defendant Sutton shared the photographs referenced in Request for Admission #14 with any third party via her LoyalFans account @DeusSeraph.

**RESPONSE:** **Deny.**

21. Admit that Defendant Sutton shared the photographs referenced in Request for Admission #14 with any third party via her LoyalFans account @succubitchfaye.

**RESPONSE:** **Deny.**

22. Admit that Defendant Sutton shared the photographs referenced in Request for Admission #14 with any third party via her OnlyFans account Goddess Faye.

43. Admit that Defendant Sutton shared the photographs referenced in Request for Admission #30 with any third party via her MintStars account @Succubitch.

**RESPONSE: Deny.**

44. Admit that Defendant Sutton shared the photographs referenced in Request for Admission #30 with any third party via the email address [redacted].

**RESPONSE: Deny.**

45. Admit that Defendant Sutton shared the photographs referenced in Request for Admission #30 with any third party via the email address [redacted].

**RESPONSE: Deny.**

### ***III. <u>Content Removal – RFA Exhibits A-D</u>***

46. Admit that on June 29, 2023, Defendant Sutton emailed LoyalFans via support@loyalfans.com requesting to "remove content from a PPV message that has been paid for and purchased by a user on the site." *See* RFA Exhibit A.

**RESPONSE: Admit.**

47. Admit that the content referenced in Request for Admission #46 included "another person who has requested to have it removed from the site in its entirety as they do not consent to the image being on the site, violating content standard 11.6 in the Loyalfans Terms and

Conditions." *See* RFA Exhibit A.

**RESPONSE: Admit.**

48. Admit that on December 29, 2022, Defendant Sutton had sold at least one image depicting Plaintiff Doe to @gggregson112 (https://www.loyalfans.com/fan/gggregson112) via her LoyalFans account @DeusSeraph. *See* RFA Exhibit A.

**RESPONSE: Defendant admits to taking a photograph in which Plaintiff is depicted, although he is not identifiable.**

49. Admit that such image(s) described in Request for Admission #47 were sold for $50. *See* RFA Exhibit A.

**RESPONSE: Admit.**

50. Admit that on July 20, 2023, Defendant Sutton contacted LoyalFans, requesting that her creator account @DeusSeraph be terminated. *See* RFA Exhibit B.

**RESPONSE: Admit.**

51. Admit that on July 20, 2023, Andrew from LoyalFans had terminated your LoyalFans account, because it violated their Terms of Service. *See* RFA Exhibit C.

**RESPONSE: Admit.**

52. Admit that on July 20, 2023, you sent a text message to Plaintiff Doe regarding your LoyalFans account being terminated. *See* RFA Exhibit D.

**RESPONSE: Admit.**

### *IV. Ownership Contract (2022-03-11) – Exhibit E*

53. Admit that Defendant Sutton has used the alias "Faye Vale." *See* RFA Exhibit E.

**RESPONSE: Admit.**

54. Admit that on the first page of the "Ownership Contract (2022-03-11)", the first bullet point listed under the entitled section "Hard limits of the Submissive" says "blackmail/public exposure of real name/photo/personal information (a.m.p. Discord screenshots are fine)." *See* RFA Exhibit E.

**RESPONSE: Defendant states that the subject contract is void for illegality. Without waiving said objection, Defendant admits this request and states that the document speaks for itself.**

55. Admit that Defendant Sutton signed her name as "Faye Vale" on the sixth page of the "Ownership Contract (2022-03-11)" using Hellosign. *See* RFA Exhibit E.

**RESPONSE: Defendant states that the subject contract is void for illegality. Without waiving said objection, Defendant admits this request and states that the document speaks for itself.**

([redacted]), as indicated on the last page of the "Ownership Contract (2023-03-11)." *See* RFA Exhibit F.

**RESPONSE:** **Defendant states that the subject contract is void for illegality. Without waiving said objection, Defendant admits this request and states that the document speaks for itself.**

### ***VI. <u>Phonecall (2023-07-18) – RFA Exhibit G-H</u>***

72. Admit that on July 18, 2023, Plaintiff Doe called Defendant Sutton. *See* RFA Exhibits G-H.

**RESPONSE:** **Admit.**

73. Admit that at 15:55 of the phone call referenced in Request for Admission #72, Defendant Sutton says, "It was really careless and stupid. I didn't recognize how fucking awful it was. I took advantage of you, Aleks. I'm sorry." *See* RFA Exhibits G-H.

**RESPONSE:** **Admit.**

74. Admit that at 22:00 of the phone call referenced in Request for Admission #72, Defendant Sutton admitted that she disseminated images of Plaintiff Doe to an individual named "Darian." *See* RFA Exhibits G-H.

**RESPONSE:** **Admit.**

75. Admit that at 22:00 of the phone call referenced in Request for Admission #72, Defendant Sutton admitted that she disseminated

images of Plaintiff Doe to an individual named "Pickles." *See* RFA Exhibits G-H.

**RESPONSE: Deny.**

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
jhardin@bjpc.com

Attorneys for Defendant/
Counterclaim-Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was emailed in PDF format this 21st day of July, 2025, to the counsel of record listed below.

Joseph A. Ott
Mark E. Blankenship, Jr.
Ott Law Firm
3544 Oxford Blvd.
Maplewood, MO 63143
joe@ott.law
mark@ott.law
***Attorneys for Plaintiff/***
***Counterclaim-Defendant***

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO

32225065.1

# EXHIBIT D

*to Plaintiff's November 24, 2026 letter to defense counsel*

**Defendant's Answers to Plaintiff's First Interrogatories (July 21, 2025) (Excerpts)**

Pages 1 and 5 (Interrogatories 13–14, signature, certificate of service).

*Husayn Jamal v. Leslie Sutton, No. 4:23-cv-01312-SEP (E.D. Mo.)*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | Case No. 4:23-CV-1312 |
| | ) | |
| vs. | ) | |
| | ) | |
| LESLIE SUTTON, | ) | |
| | ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF'S ANSWERS TO PLAINTIFF/COUTERCLAIM-DEFENDANT'S FIRST SET OF INTERROGATORIES**

Comes now Defendant/Counterclaim-Plaintiff, Leslie Sutton, by and through counsel, and submits the following Answers to Plaintiff/Counterclaim-Defendant's First Set of Interrogatories:

1. Provide the following information about yourself: your full name and any other names used since birth; present address and telephone number if different from the information provided to Plaintiff; place and date of your birth; if you have ever been married, provide the name of each spouse and the inclusive dates of the marriage; if you have ever been divorced, provide the year, county, and state where such divorce was entered; if you provide financial support to any person, provide the full name, address and date of birth of each such person and describe your relationship to that person; state your highest level of education, including any vocational or trade school or training, the dates attended at each institution and whether you graduated or received a certificate of completion from the institution; state whether you

13. Provide the name, email address, username, and charge amount of each person with whom you have sold images of Plaintiff Doe through LoyalFans.

**ANSWER:** **None other than the individual associated with the LoyalFans account @gggregson112, whose name is unknown.**

14. Provide the name, email address, username, and charge amount of each person with whom you have sold images of Plaintiff Doe through OnlyFans.

**ANSWER:** **None.**

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
jhardin@bjpc.com

Attorneys for Defendant/
Counterclaim-Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was emailed in PDF format this 21st day of July, 2025, to the counsel of record listed below.

Joseph A. Ott
Mark E. Blankenship, Jr.
Ott Law Firm
3544 Oxford Blvd.
Maplewood, MO 63143
joe@ott.law
mark@ott.law
***Attorneys for Plaintiff/***
***Counterclaim-Defendant***

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO

32225087.1

# EXHIBIT E

*to Plaintiff's November 24, 2026 letter to defense counsel*

**Defendant's Responses to Plaintiff's First Requests for Production (July 21, 2025)**

Complete (5 pages).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>LESLIE SUTTON,<br><br>Defendant/Counterclaim-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:23-CV-1312 |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF, LESLIE SUTTON'S, RESPONSES TO PLAINTIFF/COUNTERCLAIM-DEFENDANT'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

Comes now Defendant/Counterclaim-Plaintiff, Leslie Sutton, by and through counsel, and submits the following Responses to Plaintiff/Counterclaim-Defendant's First Requests for Production of Documents:

1. All emails, text messages, social media messages, Internet chat forum messages, audio, video recordings, and other communications between Defendant Sutton and Plaintiff Doe from November 1, 2021 to present.

**RESPONSE:** **Defendant has no email communications with Plaintiff. Defendant no longer has access to the social media accounts that contained communications with Plaintiff and therefore cannot produce the same. Defendant has no audio or video recordings. Finally, all text messages and internet chat forum messages are equally available to Plaintiff. It is overly burdensome to produce the thousands upon thousands of text messages and internet chat forum messages between Plaintiff and Defendant and unnecessary considering Plaintiff has equal access to the exact same information. It would take countless hours to procure this information.**

2. All emails, text messages, social media messages, Internet chat forum messages, audio, video recordings, and other communications about or in reference to Plaintiff, which were made between Defendant Sutton and any third party from November 1, 2021 to present.

**RESPONSE:** **Objection. This request is overly broad and unduly burdensome. Plaintiff and Defendant were in a romantic relationship. Defendant may have communicated with several people about her romantic relationship with Plaintiff and it is overly burdensome to go through the thousands of text messages and messages from other forums to determine what, if any, mention Plaintiff. The request is not reasonably limited in scope to include messages that would pertain to the allegations contained in Plaintiff's Complaint. Plaintiff claims that his participation in BDSM sexual activities were a secret, but does not claim that his romantic relationship with Defendant was a secret/private. Therefore, communications that would "reference" Plaintiff but do not pertain to participation in BDSM are not relevant and such a request is overly broad and unduly burdensome given the amount of time it would take to try to locate such messages.**

3. All photographs or video recordings taken on or around August 27, 2022, that depict Plaintiff Doe.

**RESPONSE:** **None.**

4. All photographs or video recordings taken on or around December 30, 2022, that depict Plaintiff Doe.

**RESPONSE:** **None.**

5. All correspondence between Defendant and any third party regarding the removal of Internet content from any social media account or Internet chat in which Defendant operates.

**RESPONSE:** **None other than what communications may exist between Defendant and Twitter. Defendant is attempting to locate said communications and will supplement if necessary.**

6. All terms of service agreements from each of Defendant's Internet chat forums, websites, and social media platforms.

**RESPONSE:** **Defendant is not in possession of such documents. However, the service agreements of the various websites and social media platforms are publicly available on the internet and therefore equally accessible to the Plaintiff.**

7. All privacy policy agreements from each of Defendant's Internet chat forums, websites, and social media platforms.

**RESPONSE:** **Defendant is not in possession of such documents. However, the privacy policy agreements of the various websites and social media platforms are publicly available on the internet and therefore equally accessible to the Plaintiff.**

8. All LoyalFans receipts pertaining to any sale of images depicting Plaintiff Doe.

**RESPONSE:** **Will supplement if necessary.**

9. All OnlyFans receipts pertaining to any sale of images depicting Plaintiff Doe.

**RESPONSE:** **None.**

10. All documents that support any defense of Plaintiff's claims.

RESPONSE: **Objection. This request impermissibly invades the work product doctrine as it seeks the mental impressions of Defendant's counsel.**

11. All documents concerning any "litigation hold" documents created in connection with Plaintiff's claims, including—but not limited to—any correspondence, memoranda, emails, or other documents that direct Defendant's employees to maintain files that might concern any of the allegations made by Plaintiff that are the subject of the instant suit.

**RESPONSE: None.**

12. All documents identified by Defendant in the answers to Plaintiff's First Set of Interrogatories to Defendant—or that otherwise relate or pertain to Defendant's answers to Plaintiff's First Set of Interrogatories—and all documents that Defendant referred to or relied upon in formulating the answers to Plaintiff's First Set of Interrogatories to Defendant.

**RESPONSE: See documents attached thereto, if any.**

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO
BROWN & JAMES, P.C.
800 Market Street, Suite 1100
St. Louis, MO 63101
Phone: (314) 421-3400
Fax: (314) 421-3128
jhardin@bjpc.com

Attorneys for Defendant/
Counterclaim-Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading was emailed in PDF format this 21st day of July, 2025, to the counsel of record listed below.

Joseph A. Ott
Mark E. Blankenship, Jr.
Ott Law Firm
3544 Oxford Blvd.
Maplewood, MO 63143
joe@ott.law
mark@ott.law
***Attorneys for Plaintiff/***
***Counterclaim-Defendant***

*/s/ Justin A. Hardin*
Justin A. Hardin, #57555MO

32225096.1

# EXHIBIT F

*to Plaintiff's November 24, 2026 letter to defense counsel*

**Excerpts of the Transcript of the November 4, 2026 Status Hearing (Doc. 83)**

Cover page; transcript pages 4–7, 9, 11, and 12; Certificate of the Official Court Reporter.
Copy as certified by the Official Court Reporter; filed in this case as Doc. 83.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HUSAYN JAMAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 4:23-CV-01312-SEP** |
| | ) | |
| **LESLIE SUTTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ZOOM STATUS HEARING**
**BEFORE THE HONORABLE SARAH E. PITLYK**
**UNITED STATES DISTRICT JUDGE**

**NOVEMBER 4, 2026**

APPEARANCES:

For Plaintiff: Dariya S. Kucheryaba, Esq.
OTT LAW FIRM
75 W. Lockwood Avenue
St. Louis, MO 63119

For Defendant: Justin A. Hardin, Esq.
BROWN AND JAMES PC
800 Market Street, Suite 1100
St. Louis, MO 63101

Reported by: Kristine A. Toennies, RMR, CRR, CRC, CCR
Official Court Reporter
United States District Court
111 South Tenth Street, Third Floor
St. Louis, MO 63102 | (314)244-6701

PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY VIA ZOOM
PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

pending sanctions motion, but other than that, I don't think there's anything, anything that we're planning to go forward with.

**THE COURT:** So you don't plan to argue that any of these claims fail as a matter of law?

**MS. KUCHERYABA:** I think -- yeah, I think, aside from, you know, trial, I think going with summary judgment would be our next step from here.

**THE COURT:** Well, it would be the only remaining step.

**MS. KUCHERYABA:** Right.

**THE COURT:** But -- okay. Let me ask Mr. Hardin.

Mr. Hardin, are you planning on filing a motion for summary judgment?

**MR. HARDIN:** Judge, not really. I mean, to be honest, there's a factual dispute here on whether or not these photographs were shared. And so I didn't file a summary judgment because there's a claim on one side that they were, and there's a denial by the other that they were not. In terms of my counterclaim, there's also a dispute on that as well.

So, you know, other than some motions in limine regarding some evidentiary issues about what would come into evidence --

**THE COURT:** Okay.

**MR. HARDIN:** -- I think we have a factual dispute.

**THE COURT:** Okay. So that's my question is, is it all factual disputes all the way down now, or was there still some argument -- the way some of the evidence has been described, I would think there might be a debate between the parties about whether certain images actually are intimate visual depictions, for example, that kind of argument, which would be something that wouldn't necessarily be decided by a jury.

But you're saying the sort of fundamental dispute is whether other images, which maybe would more -- people would agree are intimate images, the dispute is whether or not that kind of image was distributed; is that correct?

**MR. HARDIN:** That's one of the disputes, Judge, yes. Those images that I think are disputed do not exist in the sense that neither party is going to be able to share them and show them to the jury. They're just going to be described and not shown.

**THE COURT:** Okay. And is there going to be any evidence that they were distributed? I understand that the issue of the sanctions motion, which I'm going to get to in a moment, is that, I guess, Plaintiff was hoping for evidence that does not exist anymore; is that correct? But part of the the response was that some of that evidence is available through another source.

So what evidence -- and this is just out of curiosity, because I'm not the jury, but I do have to -- I'm supposed to perform a gatekeeping role.

What evidence is there that intimate images were distributed at this point, other than the things that are claimed to have been destroyed?

**MS. KUCHERYABA:** So, Your Honor, in terms of -- one of the first pieces of evidence is the defendant's own admission. There was a conversation between her and my client in terms of the sale that happened and where she admits that she sold that particular image that we're concerned about to another user on the website online.

Now, through discovery we weren't able to uncover the images through -- that were sold, so that still kind of remains as, you know, we don't know what they particularly are, if that's what's being disputed.

But there also has been, you know, evidence of the sale from -- that we received from I think it was either OnlyFans or one of the websites that was in dispute. And there was a string of conversations between the defendant and I believe the user Gregger [sic] with some numbers. They had a conversation about our client, and that is also, purported sale, that's where it happened.

I think we -- I don't think we have a receipt of sale, but otherwise, the defendant's conduct after the

conversation with our client in terms of, you know, taking everything down and her own admissions through the depo, her deposition, her own testimony in general is where we're getting that from.

**THE COURT:** Okay. But you don't know, you don't have the image; you don't know what the image contained?

**MS. KUCHERYABA:** No. So, yeah, so when we received I think it was whatever the documents that website had, we only received the conversations that were shared, and then there were, I guess, like the metadata of all of the images, but some of the images were -- they're not related, and it doesn't -- it doesn't concern our client.

So we don't know what some of these images are since it's just kind of like the name over the image, but it doesn't actually show what it is.

And a lot of the information was, again, it was not related to the sale of the particular images that are now in dispute in this matter.

**THE COURT:** Okay. So I'm looking at the counts. Which counts do you think are still extant, Ms. Kucheryaba, on behalf of your client? Obviously there's the counterclaims.

**MS. KUCHERYABA:** Yeah. I mean, there was that, the sale of the image. That really is -- I think that's really what it boils down to. Now, I understand that there is, on the other side, there's the problem of the website, but --

**THE COURT:** Those are the ones that survived the motion to dismiss?

**MR. HARDIN:** Yes.

**THE COURT:** Okay. All right. So no one sees the need for a summary judgment motion?

**MR. HARDIN:** Well, I may amend that, Your Honor, if you'll allow. In light of counsel's representation here, I may not have appreciated one of the disputes. And if it is a claim, which I did not really appreciate beforehand, that the particular image she claims or is allegedly or what sold through that site called LoyalFans, if that is an image that is allegedly covered under 15 U.S.C. 6851, I would probably move -- I mean, I could have handled it in a motion in limine, but I would use -- maybe file a motion for summary judgment on that on whether it meets the statutory definition.

Now, it will be difficult for Your Honor to make that decision, granted, because the photo does not exist, and so it would just depend on the descriptions of the parties of the photo that were given in the deposition.

But I believe -- and I would be happy to file a motion on that -- that that description does not meet the definition as provided in that statute. The other images that were at dispute that don't exist arguably could.

**THE COURT:** But those weren't sold? Nobody is claiming they were sold?

when the image was sold, it's now in the possession of that user. We don't know if the user is gone, if they downloaded the picture and it's out there in public. I mean, if it comes up down the line, we'll know, but it hasn't yet and we're not sure. So there's a risk that we're facing in terms of it being out there somewhere beyond the reach of LoyalFans.

And, again, there's that consensual element that is really, you know, keeping that -- keeping the counts alive, I would say, in terms of the defendant knowing that my client did not consent to any image being sold or distributed that was of this intimate nature.

**THE COURT:** So if any two people agree that I don't want any photographs of me sold, then somebody sells one, even if it's just a photograph where you're in the background and you're not doing anything that's private at all, you can bring an intrusion upon seclusion and public disclosure of private facts claim? That's what I'm wondering about.

**MS. KUCHERYABA:** Right. I think in terms of this, the particular -- just of the particular image, our claim is that it was of an intimate sexual nature where --

**THE COURT:** Right; that's the point. You're assuming it is; right? And it sounds like --

**MS. KUCHERYABA:** Correct.

**THE COURT:** -- Mr. Hardin thinks there's evidence that it's not, that it wasn't, and I'm not sure anybody has

dispositive evidence that it was any particular thing. That's what I'm getting from the discussion we're having. Am I right about that? We just have people's recollections?

**MS. KUCHERYABA:** Correct.

**MR. HARDIN:** I don't think the recollections are all that dissimilar.

**THE COURT:** Okay.

**MR. HARDIN:** And I'm not sure -- the photo in question, Judge, is a picture of the plaintiff tying the defendant's shoe.

**THE COURT:** That's what I was wondering. That's why I thought, from reading your briefing, that we're talking about something that is not obviously sexual.

**MR. HARDIN:** No, it isn't. And so, you know, he's not identifiable in it. He admitted to that. So I'm -- I don't think there's a claim, I mean, that that was of a sexual nature.

And one of the elements of intrusion upon seclusion is it has to be, the information has to be obtained through unreasonable means, which, I mean, the man was sitting right there and she took a photo of him, so I don't think that's an unreasonable mean that she got the information.

But nonetheless, I mean, if that is a part -- and I don't want to bog the Court down, but in the deposition I got the sense that Mr. Jamal was only concerned about the

CERTIFICATE

I, Kristine A. Toennies, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 27 inclusive and was delivered electronically and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 10th day of November, 2026.

*/s/ Kristine A. Toennies*
Kristine A. Toennies, RMR, CRR, CRC, CCR
Official Court Reporter